## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CLAIRE'S HOLDINGS LLC, *et al.,*[1] | ) Case No. 25-11454 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) **Re: Docket Nos. 188 & 210** |

## INTERIM ORDER (I) AUTHORIZING
## THE DEBTORS TO (A) OBTAIN POSTPETITION
## FINANCING AND (B) UTILIZE CASH COLLATERAL,
## (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE
## EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC STAY,
## (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364, 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2 and 9013-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking entry of this interim order (this "Interim Order") and the Final Order (as defined herein) as applicable, among other things:

(i)     authorizing Claire's Holdings LLC, in its capacity as borrower (the "DIP Borrower"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally (the Debtors, other than the DIP Borrower, the "DIP

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]     Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the Motion, the DIP Term Sheet, or the Prepetition Credit Documents, as applicable (each as defined herein).

Guarantors" and together with the DIP Borrower, the "<u>DIP Loan Parties</u>"), on a joint and several basis, the DIP Borrowers' obligations in connection with a secured credit line (the "<u>DIP Facility</u>" and the loans provided thereunder, the "<u>DIP Loans</u>") in the aggregate principal amount of $22.5 million, all of which shall be made available to be drawn upon entry of this Interim Order, subject to certain conditions set forth in that certain Debtor-In-Possession Credit Facility Term Sheet attached hereto as **Exhibit 1** (as amended, restated, amended and restated supplemented, or otherwise modified from time to time, the "<u>DIP Term Sheet</u>" and, together with all other documents and instruments that may reasonably be requested by the DIP Lender in connection with the DIP Facility (in each case, as amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms thereof and hereof) the "<u>DIP Loan Documents</u>"), by and among the Debtors and AWS Claire's, LLC (the "<u>DIP Lender</u>") and solely for the uses set forth in section 2.2 of the Asset Purchase Agreement;[3]

(ii)     authorizing the DIP Borrower and the DIP Guarantors to enter into any DIP Loan Documents, and to perform all such other and further acts as may be required in connection therewith;

(iii)     granting to the DIP Lender valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral, on the terms described herein;

(iv)     authorizing the Debtors to use Cash Collateral (as defined herein) solely in accordance with this Interim Order and the Approved Budget (as defined herein);

(v)     granting adequate protection to the Prepetition Secured Parties (as defined herein) for their interests in the Prepetition Collateral (as defined herein), including Cash Collateral;

(vi)     approving certain stipulations by the Debtors with respect to the Prepetition Credit Documents (as defined herein) and the Prepetition Collateral as set forth herein;

(vii)     subject to entry of the Final Order granting such relief, waiving (a) the Debtors' right to surcharge the Prepetition Collateral (as defined herein) and the Adequate Protection Collateral (as defined herein) (together, the "<u>Collateral</u>") pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(viii)     subject to entry of the Final Order granting such relief, waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to the Collateral for the benefit of any party other than the DIP Lender or the Prepetition Secured Parties;

---

[3]     Notwithstanding anything to the contrary herein, nothing in this Interim Order is intended to approve the Asset Purchase Agreement or the Sale Transaction.

(ix)    vacating and modifying the automatic stay under section 362 of the Bankruptcy Code (the "Automatic Stay") to the extent set forth herein and as necessary to permit the Debtors and their affiliates, the DIP Lender, and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order, and, upon entry, the Final Order, and to deliver any notices of termination described below and as further set forth herein;

(x)    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this Interim Order and, upon entry, the Final Order; and

(xi)    scheduling a final hearing (the "Final Hearing") to consider final approval of the DIP Facility and use of Cash Collateral pursuant to a proposed final order [4] (the "Final Order" and together with the Interim Order, the "DIP Orders"), as set forth in the Motion filed with this Court.

The Court having considered the interim relief requested in the Motion, the *Declaration of William C. Kosturos, Managing Director of Alvarez & Marsal North America LLC, in Support of the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Use Cash Collateral, and (B) Grant Liens and Provide Superpriority Administrative Expense Claims (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 26, Ex. B] (the "Kosturos Declaration"), the *Declaration of Amy Lee in Support of the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Lee Declaration"), the *Declaration of David R. Salemi in Support of (1) Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the*

---

[4]    A proposed Final Order will be posted to the docket prior to the Final Hearing.

3

*Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief and (2) Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* (the "Salemi Declaration," and together with the Kosturos Declaration and the Lee Declaration, the "DIP Declarations")*, and the Declaration of Chris Cramer, Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of Its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "First Day Declaration"), and the evidence submitted and arguments made at the interim hearing held on August 21, 2025 (the "Interim Hearing"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), 9014, and all applicable Local Rules; and the Interim Hearing having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to this Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, is fair and reasonable and in the best interests of the Debtors and their estates, is essential for the preservation of the value of the Debtors' assets, and is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor.

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]**

---

[5] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To

A.      *Petition Date*.  On August 6, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "Court").   On August 7, 2025, this Court entered an order approving the joint administration of the Chapter 11 Cases [Docket No. 79].

B.      *Debtors in Possession*.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Consideration of the Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court may enter a final order consistent with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings on the Motion is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409. The predicates for the relief sought herein are sections 105, 361, 362, 363(b), 363(c), 363(e), 363(m), 364, 503, 506, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1.

D.      *Committee Formation*.  On August 15, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code [Docket No. 154] (the "Creditors' Committee").

---

the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.     *Notice*.  The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2).   Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice was required under the circumstances to enter this Interim Order.  The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

F.     *Cash Collateral*.  As used herein, the term "<u>Cash Collateral</u>" shall mean all of the Debtors' cash, whether existing as of the Petition Date or thereafter, wherever located and held, and whether as original collateral or proceeds of other Prepetition ABL Collateral (as defined herein) or of other CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement (as defined herein)), including cash in deposit accounts, that constitutes or will constitute "cash collateral" of the DIP Lender or any of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.     *Debtors' Stipulations*.  Subject to the provisions and limitations contained in paragraph 20 hereof (including the Challenge Period, as defined therein), and after consultation with their attorneys and financial advisors, the Debtors admit, stipulate and agree that:

(i)     *Prepetition ABL Facility*.  Pursuant to that certain ABL Credit Agreement dated as of September 30, 2022 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "<u>Prepetition ABL Credit Agreement</u>," and collectively with the other Credit Documents (as defined in the Prepetition ABL Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "<u>Prepetition ABL Credit Documents</u>" and the credit facilities evidenced thereby,

6

collectively, the "<u>Prepetition ABL Facility</u>"), among (a) Claire's Stores, Inc. ("<u>CSI</u>" or the "<u>Prepetition ABL Borrower</u>"), (b) Claire's Holdings LLC ("<u>Holdings</u>"), (c) the other borrowers and guarantors party thereto from time to time (together with CSI and Holdings, the "<u>Prepetition ABL Credit Parties</u>"), (d) JPMorgan Chase Bank, N.A., as administrative agent and collateral agent (solely in such capacity, the "<u>Prepetition ABL Agent</u>"), and (e) the lenders from time to time party thereto with respect to the Loans (as defined in the Prepetition ABL Credit Agreement) and any other Obligations (as defined in the Prepetition ABL Credit Agreement) (collectively, the "<u>Prepetition ABL Lenders</u>," and collectively with the Prepetition ABL Agent, and all other holders of Prepetition ABL Debt (as defined below), the "<u>Prepetition ABL Secured Parties</u>"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to the Prepetition ABL Borrower pursuant to the Prepetition ABL Credit Documents, and the Prepetition ABL Credit Parties incurred and/or guaranteed on a joint and several basis the Obligations (as defined in the Prepetition ABL Credit Agreement, the "<u>Prepetition ABL Obligations</u>") under the Prepetition ABL Credit Agreement and the other Prepetition ABL Credit Documents;

(ii)    *Prepetition Priority Term Loans*.  Pursuant to that certain Priority Term Loan Credit Agreement dated as of September 23, 2024 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "<u>Prepetition Priority Term Loan Credit Agreement</u>," and collectively with the other Credit Documents (as defined in the Prepetition Priority Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "<u>Prepetition Priority Term Loan Credit Documents</u>" and the credit facilities evidenced thereby, collectively,

7

the "Prepetition Priority Term Loan Credit Facility"), among (a) Claire's Boutiques, Inc. (the "Prepetition Priority Term Loan Borrower"), (b) Holdings, (c) the other guarantors party thereto (and, together with the Prepetition Priority Term Loan Borrower and Holdings, the "Prepetition Priority Term Loan Credit Parties"), (d) Ankura Trust Company, LLC, as administrative agent and collateral agent (solely in such capacity, the "Prepetition Priority Term Loan Agent"), and (e) the lenders from time to time party thereto with respect to the Loans (as defined in the Prepetition Priority Term Loan Credit Agreement) and any other Obligations (as defined in the Prepetition Priority Term Loan Credit Agreement) (collectively, the "Prepetition Priority Term Loan Lenders," and collectively with the Prepetition Priority Term Loan Agent, and all other holders of Prepetition Priority Term Loan Debt (as defined below), the "Prepetition Priority Term Loan Secured Parties"), the Prepetition Priority Term Loan Lenders provided term loans and other financial accommodations to the Prepetition Priority Term Loan Borrower pursuant to the Prepetition Priority Term Loan Credit Documents, and the Prepetition Priority Term Loan Credit Parties incurred and/or guaranteed on a joint and several basis the Obligations (as defined in the Prepetition Priority Term Loan Credit Agreement, the "Prepetition Priority Term Loan Obligations") under the Prepetition Priority Term Loan Credit Agreement and the other Prepetition Priority Term Loan Credit Documents.

(iii)      *Prepetition Existing Term Loans.*  Pursuant to that certain Term Loan Credit Agreement dated as of December 18, 2019 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Existing Term Loan Credit Agreement," and collectively with the other Credit Documents (as defined in the Prepetition Existing Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, amended and restated, supplemented, waived,

8

or otherwise modified prior to the Petition Date, the "Prepetition Existing Term Loan Credit Documents" and the credit facilities evidenced thereby, collectively, the "Prepetition Existing Term Loan Credit Facility"), among (a) CSI, (b) Holdings, (c) the other guarantors party thereto (and, together with CSI and Holdings, the "Prepetition Existing Term Loan Credit Parties"), (d) Ankura Trust Company, LLC, as successor administrative agent and successor collateral agent (solely in such capacity, the "Prepetition Existing Term Loan Agent"), and (e) the lenders from time to time party thereto with respect to the Loans (as defined in the Prepetition Existing Term Loan Credit Agreement) and any other Obligations (as defined in the Prepetition Existing Term Loan Credit Agreement) (collectively, the "Prepetition Existing Term Loan Lenders," and collectively with the Prepetition Existing Term Loan Agent, and all other holders of Prepetition Existing Term Loan Debt (as defined below), the "Prepetition Existing Term Loan Secured Parties" and, together with the Prepetition ABL Secured Parties and the Prepetition Priority Term Loan Secured Parties, the "Prepetition Secured Parties"), the Prepetition Existing Term Loan Lenders provided term loans and other financial accommodations to CSI pursuant to the Prepetition Existing Term Loan Credit Documents, and the Prepetition Existing Term Loan Credit Parties incurred and/or guaranteed on a joint and several basis the Obligations (as defined in the Prepetition Existing Term Loan Credit Agreement, the "Prepetition Existing Term Loan Obligations" and, together with the Prepetition ABL Obligations and the Prepetition Priority Term Loan Obligations, the "Prepetition Secured Obligations") under the Prepetition Existing Term Loan Credit Agreement and the other Prepetition Existing Term Loan Credit Documents.

(iv) *Prepetition ABL Intercreditor Agreement*. Pursuant to and to the extent set forth in (i) that certain ABL Intercreditor Agreement, dated as of December 18, 2019 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time

9

prior to the Petition Date) (the "Prepetition ABL Intercreditor Agreement") by and among Citibank, N.A. as original ABL agent, JPMorgan Chase Bank, N.A., as original first lien term loan agent, and Wilmington Trust National Association, as administrative agent and collateral agent for the Additional First Lien Term Loan Secured Parties (as defined in the Prepetition ABL Intercreditor Agreement), Holdings, CSI, and the subsidiaries of Holdings from time to time party thereto, (ii) that certain Lien Sharing and Priority Confirmation Joinder, dated as of December 18, 2019, among the Prepetition ABL Agent, Citibank, N.A., as original ABL agent, and JPMorgan Chase Bank, N.A., as original first lien term loan agent (the "Prepetition 2019 ABL Intercreditor Joinder"), (iii) that certain Lien Sharing and Priority Confirmation Joinder, dated as of September 23, 2024, among the Prepetition Priority Term Loan Agent, JPMorgan Chase Bank, N.A., as original first lien term loan agent, and the Prepetition ABL Agent, CSI, and the Prepetition Priority Term Loan Borrower (the "Prepetition 2024 ABL Intercreditor Joinder"), and (iv) that certain Notice of Successor Original First Lien Term Loan Agent, dated as of June 25, 2025, among the Prepetition Existing Term Loan Agent and JPMorgan Chase Bank, N.A. (the "Prepetition ABL Intercreditor Successor Term Loan Agent Notice" and, together with the Prepetition ABL Intercreditor Agreement, the Prepetition 2019 ABL Intercreditor Joinder, and the Prepetition 2024 ABL Intercreditor Joinder, the "Prepetition ABL Intercreditor Documents"), the parties thereto agreed, among other things: (a) that the Prepetition ABL Liens (as defined herein) on the Prepetition ABL Priority Collateral (as defined herein) are senior to the Prepetition Priority Term Loan Liens (as defined herein) and the Prepetition Existing Term Loan Liens (as defined herein) on such collateral; and (b) that the Prepetition Priority Term Loan Liens and the Prepetition Existing Term Loan Liens on CF Debt Priority Collateral are senior to the Prepetition ABL Liens on such collateral.

(v)     *Prepetition Priority First Lien Intercreditor Agreement*. Pursuant to and to the extent set forth in (i) that certain Priority First Lien Intercreditor Agreement, dated as of September 23, 2024 (as amended, restated, amended and restated, supplemented, waived, or otherwise modified from time to time prior to the Petition Date) by and among JPMorgan Chase Bank, N.A., as original first lien term loan agent, and the Prepetition Priority Term Loan Agent (the "Prepetition Priority First Lien Intercreditor Agreement") and (ii) that certain Notice of Successor Existing Credit Agreement Collateral Agent and Successor Existing Credit Agreement Administrative Agent, dated as of June 25, 2025, among the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent (the "Prepetition Priority First Lien Intercreditor Agreement Successor Agent Notice" and, together with the Prepetition Priority First Lien Intercreditor Agreement, Prepetition ABL Intercreditor Documents, Prepetition Existing Term Loan Credit Documents, Prepetition Priority Term Loan Credit Documents, and the Prepetition ABL Credit Documents, the "Prepetition Credit Documents"), the parties thereto agreed, among other things: (a) that the Prepetition Priority Term Loan Obligations are senior in right of payment to the Prepetition Existing Term Loan Obligations; and (b) to be bound by the other waterfall and turnover provisions contained therein.

(vi)     *Prepetition ABL Debt*. As of the Petition Date, the Prepetition ABL Borrower, Holdings and the other Prepetition ABL Credit Parties were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, for not less than (a) $63,500,000[6] in outstanding principal

---

[6]    As of the date hereof, there is $48,500,000 in outstanding principal amount of Loans (as defined in the Prepetition ABL Credit Agreement) plus interest and fees thereon. Pursuant to the terms of the *Interim Order (I) Authorizing the Debtors to (A) Use Cash Collateral, and (B) Grant Liens and Provide Superpriority Administrative Expense Claims (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 82] (the "Original Cash

amount of Loans (as defined in the Prepetition ABL Credit Agreement) plus interest and fees thereon, plus (b) $5,700,000 of the aggregate stated principal amount available for drawing under all outstanding letters of credit and all unpaid reimbursement obligations with respect to drawn letters of credit (the "Prepetition Letters of Credit"), which loans and outstanding letters of credit were made or issued by the Prepetition ABL Lenders pursuant to, and in accordance with the terms of, the Prepetition ABL Credit Documents, plus, to the extent not otherwise included, accrued and unpaid interest thereon (including default interest and interest on interest), premiums, and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition ABL Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Petition Date, whether matured or otherwise, and whether contingent or otherwise) as provided in the Prepetition ABL Credit Documents (collectively, the "Prepetition ABL Debt"), which Prepetition ABL Debt has been incurred and/or guaranteed on a joint and several basis by each of the Prepetition ABL Credit Parties;

(vii)    *Prepetition Priority Term Loan Debt.* As of the Petition Date, the Prepetition Priority Term Loan Borrower, Holdings and the other Prepetition Priority Term Loan Credit Parties were justly and lawfully indebted and liable to the Prepetition Priority Term Loan Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, for not less than $121,292,786.04 in outstanding principal amount of Loans (as defined in the Prepetition Priority Term Loan Credit Agreement) plus interest and fees thereon, which loans were made by the Prepetition Priority Term Loan Lenders pursuant to, and in accordance with the terms

---

Collateral Order"), the Debtors issued Repayment Transfers (as defined in the Original Cash Collateral Order) (i) on August 15, 2025, in the amount of $10,000,000 and (ii) on August 18, 2025, in the amount of $5,000,000.

of, the Prepetition Priority Term Loan Credit Documents, plus, to the extent not otherwise included, accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Priority Term Loan Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Petition Date, whether matured or otherwise, and whether contingent or otherwise) as provided in the Prepetition Priority Term Loan Credit Documents (collectively, the "Prepetition Priority Term Loan Debt"), which Prepetition Priority Term Loan Debt has been incurred and/or guaranteed on a joint and several basis by each of the Prepetition Priority Term Loan Credit Parties;

(viii)    *Prepetition Existing Term Loan Debt*. As of the Petition Date, CSI, Holdings and the other Prepetition Existing Term Loan Credit Parties were justly and lawfully indebted and liable to the Prepetition Existing Term Loan Secured Parties without defense, challenge, objection, claim, counterclaim, or offset of any kind, for not less than $506,168,058 in outstanding principal amount of Loans (as defined in the Prepetition Existing Term Loan Credit Agreement) plus interest and fees thereon, which loans were made by the Prepetition Existing Term Loan Lenders pursuant to, and in accordance with the terms of, the Prepetition Existing Term Loan Credit Documents, plus, to the extent not otherwise included, accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers', and financial advisors' fees and expenses, in each case, that are chargeable or reimbursable under the Prepetition Existing Term Loan Credit Documents), costs, charges, indemnities, and other obligations incurred in connection therewith (whether arising before or after the Petition Date, whether matured or otherwise, and whether contingent or otherwise) as provided in the Prepetition Existing Term Loan Credit Documents (collectively, the "Prepetition Existing Term Loan Debt" and, together with the

Prepetition ABL Debt and the Prepetition Priority Term Loan Debt, the "<u>Prepetition Secured Debt</u>"), which Prepetition Existing Term Loan Debt has been incurred and/or guaranteed on a joint and several basis by each of the Prepetition Existing Term Loan Credit Parties;

(ix)    *Validity of Prepetition Secured Debt*.  Each of the Debtors acknowledges that the Prepetition Secured Debt constitutes legal, valid, binding, and non-avoidable obligations of CSI, the Prepetition Priority Term Loan Borrower, the Prepetition Priority Term Loan Credit Parties, the Prepetition Existing Term Loan Credit Parties, and the Prepetition ABL Credit Parties, as applicable, and shall constitute allowed claims under Sections 502 and 506 of the Bankruptcy Code against the Debtors and their respective affiliates (without the need to file any proofs of claim), and are enforceable in accordance with their respective terms and the Prepetition Credit Documents, and no portion of the Prepetition Secured Debt or any payment made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Credit Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, disgorgement, defense, counterclaim, offset, recoupment, disallowance, impairment, subordination, recharacterization, avoidance or other claim (as such term is used in the Bankruptcy Code), cause of action (including any claims or avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law.

(x)    *Validity, Perfection and Priority of Prepetition ABL Liens*.  As of the Petition Date, pursuant to and in connection with the Prepetition ABL Credit Documents, CSI, Holdings and the other Prepetition ABL Credit Parties granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, a security interest in and continuing lien (the "<u>Prepetition ABL Liens</u>") on substantially all of their assets and property,

14

including, (i) a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the ABL Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition ABL Priority Collateral"), and (ii) a valid, binding, properly perfected, enforceable, junior priority security interest in and continuing lien on the CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "Prepetition ABL Junior Collateral" and, together with the Prepetition ABL Priority Collateral, the "Prepetition ABL Collateral"), which Prepetition ABL Liens are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, recoupment, rejection, reduction, disallowance, impairment, counterclaim, offset, crossclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law, subject and subordinate only to the liens of the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent on the CF Debt Priority Collateral and certain other liens expressly permitted by the Prepetition ABL Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition ABL Liens as of the Petition Date (the "Prepetition ABL Permitted Senior Liens").

(xi)    *Validity, Perfection and Priority of Prepetition Priority Term Loan Liens*. As of the Petition Date, pursuant to and in connection with the Prepetition Priority Term Loan Credit Documents, the Prepetition Priority Term Loan Borrower, Holdings and the other

Prepetition Priority Term Loan Credit Parties granted to the Prepetition Priority Term Loan Agent, for the benefit of itself and the other Prepetition Priority Term Loan Secured Parties, a security interest in and continuing lien (the "Prepetition Priority Term Loan Liens") on substantially all of their assets and property, including, (i) a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) (which, for the avoidance of doubt, may include certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Priority Term Loan Priority Collateral"), and (ii) a valid, binding, properly perfected, enforceable, junior priority security interest in and continuing lien on the Prepetition ABL Priority Collateral (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "Prepetition Priority Term Loan Junior Collateral" and, together with the Prepetition Priority Term Loan Priority Collateral, the "Prepetition Priority Term Loan Collateral"), which Prepetition Priority Term Loan Liens are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, counterclaim, offset, crossclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law, subject and subordinate only to the liens of the Prepetition ABL Agent on the Prepetition ABL Priority Collateral and certain other liens expressly permitted by the Prepetition Priority Term Loan Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Priority Term Loan Liens as of the Petition Date (the "Prepetition Priority Term Loan Permitted Senior Liens") and the Debtors

16

waive, discharge and release any right to challenge any of the Prepetition Secured Debt, the Prepetition ABL Liens, the Prepetition Existing Term Loan Liens (as defined herein), and the Prepetition Priority Term Loan Liens, including any right to challenge or contest in any way the perfection, priority or enforceability of Prepetition Secured Debt, the Prepetition Credit Documents, the Prepetition ABL Liens, the Prepetition Existing Term Loan Liens, and the Prepetition Priority Term Loan Liens.

(xii)    *Validity, Perfection and Priority of Prepetition Existing Term Loan Liens*. As of the Petition Date, pursuant to and in connection with the Prepetition Existing Term Loan Credit Documents, CSI, Holdings and the other Prepetition Existing Term Loan Credit Parties granted to the Prepetition Existing Term Loan Agent, for the benefit of itself and the other Prepetition Existing Term Loan Secured Parties, a security interest in and continuing lien (the "Prepetition Existing Term Loan Liens," and together with the Prepetition Priority Term Loan Liens and the Prepetition ABL Liens, the "Prepetition Liens") on substantially all of their assets and property, including, (i) a valid, binding, properly perfected, enforceable, first priority security interest in and continuing lien on the CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) (which, for the avoidance of doubt, may include certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (collectively, the "Prepetition Existing Term Loan Priority Collateral"), and (ii) a valid, binding, properly perfected, enforceable, junior priority security interest in and continuing lien on the Prepetition ABL Priority Collateral (which, for the avoidance of doubt, includes certain Cash Collateral) and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "Prepetition Existing Term Loan Junior Collateral" and, together with the Prepetition

17

Existing Term Loan Priority Collateral, the "<u>Prepetition Existing Term Loan Collateral</u>," and, collectively, with the Prepetition ABL Collateral and the Prepetition Priority Term Loan Collateral, the "<u>Prepetition Collateral</u>"), which Prepetition Existing Term Loan Liens are not subject to avoidance, recharacterization, subordination (whether equitable, contractual, or otherwise), recovery, attack, disgorgement, effect, rejection, reduction, disallowance, impairment, counterclaim, offset, crossclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law, subject and subordinate only to the liens of the Prepetition ABL Agent on the Prepetition ABL Priority Collateral and certain other liens expressly permitted by the Prepetition Existing Term Loan Credit Documents, solely to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Existing Term Loan Liens as of the Petition Date (the "<u>Prepetition Existing Term Loan Permitted Senior Liens</u>" and, together with any Prepetition ABL Permitted Senior Liens and any Prepetition Priority Term Loan Permitted Senior Liens, the "<u>Prepetition Permitted Senior Liens</u>").

(xiii)    *No Control as to Prepetition Secured Parties*.  None of the Prepetition Secured Parties (in their capacities as such) control (or have in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or are control persons or insiders (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or any of their affiliates in each case by virtue of any actions taken with respect to, in connection with, related to or arising from this Interim Order, the DIP Loan Documents, the Prepetition Secured Obligations, and/or the Prepetition Credit Documents.

(xiv)    The Debtors are in default under each of the Prepetition Credit Documents, including as a result of the Chapter 11 Cases, and an event of default has occurred and is continuing under each of the Prepetition Credit Documents.

(xv) *No Claims or Causes of Action against Prepetition Secured Parties.*  As of the date hereof, no claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties or any of their respective Representatives (as defined herein) (in each case, in their capacity as such) under or relating to any Prepetition Credit Documents or the Prepetition Secured Obligations in existence as of the Petition Date, as applicable.

(xvi) *Release as to the Prepetition Secured Parties.*  Effective as of the date of entry of this Interim Order, each of the Debtors and (subject to the Challenge Period in paragraph 20) each of the Debtors' estates, in each case on its own behalf and on behalf of its and their respective past, present and future predecessors, successors, heirs, subsidiaries, Representatives (as defined herein), and assigns, including without limitation any trustee and the Creditors' Committee, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits each of the Prepetition Secured Parties (solely in each Prepetition Secured Party's capacity) and each of their respective Representatives (in such Representative's capacity) (collectively, the "Prepetition Released Parties"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law (including without limitation the Bankruptcy Code) or otherwise (collectively, the "Prepetition Released Claims"), in each case arising out of or related to (as applicable) the Prepetition Credit Documents, the obligations owing and the financial

19

obligations made thereunder, and the negotiation thereof and of the transactions and agreements reflected thereby, and the obligations and the financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the Prepetition Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order.

        H.     *Release as to DIP Lender; No Control.*

        (i)     As of the date hereof, no claims or causes of action held by the Debtors or their estates exist against, or with respect to, the DIP Lender or any of their respective Representatives (in each case, in their capacity as such).  Effective as of the date of entry of this Interim Order, each of the Debtors and each of the Debtors' estates, in each case on its own behalf and on behalf of its and their respective past, present and future predecessors, successors, heirs, subsidiaries, Representatives, and assigns, including without limitation any trustee and the Creditors' Committee, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the DIP Lender (solely in its capacity as DIP Lender) and each of its respective Representatives (in such Representative's capacity) (collectively, the "DIP Released Parties," and together with the Prepetition Released Parties, the "Released Parties"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law (including without limitation the Bankruptcy Code)

20

or otherwise (collectively, the "<u>DIP Released Claims,</u>" and together with the Prepetition Released Claims, the "<u>Released Claims</u>"), in each case arising out of or related to (as applicable) the DIP Loan Documents, the obligations owing and the financial obligations made thereunder, and the negotiation thereof and of the transactions and agreements reflected thereby, and the obligations and the financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the DIP Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order.  For the avoidance of doubt, nothing in this Interim Order shall release the DIP Lender from any claims, action, cross-claim, third-party claim, controversy , dispute, demand, obligation, liability or cause of action of any kind in each case arising out of or related to (as applicable) the Sale Order, the Sale Transaction or Asset Purchase Agreement.

(ii)     *No Control as to DIP Lender.*  The DIP Lender (in its capacity as such) does not control (or has in the past controlled) the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted or is a control persons or insider (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or any of their affiliates in each case by virtue of any actions taken with respect to, in connection with, related to or arising from this Interim Order or the DIP Loan Documents.

I.     *Findings Regarding Access to the DIP Facility and the Use of Cash Collateral.*

(i)     Good and sufficient cause has been shown for the entry of this Interim Order and for authorization of the Debtors to obtain financing pursuant to the DIP Loan Documents (including the DIP Term Sheet) and use Cash Collateral and grant the Prepetition Secured Parties adequate protection.

(ii)    The Debtors have an immediate and critical need to obtain the DIP Facility and use Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the Debtors to consummate the Sale Transaction, to make payroll, inventory purchases, and satisfy other working capital and operational needs, and to fund expenses of these Chapter 11 Cases. Specifically, the DIP Facility is critical to successfully executing on the Sale Transaction as access to the DIP Facility is necessary to fund, among other things, the purchase of inventory, subject to the Approved Budget and the terms and conditions of section 2.2 of the Asset Purchase Agreement, including the prior written approval (email being sufficient) of the DIP Lender in accordance therewith.  Without the ability of the Debtors to obtain sufficient working capital and liquidity through the proposed DIP Facility and the use of Cash Collateral as set forth in this Interim Order, the Debtors will be unable to execute the Sale Transaction and consequently, the Debtors, their estates, and parties-in-interest would be immediately and irreparably harmed.  Accordingly, the Debtors have an immediate need to obtain the DIP Loans provided under the DIP Facility and to use Cash Collateral as set forth in this Interim Order.

(iii)    The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on more favorable terms from sources other than the DIP Lender under the DIP Loan Documents, including financing secured solely by lien on property of the Debtors and their estates that is not otherwise subject to a lien or secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  The Debtors are also unable to obtain secured credit without granting to the DIP Lender the DIP Liens (as defined below) and incurring the Adequate Protection Obligations (as defined below) on the terms and subject to the conditions set forth in this Interim Order and in the DIP Loan Documents, including the DIP Term Sheet.

(iv)     The Debtors find it prudent, in the exercise of their business judgment, to enter into the DIP Facility and obtain debtor-in-possession financing and permission to use Cash Collateral on a consensual basis and, in connection therewith, incur the DIP Obligations and Adequate Protection Obligations (as defined herein), as applicable, in each case as provided for herein under the terms and conditions set forth in this Interim Order and the DIP Loan Documents.

(v)     The Prepetition Secured Parties either have consented, or are deemed to have consented, to the Debtors' incurrence of the DIP Facility, use of the Prepetition Secured Parties' Cash Collateral, and the priming of certain of the Prepetition Liens on the Prepetition Collateral by the DIP Liens, each on the terms and conditions set forth in this Interim Order; *provided* that nothing in this Interim Order shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this Interim Order and the Approved Budget, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) other than as contemplated by this Interim Order and the DIP Loan Documents, or (z) subject to the Prepetition Intercreditor Agreements, prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert any rights of any of the Prepetition Secured Parties, and the rights of any other party in interest, including the Debtors, to object to such further relief not approved by this Interim Order are hereby preserved.

(vi)     The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated from the Prepetition Collateral, all of which constitute Prepetition Collateral under the Prepetition Credit Documents that are subject to the Prepetition Secured Parties' security interests as set forth in the Prepetition Credit Documents, as applicable.

(vii)     The Debtors desire to use in their business operations a portion of the cash, rents, income, offspring, products, proceeds and profits described in the preceding paragraph (vi) that constitute Cash Collateral of the Prepetition Secured Parties under section 363(a) of the Bankruptcy Code. Certain prepetition rents, income, offspring, products, proceeds, and profits, in existence as of the Petition Date or hereafter created or arising, including balances of funds in the Debtors' prepetition and postpetition operating bank accounts, also constitute Cash Collateral.

(viii)    Based on the Motion, the DIP Declarations, the First Day Declaration, and the record presented to the Court at the First Day Hearing and the Interim Hearing, the terms of DIP Facility, the adequate protection granted to the Prepetition Secured Parties as provided in paragraph 6 of this Interim Order (the "Adequate Protection"), and the terms on which the Debtors may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Interim Order and the DIP Loan Documents, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(ix)     The Prepetition Secured Parties have acted in good faith regarding the Debtors' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors' estates (including the incurrence and payment of and performance under the Adequate Protection Obligations and the granting of the Adequate Protection Liens (as defined herein)), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(x) The Interim Order, the DIP Facility, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Debtors and the DIP Lender, and the Prepetition Secured Parties, and all of the Debtors' obligations and indebtedness arising under, in respect of, or in connection with the DIP Facility and the DIP Loan Documents, including, without limitation, all loans made to and guarantees issued by the Debtors pursuant to the DIP Loan Documents and all other obligations under the DIP Loan Documents (collectively, the "<u>DIP Obligations</u>") shall be deemed to have been extended by the DIP Lender in good faith as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code and the DIP Lender (and its respective successors and assigns) and such Prepetition Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(xi) The Prepetition Secured Parties and the DIP Lender have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this Interim Order, the DIP Facility, and the use of Cash Collateral, including in respect of the granting of the DIP Liens and the Adequate Protection Liens, any challenges or objections to the DIP Facility or use of Cash Collateral, the DIP Loan Documents (including the DIP Term Sheet), and all other documents related to and all transactions contemplated by the foregoing.

(xii) The DIP Lender and the Prepetition Secured Parties are entitled to the Adequate Protection provided in this Interim Order as and to the extent set forth herein pursuant

to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and their fiduciary duties, and constitute reasonably equivalent value and fair consideration for the use of the Prepetition Collateral, including the Cash Collateral.

(xiii)    The Debtors have prepared and delivered to the respective advisors to the Prepetition Secured Parties and the DIP Lender an initial budget for the continued use of Cash Collateral and access to the DIP Facility (the "Initial Budget"), attached hereto as **Exhibit 2**.  The Initial Budget reflects, among other things, the Debtors' anticipated operating receipts, anticipated operating disbursements, anticipated non-operating disbursements, net operating cash flow and liquidity for each calendar week covered thereby.  The Initial Budget may be modified, amended, extended, and updated from time to time in accordance with paragraph 7(a), and once approved in accordance therewith, each subsequently approved budget shall modify, replace, supplement, or supersede, as applicable, the Initial Budget for the periods covered thereby (the Initial Budget and each subsequently approved budget shall constitute, without duplication, an "Approved Budget"). Updates, modifications, and supplements to the Approved Budget shall not require any further approval of this Court.  The Debtors believe that the Initial Budget is reasonable under the circumstances.  The DIP Lender and the Prepetition Secured Parties are relying, in part, upon the Debtors' agreement to comply with the Approved Budget (subject to permitted variances), this Interim Order, and the DIP Loan Documents in determining to allow the use of Cash Collateral and extend the Debtors financing under the DIP Facility, as applicable, as provided for in this Interim Order and the DIP Loan Documents, as applicable.

26

(xiv)   Subject to entry of the Final Order granting such relief, each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits with respect to any of the Prepetition Collateral.

J.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Local Rule 4001-2(b). Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Access to the DIP Facility and continued use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order, the DIP Loan Documents (including the DIP Term Sheet), and Approved Budget, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties.  The Motion and this Interim Order comply with the requirements of Local Rule 4001-2(b).

K.      *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens*.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the DIP Lender or the Prepetition Secured Parties, to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien and/or security interests.  Subject to paragraph 20 of this Interim Order and the challenge rights granted thereunder, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code is not a Prepetition Permitted Senior Lien, as used herein, and is expressly subject to the DIP Liens, the Adequate Protection Liens (as defined herein), and the Prepetition

27

Liens.  The DIP Liens, the Prepetition Liens, and the Adequate Protection Liens are continuing liens, and the Collateral is and will continue to be encumbered by such liens.

L.    *Intercreditor Agreements.*  Pursuant to section 510 of the Bankruptcy Code, the Prepetition ABL Intercreditor Documents, the Prepetition Priority First Lien Intercreditor Agreement, and any other applicable intercreditor agreements are "subordination agreements," and the provisions contained in any of the other Prepetition Credit Documents (the "Prepetition Intercreditor Agreements"):  (i) shall remain in full force and effect; (ii) shall continue to govern the relative priorities, rights, and remedies of the Prepetition Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims granted or amounts payable in respect thereof by the Debtors under this Interim Order or otherwise); and (iii) shall not be deemed to be amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.    *Motion Granted.*  The interim relief sought in the Motion is granted and the DIP Facility is approved and use of Cash Collateral is authorized on an interim basis, in each case subject to the terms and conditions set forth in this Interim Order.  All objections to this Interim Order to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.

2.    *Authorization of the DIP Facility and the DIP Loan Documents.*

28

(a)    The DIP Borrower and the DIP Guarantors are hereby immediately authorized and empowered to enter into, and execute and deliver, the DIP Loan Documents and such additional documents, instruments, certificates, and agreements as may be reasonably required or requested by the DIP Lender to implement the terms, or effectuate the purposes, of this Interim Order and the DIP Loan Documents. To the extent not entered into as of the date hereof, the Debtors and the DIP Lender shall negotiate the DIP Loan Documents in good faith, and in all respects such DIP Loan Documents shall be, subject to the terms of this Interim Order and the Final Order, consistent with the terms of the DIP Term Sheet and otherwise reasonably acceptable to the DIP Borrowers, the DIP Lender, the Directing Cash Collateral Agent, the Majority Priority Term Loan Lenders, and the Majority Existing Term Loan Lenders. Upon entry of this Interim Order, the Debtors and the DIP Lender shall be bound by (x) the terms and conditions and other provisions set forth in the DIP Term Sheet and other executed DIP Loan Documents, with the same force and effect as if duly executed and delivered to the DIP Lender by the Debtors, and (y) this Interim Order, the DIP Term Sheet, and the other executed DIP Loan Documents, if any, shall govern and control the DIP Facility. The DIP Lender is hereby authorized to execute and enter into its respective obligations under the DIP Loan Documents, subject to the terms and conditions set forth therein and this Interim Order. Upon execution and delivery thereof, each DIP Loan Document shall constitute valid and binding obligations of the Debtors enforceable in accordance with their terms. To the extent there exists any conflict among the terms and conditions of the DIP Loan Documents and this Interim Order, the terms and conditions of this Interim Order shall govern and control.

(b)    The Debtors are hereby authorized to execute, deliver, enter into and perform all of their obligations under the DIP Loan Documents, including the DIP Term Sheet,

and perform such other acts as may be necessary, appropriate or desirable in connection therewith. The DIP Borrower is hereby authorized upon entry of this Interim Order to borrow up to and draw $22,500,000 pursuant to the terms and conditions of the DIP Term Sheet, and the DIP Guarantors are hereby authorized to jointly, severally, and unconditionally guarantee the DIP Borrower's obligations on account of the DIP Loans, subject to any limitations set forth in the DIP Loan Documents, including the DIP Term Sheet. The proceeds of the DIP Loans shall be used for all purposes permitted under the DIP Loan Documents and the Interim Order, in each case subject to and in accordance with the DIP Funding Line Items (as defined herein) under the Approved Budget. Notwithstanding anything to the contrary herein, availability and borrowing under the DIP Facility shall be subject in all respects to compliance with section 2.2 of the Asset Purchase Agreement and no funds advanced by the DIP Lender shall be used for any other purpose including, but not limited to, funding of the Carve-Out or Carve-Out Reserves.

(c) In furtherance of the foregoing and without further approval of this Court, each of the Debtors is authorized, and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted solely to the extent necessary, to perform all acts and to make, execute, and deliver all instruments and documents (including, without limitation, the DIP Term Sheet or the other DIP Loan Documents) and, subject to the provisions of this Interim Order to pay all DIP Obligations as and when such amounts become due and payable, including fees, expenses and indemnities in connection with or that may be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Facility, including, without limitation:  (i) the execution and delivery of, and performance under, each of the DIP Loan Documents, including the DIP Term Sheet; (ii) the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Loan Documents (in

each case in accordance with the terms of the applicable DIP Loan Documents and in such form as the Debtors and the DIP Lender and the Prepetition Secured Parties, as applicable, may reasonably agree), it being understood that no further approval of the Court shall be required for amendments, waivers, consents, or other modifications to and under the DIP Loan Documents or the DIP Obligations that are not material; and (iii) the performance of all other acts required under or in connection with the DIP Loan Documents.

(d)    All proceeds of the DIP Loans shall be funded and held in an escrow account (the "<u>DIP Proceeds Account</u>") in accordance with the terms of the DIP Loan Documents and the Asset Purchase Agreement.  For the avoidance of doubt, none of the DIP Proceeds Account, any funds therein constituting DIP Loans, or any proceeds of the DIP Loans (exclusive, for the avoidance of doubt, of any proceeds or products constituting ABL Priority Collateral) shall constitute Prepetition Collateral (including Cash Collateral).

(e)    *DIP Obligations*.  Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents, including the DIP Term Sheet, shall constitute legal, valid, binding and non-avoidable obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their respective terms and this Interim Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing.  Upon execution and delivery of the DIP Term Sheet, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the Debtors to the DIP Lender under the DIP Loan Documents (including the DIP Term Sheet) and this Interim Order.  The DIP Loan Parties shall be jointly and severally liable for the DIP Obligations.

3.      *Protection of the DIP Lender.*

(a)      *DIP Liens.*  As security for the DIP Obligations, effective and automatically properly perfected on the date this Interim Order is entered, and without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by the DIP Lender of, or over, any Collateral, without any further action by the DIP Lender, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens are hereby granted to the DIP Lender (all property identified in clauses (i) through (iii)) below being collectively referred to as the "DIP Collateral") subject only to the Carve-Out (all such liens and security interests granted to the DIP Lender, pursuant to this Interim Order and the DIP Loan Documents, the "DIP Liens"):

(i)      *Junior Liens on ABL Priority Collateral*.  Pursuant to sections 364(c)(3) and 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior priority security interest in, and lien upon (subject and subordinate in all respects to, in the following order, (1) the Carve-Out, (2) the Prepetition ABL Liens in the ABL Priority Collateral, and (3) the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect to the ABL Priority Collateral), all tangible and intangible prepetition and postpetition property of the DIP Loan Parties constituting ABL Priority Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the ABL Priority Collateral) the Prepetition ABL Liens and the ABL Adequate Protection Liens (the "DIP ABL Junior Liens"); *provided* that, for the avoidance of doubt the DIP ABL Junior Liens shall be senior to the Prepetition Priority Term Loan Liens, the Prepetition Existing Term Loan Liens, the Priority Term Loan Adequate Protection Liens, and the Existing Term Loan Adequate Protection Liens with respect to all DIP Collateral (including the ABL Priority Collateral).  Notwithstanding

32

anything herein to the contrary, the DIP ABL Junior Liens shall be (A) junior in all respects to the Prepetition ABL Liens in the ABL Priority Collateral and Adequate Protection Liens of the Prepetition ABL Secured Parties on the ABL Priority Collateral, and (B) not subordinate to any lien, security interest, or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(ii)     *Senior Liens on Term Loan Priority Collateral.*    Subject only to the Carve-Out pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all Term Loan Priority Collateral (the "Senior DIP Liens").

(iii)     *No Senior Liens.*   The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code unless otherwise provided in the DIP Loan Documents or this Interim Order, and (B) unless otherwise provided for in the DIP Loan Documents or in this Interim Order, any liens or security interests arising after the Petition Date; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code unless otherwise provided for in the DIP Loan Documents or in this Interim Order; *provided*, that, for the avoidance of doubt, the DIP Liens, unless otherwise provided herein, shall be subject and subordinate to the Prepetition ABL Liens in the ABL Priority Collateral and the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect to the ABL Priority Collateral; *provided*, *further*, that, for the avoidance of doubt, under the DIP Facility and this Interim Order, the DIP Liens shall be senior to the Prepetition Liens and Adequate Protection Liens of the Prepetition Priority Term Loan Secured

Parties and the Prepetition Existing Term Loan Secured Parties (but shall be junior and subordinate to the Carve-Out) with respect to the Term Loan Priority Collateral.

(b)     *DIP Loan Interest*.  From and after entry of this Interim Order, the DIP Lender, shall receive during the Chapter 11 Cases all accrued interest on the DIP Loans at a rate of 5.0% per annum, which interest shall be payable in kind and not cash, with interest being automatically added to, and not made part of, the outstanding principal amount of DIP Loans, in each case on the last Business Day of each month, and payable interest pursuant to the terms set forth in the DIP Term Sheet.

(c)     *Prepayments*.  The DIP Loan Parties may, upon notice to the DIP Lender and in accordance with the Asset Purchase Agreement, prepay the DIP Loans in full in cash; *provided* that the Debtors shall pay to the DIP Lender a prepayment penalty in an amount equal to $2,580,000 (the "Prepayment Penalty") if the Closing (as defined in the Asset Purchase Agreement) has not occurred due to Seller's termination of the Asset Purchase Agreement pursuant to Sections 8.1(g) or (h) thereof.   No Prepayment Penalty shall be due if the Closing (as defined in the Asset Purchase Agreement) occurs.

(d)     Upon the Closing (as defined in the Asset Purchase Agreement), notwithstanding anything to the contrary herein or in the Sale Order, the DIP Loans shall be automatically credited against the Purchase Price, and shall be deemed repaid in full and final satisfaction of all liens, claims, encumbrances, and other interests, and shall be deemed released and discharged by the DIP Lender in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the DIP Lender, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities

34

whatsoever, including any derivative claims, asserted or assertable on behalf of the DIP Lender on account of the DIP Loans.

4.      *Use of Cash Collateral*.  To prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized, subject to the terms and conditions of this Interim Order (including the Carve-Out) to use all Cash Collateral in accordance with this Interim Order, the DIP Loan Documents, and the Approved Budget (subject to permitted variances); *provided* that (a) the Prepetition Secured Parties are granted the Adequate Protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Debtors shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

5.      *Mandatory Paydown of Prepetition ABL Obligations*.  On August 22, 2025, so long as any Prepetition ABL Obligations remain outstanding and are not fully satisfied and paid in full on terms and conditions acceptable to the Prepetition ABL Required Lenders, the Debtors shall make a mandatory payment to the Prepetition ABL Agent, for the benefit of the Prepetition ABL Secured Parties, for permanent application against the Prepetition ABL Obligations, using cash received by the Debtors from the sale of ABL Priority Collateral (as defined herein), including, without limitation, accounts (as defined in the UCC) and sale of inventory (together "ABL Priority Collections") (which, for the avoidance of doubt shall not include any proceeds from the sale of Term Loan Priority Collateral (as defined herein)) in an amount equal to $5,000,000.  The Prepetition ABL Agent shall, and is hereby authorized to, apply such amounts to repay any then outstanding Prepetition ABL Obligations held by the Prepetition ABL Secured Parties and to cash collateralize any Prepetition Letters of Credit, in each case as set forth and in accordance with the priorities and terms of the Prepetition ABL Credit Agreement.  The Debtors shall not be required to make any additional mandatory paydowns to the Prepetition ABL Agent (for the benefit of the

Prepetition ABL Secured Parties) until either (x) (a) the order approving the Sale Transaction (the "Sale Order") has been entered and is a final order and (b) the Sale Transaction has been consummated, following which the Debtors shall immediately apply proceeds of the Sale Transaction to pay, in full and final satisfaction, all remaining outstanding Prepetition ABL Obligations in accordance with the Sale Order or (y) the occurrence of a Cash Collateral Termination Event.

6.      *Adequate Protection of Prepetition Secured Parties*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) for the diminution in the value of their respective interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from, among other things, the DIP Liens, the sale, lease, or use by the Debtors' estates of the Prepetition Collateral, the use of Cash Collateral, the payment of any amounts under the Carve-Out or pursuant to this Interim Order, the Final Order or any other order of the Court or provision of the Bankruptcy Code or otherwise, and the imposition of the Automatic Stay (the "Adequate Protection Claims"). In consideration of the foregoing, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, and the Prepetition Priority Term Loan Agent, as applicable, and for the benefit of the applicable Prepetition Secured Parties, subject in all respects to the Prepetition Intercreditor Agreements and the Challenge Period, are hereby granted the following as Adequate Protection on account of their Adequate Protection Claims, and as an inducement to the Prepetition Secured Parties to consent to the use of the Prepetition Collateral (including Cash Collateral) (collectively, the "Adequate Protection Obligations"):

36

(a)      *ABL Adequate Protection Liens.*  The Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Lenders, is hereby granted (effective and automatically perfected upon the date of this Interim Order and ratified and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), on account of its Adequate Protection Claims, a valid, automatically perfected security interest in and lien upon (subject and subordinate to the Carve-Out) (i) all tangible and intangible prepetition and postpetition property of the Debtors (including the Prepetition Collateral), whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, including, without limitation, any and all cash of the Debtors (wherever held) and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, causes of action, insurance policies and rights, claims and proceeds from insurance, chattel paper (including electronic chattel paper and tangible chattel paper), the proceeds of any disposition of real property leaseholds, owned real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, equity interests of subsidiaries, joint ventures and other entities, commercial tort claims, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, as well as (subject to the entry of the Final Order) claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions") provided that, subject to entry of the Final Order granting such relief, a lien shall be granted immediately hereunder on any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by

judgment, settlement or otherwise ("Avoidance Proceeds"), but excluding the Funded Reserve Account and any amounts held therein (collectively, the "Adequate Protection Collateral," and the liens thereon, the "ABL Adequate Protection Liens").  The ABL Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) ABL Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) and previously unencumbered or newly acquired or arising assets of the Debtors of the type that constitute ABL Priority Collateral (regardless of when acquired, and regardless of whether acquired with the proceeds of DIP Loans) (together with the ABL Priority Collateral as defined in the Prepetition ABL Intercreditor Agreement, the "ABL Priority Collateral") shall (subject and subordinate to the Carve-Out) be senior to all other liens and (ii) CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement) shall (subject and subordinate to the Carve-Out) be subordinate only to the DIP Liens, the Priority Term Loan Adequate Protection Liens, the Prepetition Priority Term Loan Liens, the Existing Term Loan Adequate Protection Liens, and the Prepetition Existing Term Loan Liens, subject to the Prepetition ABL Intercreditor Agreement; *provided* that notwithstanding the foregoing, upon payment of all amounts required to be paid from the Funded Reserve Account hereunder, subject to the Prepetition Intercreditor Agreements and the DIP Term Sheet, the Funded Reserve Account and any remaining funds therein shall constitute ABL Priority Collateral hereunder and the ABL Adequate Protection Liens shall attach thereto.

(b)    *Prepetition ABL Secured Parties' Section 507(b) Claim.*  The Prepetition ABL Agent, for itself and for the benefit of the Prepetition ABL Lenders, is hereby granted an allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out and subject to the Prepetition ABL Intercreditor Agreement) on account of such Prepetition ABL Secured Parties' Adequate

38

Protection Claims against the Debtors and their estates on a joint and several basis, as provided for in section 507(b) of the Bankruptcy Code (the "ABL 507(b) Claim"), which ABL 507(b) Claim shall be payable from all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all respects to the Carve-Out and the Prepetition ABL Intercreditor Agreement.  With respect to the ABL Priority Collateral, the ABL 507(b) Claim shall (subject and subordinate to the Carve-Out) be senior to all other claims of any kind and with respect to the Term Loan Priority Collateral (as defined herein), the ABL 507(b) Claim shall be subject and subordinate only to the Carve-Out, the Priority Term Loan 507(b) Claim, the Existing Term Loan 507(b) Claim, the DIP Liens, the Prepetition Permitted Senior Liens, and the prepetition claims of the Prepetition Existing Term Loan Secured Parties and the Prepetition Priority Term Loan Secured Parties.

(c)    *Priority Term Loan Adequate Protection Liens*.  Subject to the immediately following sentence, the Prepetition Priority Term Loan Agent, for itself and for the benefit of the Prepetition Priority Term Loan Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and ratified and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), on account of its Adequate Protection Claims, a valid, automatically perfected security interest in and lien upon (subject and subordinate to the Carve-Out) the Adequate Protection Collateral (the "Priority Term Loan Adequate Protection Liens").  The Priority Term Loan Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) CF Debt Priority Collateral (as defined in the Prepetition ABL Intercreditor Agreement and together with previously unencumbered assets of the type that constitute CF Debt Priority Collateral, the "Term Loan Priority Collateral") shall (subject and subordinate to the Carve-Out) be subordinate only to the

DIP Liens and (ii) ABL Priority Collateral shall (subject and subordinate to the Carve-Out) be subordinate only to (A) the DIP Liens and (B) the ABL Adequate Protection Liens and the Prepetition ABL Liens, subject to the Prepetition Intercreditor Agreements; *provided* that notwithstanding the foregoing, upon payment of all amounts required to be paid from the Funded Reserve Account hereunder, subject to the Prepetition Intercreditor Agreements and the DIP Term Sheet, the Funded Reserve Account and any remaining funds therein shall constitute Collateral hereunder and the Priority Term Loan Adequate Protection Liens shall attach thereto in accordance with the priorities set forth herein.

(d)      *Prepetition Priority Term Loan Secured Parties' Section 507(b) Claim.* The Prepetition Priority Term Loan Agent, for itself and for the benefit of the Prepetition Priority Term Loan Lenders, is hereby granted an allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out) on account of such Prepetition Priority Term Loan Secured Parties' Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Priority Term Loan 507(b) Claim"), which Priority Term Loan 507(b) Claim shall be payable from all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all respects to the Carve-Out and the Prepetition Intercreditor Agreements.

(e)      *Existing Term Loan Adequate Protection Liens.*  Subject to the immediately following sentence, the Prepetition Existing Term Loan Agent, for itself and for the benefit of the Prepetition Existing Term Loan Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and ratified and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), on account of its Adequate Protection Claims, a valid, automatically perfected security interest in and lien upon

(subject and subordinate to the Carve-Out) the Adequate Protection Collateral (the "Existing Term Loan Adequate Protection Liens," and together with the ABL Adequate Protection Liens and the Priority Term Loan Adequate Protection Liens, the "Adequate Protection Liens").  The Existing Term Loan Adequate Protection Liens on Adequate Protection Collateral that falls within the scope of (i) Term Loan Priority Collateral shall (subject and subordinate to the Carve-Out) be subordinate only to (A) the DIP Liens and (B) the Priority Term Loan Adequate Protection Liens and the Prepetition Priority Term Loan Liens, in a manner consistent with the Prepetition Priority First Lien Intercreditor Agreement and (ii) ABL Priority Collateral shall (subject and subordinate to the Carve-Out) be subordinate only to the ABL Adequate Protection Liens, the DIP Liens, the Prepetition ABL Liens, the Priority Term Loan Adequate Protection Liens, and the Prepetition Priority Term Loan Liens, in a manner consistent with the DIP Loan Documents and the Prepetition Intercreditor Agreements; *provided* that notwithstanding the foregoing, upon payment of all amounts required to be paid from the Funded Reserve Account hereunder, subject to the Prepetition Intercreditor Agreements, the Funded Reserve Account and any remaining funds therein shall constitute Collateral hereunder and the Existing Term Loan Adequate Protection Liens shall attach thereto in accordance with the priorities set forth herein.

(f)    *Prepetition Existing Term Loan Secured Parties' Section 507(b) Claim.* The Prepetition Existing Term Loan Agent, for itself and for the benefit of the Prepetition Existing Term Loan Lenders, is hereby granted an allowed superpriority administrative expense claim (senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out) on account of such Prepetition Existing Term Loan Secured Parties' Adequate Protection Claims as provided for in section 507(b) of the Bankruptcy Code (the "Existing Term Loan 507(b) Claim", and, together with the Priority Term Loan 507(b) Claim and the ABL 507(b)

41

Claim, the "507(b) Claims") which Existing Term Loan 507(b) Claim shall be payable from all Adequate Protection Collateral and all proceeds thereof; *provided* that such recourse shall be subject in all respects to the Carve-Out and the Prepetition Intercreditor Agreements.

(g)     *Prepetition ABL Secured Parties' Adequate Protection Fees and Expenses*. As further adequate protection, the Debtors shall provide the Prepetition ABL Agent, for the benefit of the Prepetition ABL Lenders, current cash payments of the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition ABL Agent under the Prepetition ABL Credit Documents, including, but not limited to, the reasonable and documented fees and out-of-pocket expenses of primary, special, conflicts, and local counsel (in each applicable jurisdiction) and financial advisors, including the reasonable and documented fees and out-of-pocket expenses of Simpson Thacher & Bartlett LLP, as primary counsel, Potter Anderson & Corroon LLP, as local counsel, and Berkeley Research Group, LLC as financial advisor (the "ABL Adequate Protection Fees and Expenses"), subject to the review procedures set forth in paragraph 18 of this Interim Order.

(h)     *Prepetition Priority Term Loan Secured Parties' Adequate Protection Fees and Expenses.*  As further adequate protection, the Debtors shall provide the Prepetition Priority Term Loan Agent, for the benefit of the Prepetition Priority Term Loan Lenders but subject in all respects to the Approved Budget, current cash payments of (A) the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Priority Term Loan Agent under the Prepetition Priority Term Loan Credit Documents including, without limitation, those fees and expenses incurred by Cahill Gordon & Reindel LLP, as lead restructuring counsel to the Prepetition Priority Term Loan Agent, and Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel to the Prepetition Priority Term Loan Agent, and (B) the reasonable and documented fees

42

and out-of-pocket expenses of Pachulski Stang Ziehl & Jones LLP, as counsel to the holders (the "Majority Priority Term Loan Lenders") of a majority of the outstanding Prepetition Priority Term Loan Obligations (collectively, (A) and (B), the "Priority Term Loan Adequate Protection Fees and Expenses"), subject to the review procedures set forth in paragraph 18 of this Interim Order.

(i)      *Prepetition Existing Term Loan Secured Parties' Adequate Protection Fees and Expenses.*  As further adequate protection, the Debtors shall provide the Prepetition Existing Term Loan Agent, for the benefit of the Prepetition Existing Term Loan Lenders, but subject in all respects to the Approved Budget, current cash payments of (A) the reasonable and documented prepetition and postpetition fees and expenses of the Prepetition Existing Term Loan Agent under the Prepetition Existing Term Loan Credit Documents including, without limitation, those fees and expenses incurred by Cahill Gordon & Reindel LLP, as lead restructuring counsel to the Prepetition Existing Term Loan Agent, and Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel to the Prepetition Existing Term Loan Agent, and (B) the reasonable and documented fees and out-of-pocket expenses of Pachulski Stang Ziehl & Jones LLP, as counsel to the holders (the "Majority Existing Term Loan Lenders") of a majority of the outstanding Prepetition Existing Term Loan Obligations (collectively (A) and (B), the "Existing Term Loan Adequate Protection Fees and Expenses", and, together with the ABL Adequate Protection Fees and Expenses and the Priority Term Loan Adequate Protection Fees and Expenses, the "Adequate Protection Fees and Expenses"), subject to the review procedures set forth in paragraph 18 of this Interim Order.

(j)      *ABL Postpetition Interest.*  From and after entry of this Interim Order, the Prepetition ABL Agent, on behalf of itself and the Prepetition ABL Lenders, shall receive current cash payment during the Chapter 11 Cases of all accrued interest on the Prepetition ABL

Obligations under the Prepetition ABL Credit Agreement as such interest becomes due and payable as set forth in the following sentence, during the Chapter 11 Cases at the applicable contractual default rate (including interest on interest) thereunder and in the amounts specified in the Prepetition ABL Credit Agreement, subject to the Prepetition ABL Intercreditor Agreement. The first such interest payment date shall be September 1, 2025, and thereafter, the first Business Day of every calendar month.

(k)     *ABL ABR Rollover.*  Notwithstanding anything to the contrary herein or in the Prepetition ABL Credit Agreement, upon the termination of any applicable Interest Period (as defined in the Prepetition ABL Credit Agreement), each Term SOFR Loan (as defined in the Prepetition ABL Credit Agreement) shall automatically convert to and be deemed to be an ABR Loan (as defined in the Prepetition ABL Credit Agreement) for all purposes under the Prepetition ABL Credit Agreement; *provided* that no break funding payments shall be payable in connection therewith.

(l)     *Adequate Protection Information Rights.*  The Debtors shall provide to the Prepetition ABL Agent all reporting required under the Prepetition ABL Credit Agreement consistent with the Debtors' prepetition practices and in accordance with its terms and any other reporting reasonably requested by the Prepetition ABL Agent or its advisors as soon as practicable after request, including daily balances of cash by legal entity (in form consistent with the reporting delivered to the Prepetition ABL Agent prior to the Petition Date) and any other reporting as reasonably requested by the Prepetition ABL Agent; *provided* that, the Debtors shall not be required to deliver audited financials or quarterly financial reporting.  Concurrently with such delivery to the Prepetition ABL Agent, the Debtors shall provide all such reporting in substantially similar form to the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan

Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and the advisors to each of the foregoing.

(m)    *Term Loan Postpetition Interest*.  From and after entry of this Interim Order, the Prepetition Priority Term Loan Agent, on behalf of itself and the Prepetition Priority Term Loan Lenders, and the Prepetition Existing Term Loan Agent, on behalf of itself and the Prepetition Existing Term Loan Lenders, shall receive during the Chapter 11 Cases all accrued interest on the Prepetition Priority Term Loan Obligations and the Prepetition Existing Term Loan Obligations, as applicable, under the applicable Prepetition Credit Documents at the applicable contractual default rate (including interest on interest) thereunder and in the amounts specified thereunder; *provided* that such interest shall be paid in kind.

(n)    *Borrowing Base Reporting*.  The Debtors shall deliver to the Prepetition ABL Agent, Prepetition Priority Term Loan Agent, Prepetition Existing Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and the advisors to each of the foregoing a Borrowing Base Certificate for the Borrowing Base (as defined in the Prepetition ABL Credit Agreement), with all the information required to be provided in connection therewith pursuant to the Prepetition ABL Credit Agreement, in each case in the format customarily delivered with each Borrowing Base Certificate delivered prior to the Petition Date, setting forth the Borrowing Base (as defined in the Prepetition ABL Credit Agreement) calculated as of the last day of the immediately preceding calendar week (with weeks, for purpose of the Borrowing Base Certificate, beginning on Sunday and ending on Saturday) on Thursday of each week commencing on August 7, 2025 for the week ending August 2, 2025, and each Thursday thereafter.

45

(o)    *Asset Monetization Process Reporting.*  The Debtors and their advisors shall provide, in connection with any sale or monetization process conducted by the Debtors and/or their advisors (including by any liquidators hired by the Debtors) to the Prepetition ABL Agent, the Prepetition Priority Term Loan Agent, the Prepetition Existing Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, and the advisors to each of the foregoing:  (i) all material developments in connection with the efforts of the Debtors, their advisors and any liquidators to sell some, all or substantially all of the Debtors' assets as promptly as possible, (ii) on the last Business Day of each week, reasonably detailed updates on the progress of any such sale which may be in the form of a weekly status update call and shall include the prior week's Weekly Reconciliation [7] or such other accounting of the sources and amounts of all proceeds received in connection with all sales or liquidations of Collateral, (iii) access to any data room, (iv) copies of all reports, analyses, non-legally privileged materials (including, without limitation, any and all confidential memoranda or other work product provided by the investment banker or any liquidator in connection with the sales process), and (v) within two (2) Business Days after receipt of any bona fide bid or indication of interest ("IOI"), a summary of such of such bid or IOI (including identity of the bidder) and, if applicable, any documentation, letter or agreement accompanying such bid or IOI, all of which shall be provided on a "Professional Eyes Only" basis; *provided* that the aforementioned reporting obligations shall not apply as to any applicable Prepetition Secured Party with respect to any assets for which such Prepetition Secured Party is known to be an interested potential bidder.  Nothing herein shall prejudice the rights of any Prepetition Secured Party to request an audit with respect to such amounts or to contend that

---

[7]    "Weekly Reconciliation" has the meaning ascribed to it in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Agency Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, With Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Modifying Customer Programs at the Closing Stores, and (IV) Granting Related Relief* [Docket No. 16].

any such amounts or any application of such amounts permitted herein constitute either ABL Priority Collateral or Term Loan Priority Collateral.

(p)     *Maintenance of Collateral.*   The Debtors shall continue to maintain and insure the DIP Collateral and the Prepetition Collateral in amounts and for the risks, and by the entities, as required under the DIP Loan Documents and the Prepetition Credit Documents, as applicable.

7.     *Budget.*

(a)     *Budget Reporting.*   The Debtors shall deliver to the DIP Lender and the Directing Cash Collateral Agent[8] and for information purposes only, to each other secured debt agent or trustee the following:  no later than every fourth Thursday (but if such Thursday is not a Business Day, the next Business Day), beginning with Thursday, September 26, 2025, a rolling updated 6-week cash flow forecast (a "Proposed Budget") (which shall, for the avoidance of doubt, be in the same form, and contain all of the same line items as the Initial Budget) setting forth all projected cash receipts and disbursements on a line item and aggregate weekly basis for the next 6-week period.  The Proposed Budget (including any subsequent revisions to any such Proposed Budget) will become the Approved Budget with respect to the six-week (6-week) period (such period as set forth in the Approved Budget in effect at such time, the "Budget Period") covered thereof effective five (5) Business Days after such submission (such date, the "Budget Transition Date") unless the Debtors receive a written objection from the DIP Lender or the Directing Cash Collateral Agent (prior to repayment in full of the Prepetition ABL Obligations, acting at the direction of the requisite lenders under the Prepetition ABL Credit Agreement (the "Prepetition

---

[8]   "Directing Cash Collateral Agent" shall mean the Prepetition ABL Agent or, following the indefeasible payment in full in cash and cash collateralization (as applicable) of all of the Prepetition ABL Obligations, the Prepetition Priority Term Loan Agent or, following the indefeasible payment in cash of all Prepetition Priority Term Loan Obligations, the Prepetition Existing Term Loan Agent.

ABL Required Lenders")) prior to the Budget Transition Date; *provided* that the DIP Lender shall only be entitled to object to line items "Merch, freight and duty (incl. transfers to RSI)," "Vendor prepayments," and "Buyers' merchandise deposits" (collectively, the "DIP Funding Line Items"). In the event the DIP Lender timely objects to a Proposed Budget, DIP Funding Line Items pursuant to the prior Approved Budget shall remain in full force and effect until the DIP Lender approves the DIP Funding Line Items pursuant to any Proposed Budget (with email from the DIP Lender's counsel to the Debtors' counsel being sufficient). In the event the Directing Cash Collateral Agent (prior to the repayment in full of the Prepetition ABL Obligations, acting at the direction of the Prepetition ABL Required Lenders) timely objects to a Proposed Budget, the prior Approved Budget shall remain in full force and effect until the Directing Cash Collateral Agent, as applicable, approves any Proposed Budget (with email from the Directing Cash Collateral Agent's counsel to the Debtors' counsel being sufficient).[9]

(b)    *Variance Testing; Permitted Variances*. The Debtors shall at all times use Cash Collateral and proceeds of the DIP Facility solely for the purposes included in the Approved Budget and the DIP Loan Documents. By not later than Thursday of the second full week after the Petition Date, and on each Thursday thereafter (or, if such Thursday not a Business Day, then the immediately succeeding Business Day), the Debtors shall deliver to the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, the Majority Priority Term Loan Lenders, the Majority Existing Term Loan Lenders, the advisors to each of the foregoing, and the U.S. Trustee, a variance report for the applicable Testing Period (as defined below) in form and detail reasonably acceptable to the Directing Cash

---

[9]    With respect to the Prepetition ABL Agent, the approval of any Proposed Budget or any modifications to any Approved Budget, as well as waiving any Cash Collateral Termination Event resulting from, among other things, any Variance Test showing an adverse variance exceeding a Permitted Deviation shall, in each case, be subject to the prior approval of such budget (email being sufficient) by the Prepetition ABL Required Lenders.

Collateral Agent, which shall be no less detailed than any other cash flow reporting provided to the Directing Cash Collateral Agent (a "Variance Test"), showing comparisons of (a) aggregate cash receipts for the Testing Period, compared to the aggregate projected cash receipts of the Debtors for such Testing Period as set forth in the Approved Budget and (b) aggregate and line item actual cash disbursements of the Debtors for such Testing Period compared to the projected cumulative cash disbursements for such Testing Period as set forth in the Approved Budget (any such difference on an aggregate basis).  Each Variance Test shall indicate whether there are any adverse variances that exceed the Permitted Deviation (as defined below) and shall provide a written explanation for such variances.  "Permitted Deviation" shall mean (a) with respect to the aggregate Variance Test for any applicable Testing Period, based on receipts solely with respect to the line items reflecting receipts of the Store Closing Sales (as defined in the Agency Agreement), an aggregate unfavorable variance equal to or less than 12.5% (the "Receipts Permitted Deviation"), and (b) with respect to the aggregate Variance Test for any applicable Testing Period based on disbursements, an aggregate unfavorable variance equal to or less than 10% (the "Disbursements Permitted Deviation").  It shall be a condition precedent to the use of Cash Collateral that the Debtors shall have delivered an Approved Budget in accordance with paragraph 7(a).  A Variance Test showing noncompliance with the Permitted Deviations, shall, constitute a Cash Collateral Termination Event (as defined below) hereunder unless waived by the Directing Cash Collateral Agent (which waiver shall not require this Court's authorization or notice) (which waiver shall not require this Court's authorization or notice).  A "Testing Period" means each rolling cumulative four-week period beginning the full week ending August 30, 2025; *provided* that the initial Testing Period shall be the prior rolling two-week period ending August 16, 2025, which initial Variance Test shall be delivered August 21, 2025, and the next Testing Period

shall be the prior rolling cumulative three-week period ending the week ended August 23, 2025, which Variance Test shall be delivered August 28, 2025.

       8.     *Perfection of DIP Liens and Adequate Protection Liens.*

      (a)    This Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, and, subject to the Challenge Period, the Prepetition Liens and the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, execution, filing, registration, recording, continuation, or possession.  Without in any way limiting the automatically valid effective perfection of the DIP Liens and Adequate Protection Liens granted pursuant to paragraphs 3 and 6 hereof, and the preceding sentence, the DIP Lender and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the DIP Lender and the Prepetition Secured Parties (as applicable), as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, continuation statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of securities, or to amend or modify security documents, or enter into intercreditor agreements, or to subordinate existing liens and any other similar action or action in connection therewith in a manner not inconsistent herewith or take any other action in order to document, validate and perfect the liens and security interests granted to them hereunder ("Perfection Actions").  Whether or not the DIP Lender or the Prepetition Secured Parties shall take such Perfection Actions, subject to the Challenge Period as to the Prepetition Secured Parties, the liens and security interests granted hereunder shall be deemed valid, perfected, allowed,

enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Lender, Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept a certified copy of this Interim Order for filing and/or recording, as applicable.  The Automatic Stay shall be modified to the extent necessary to permit the DIP Lender, Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, and the Prepetition Priority Term Loan Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

9.    *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties (subject to any applicable contractual limitations on such rights in the Prepetition Intercreditor Agreements or otherwise) may request further or different adequate protection and the Debtors or any other party in interest may contest any such request.

10.    *Carve-Out.*

(a)    As used in this Interim Order, the term "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, if any, pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable and

51

documented fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees")[10] incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first Business Day following delivery by the Directing Cash Collateral Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first Business Day following delivery by the Directing Cash Collateral Agent, as applicable, of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Directing Cash Collateral

---

[10] Upon entry of this Interim Order, the Debtors shall fund into the Funded Reserve Account from cash on hand $1,500,000 of fees for the benefit of Houlihan Lokey Capital, Inc. ("HL" and such fees, the "Initial HL Fees"), as investment banker to the Debtors.  As soon as practicable after (a) the Prepetition ABL Obligations are paid in full in cash and (b) the Letters of Credit are cash collateralized in accordance with paragraph 19 of this Interim Order, the Debtors shall fund into the Funded Reserve Account from Cash on hand an additional $1,500,000 of fees plus any amounts paid in monthly fees of HL incurred and allowed during the Chapter 11 cases for the benefit of HL (the "Additional HL Fees" and together with the Initial HL Fees, the "HL Fees").  For the avoidance of doubt, nothing herein shall prejudice the rights of HL to earn and be paid additional fees beyond the HL Fees after all Prepetition ABL Obligations are satisfied in full.  Upon the funding of the Initial HL Fees into the Funded Reserve Account, the Initial HL Fees (and no more, notwithstanding anything to the contrary herein) shall be deemed part of the Carve-Out. The Initial HL Fees funded into the Funded Reserve Account shall be disbursed as follows: *first*, to pay any monthly fees of HL incurred and allowed during the Chapter 11 Cases and such payments shall reduce the Carve-Out and *second*, any remaining amounts shall be used to pay any other allowed fees of HL under their engagement letter earned during these Chapter 11 Cases.

RLF1 33590598v.2

Agent to the Debtors and their lead restructuring counsel (with courtesy copies to the U.S. Trustee and counsel to the Creditors' Committee), which notice may be delivered following the occurrence and during the continuation of a Cash Collateral Termination Event (as defined below) and upon termination of the Debtors' right to use Cash Collateral by the Prepetition Secured Parties, in each case, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    <u>Fee Estimates</u>.  Not later than 7:00 p.m. New York time on the third Business Day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the unpaid amount of fees and expenses (collectively, "<u>Estimated Fees and Expenses</u>") incurred during the preceding week by such Professional Person (through Saturday of such week, the "<u>Calculation Date</u>"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "<u>Weekly Statement</u>"); *provided* that, absent the prior written consent of the Directing Cash Collateral Agent to do so prior to closing of the Sale Transaction, Estimated Fees and Expenses accrued in the period between entry of this Interim Order and closing of the Sale Transaction shall be reserved and funded directly from proceeds of the Sale Transaction; *provided*, *further*, within one (1) Business Day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional Weekly Statement (the "<u>Final Statement</u>") setting forth a good-faith estimate of unpaid amount of fees and expenses incurred during the period commencing on the calendar day after the prior Calculation Date and concluding on the Termination Declaration Date (and the Debtors shall cause each such Weekly Statement or Final Statement to be delivered promptly to the DIP Lender and the Directing Cash Collateral

53

Agent). If any Professional Person fails to deliver a Weekly Statement or Final Statement within two (2) calendar days after such Weekly Statement or Final Statement is due, such Professional Person's entitlement to any funds in the Pre-Carve Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement or Final Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person, unless otherwise ordered by the Court.

      (c)    <u>Carve-Out Reserves</u>.

      (i)    Commencing on August 13, 2025, and on or before the Thursday of each week thereafter until a Termination Declaration Date, the Debtors shall, subject to the Approved Budget, utilize all cash on hand as of such date to fund a reserve in an amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses of Debtor Professionals reflected in the Weekly Statements delivered on the immediately prior Wednesday (or next succeeding Business Day) to the Debtors, the Directing Cash Collateral Agent, and the DIP Lender and (2) the aggregate amount of unpaid Allowed Professional Fees of Debtors Professionals contemplated to be incurred in the Approved Budget during the applicable time period, *plus* (B) the lesser of (1) the aggregate unpaid amount of all Estimated Fees and Expenses of Committee Professionals reflected in the Weekly Statements delivered on the immediately prior Wednesday (or next succeeding Business Day) to the Debtors, the DIP Lender, and the Directing Cash Collateral Agent and (2) the aggregate amount of unpaid Allowed Professional Fees of Committee Professionals contemplated to be incurred in the Approved Budget during the applicable time period. The Debtors shall deposit and hold such amounts in a segregated

54

account maintained by the Debtors in trust at an authorized depository under the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* for the U.S. Trustee (the "Funded Reserve Account") to pay such Allowed Professional Fees (the "Funded Reserves") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)     On the day on which a Carve Out Trigger Notice is given by the Directing Cash Collateral Agent to the Debtors (the "Termination Declaration Date"), the Debtors shall utilize the Funded Reserve Account and all available cash on hand as of such date, to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees *plus* the amounts set forth in paragraph 10(a)(i)-(ii).  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims (including, for the avoidance of doubt, any DIP Obligations, Adequate Protection Obligations, or Prepetition Secured Obligations).

(iii)     On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize cash in the Funded Reserve Account and all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the

55

extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Obligations and/or Prepetition Secured Obligations in accordance with the terms of the Prepetition Intercreditor Agreements, this Interim Order, and the DIP Loan Documents, unless the DIP Obligations and Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Obligations and Prepetition Secured Obligations in accordance with the terms of the DIP Loan Documents (and relative priorities set forth therein) and Prepetition Intercreditor Agreements, unless the DIP Obligations and Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Prepetition Credit Documents, or this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph 10, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve-Out Reserves, up to the applicable amount set forth in this paragraph 10, prior to making any payments on account of the DIP Obligations or Prepetition Secured Obligations or to any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Prepetition Credit Documents, this Interim Order, or the DIP Loan Documents, following delivery of a Carve Out Trigger Notice, the DIP Lender and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any

assets) of the Debtors until the Carve-Out Reserves have been fully funded, but the DIP Lender and the Prepetition Secured Parties shall have a security interest in any residual interest in the Carve-Out Reserves, and any excess shall be paid to satisfy the DIP Obligations and Prepetition Secured Obligations in accordance with the terms of the DIP Loan Documents, Prepetition Intercreditor Agreements, and the Prepetition Credit Documents.  Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute loans under the DIP Loan Documents or increase or reduce the DIP Obligations or an advance or extension of credit under the Prepetition Credit Documents or increase or reduce the obligations under the Prepetition Credit Documents, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve-Out, Post-Carve Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees and/or the fees described in paragraph 10(a)(i)-(ii) due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, the DIP Loan Documents, or any Prepetition Credit Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the DIP Collateral, Prepetition Collateral, the Adequate Protection Liens, the Adequate Protection Claims, the 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the obligations under the DIP Loan Documents and the Prepetition Credit Documents.

(d)    _Payment of Allowed Professional Fees Prior to the Termination Declaration Date_.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

RLF1 33590598v.2

(e)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the Prepetition Secured Parties or the DIP Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code. Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)     <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(g)     <u>Use of AWS Claire's, LLC DIP Loans</u>.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order, no portion of the DIP Loans or DIP Facility Amount shall be used for any purpose other than as set forth in the Asset Purchase Agreement (including, but not limited to, section 2.2(b) thereof) including, but not limited to, to fund any portion of the Carve-Out or Carve-Out Reserves.

11.     *Protection of DIP Lender's Rights.*

(a)     The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except  as otherwise permitted by (i) the DIP Loan Documents (including the DIP Term Sheet) and the DIP Funding Line Items under the Approved Budget, (ii) the Sale Documents (as defined in the Sale Order), or (iii) in the case of any ABL Priority Collateral, pursuant to an order of the Court.

(b)     Upon the occurrence of an Event of Default (as defined in the DIP Term Sheet) that has not been waived by the DIP Lender under the DIP Term Sheet (or applicable DIP Loan Documents), the DIP Lender on not less than five (5) Business Days' notice (a "DIP Termination Notice") to lead restructuring counsel to the Debtors, lead restructuring counsel to the Prepetition ABL Agent, lead restructuring counsel to the Prepetition Existing Term Loan Agent, lead restructuring counsel to the Prepetition Priority Term Loan Agent, counsel to the Majority Priority Term Loan Lenders, counsel to the Majority Existing Term Loan Lenders, counsel to the DIP Lender, counsel to the Creditors' Committee, and the U.S. Trustee (the "Remedies Notice Parties") (such five (5) Business Day period, the "DIP Remedies Notice Period"), and unless the Court orders otherwise (*provided* that during the DIP Remedies Notice Period, the Debtors, the DIP Lender, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing (with the DIP Lender being deemed to consent to such emergency hearing) with the Court for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing, and *provided further* that if a request for any such hearing is made prior to the end of the DIP Remedies Notice Period, the DIP Remedies Notice Period shall be continued until the Court hears and rules with respect thereto), the DIP Lender may (i) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Loan Parties but without affecting any of the DIP Obligations or the DIP Liens securing such DIP Obligations; (ii) declare all DIP Obligations to be immediately due and payable; and (iii) terminate, reduce, or restrict any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility.  The Automatic Stay is hereby deemed modified and vacated to the extent necessary to permit (i) upon the occurrence and during the continuance of an Event of Default, the DIP Lender to deliver a DIP Termination Notice and (ii) such other actions as described in the

foregoing, provided that during the DIP Remedies Notice Period, unless the Court orders otherwise, the Automatic Stay (to the extent applicable) shall remain in effect.

12.     *Protection of Prepetition Secured Parties' Rights*.

(a)     Notwithstanding anything to the contrary herein, prior to the payment in full, in cash of the Prepetition Secured Obligations (including the 507(b) Claims and cash collateralization of all Prepetition Letters of Credit), the rights of the Prepetition Secured Parties shall be subject to the terms of the Prepetition Intercreditor Agreements.

(b)     Upon the occurrence of any of the below events (a "Cash Collateral Termination Event"), the Directing Cash Collateral Agent on not less than five (5) Business Days' notice (a "Cash Collateral Default Notice") to the Remedies Notice Parties (such five (5) Business Day period, the "Cash Collateral Remedies Notice Period"), and unless the Court orders otherwise (*provided* that during the Cash Collateral Remedies Notice Period, the Debtors, the DIP Lender, the Creditors' Committee and/or any party in interest shall be entitled to seek an emergency hearing (with the Directing Cash Collateral Agent being deemed to consent to such emergency hearing) with the Court for the purpose of contesting whether, in fact, a Cash Collateral Termination Event has occurred and is continuing or to obtain non-consensual use of Cash Collateral, and *provided further* that if a request for any such hearing is made prior to the end of the Cash Collateral Remedies Notice Period, the Cash Collateral Remedies Notice Period, the Cash Collateral Remedies Notice Period shall be continued until the Court hears and rules with respect thereto), the Directing Cash Collateral Agent may terminate its consent to the Debtors' use of Cash Collateral:

- The failure to make any payment pursuant to paragraph 5 or 6 hereof;

- The filing of any motion or pleading by the Debtors to stay, vacate, reverse, amend, or modify the Interim Order or Final Order in a manner adverse to the Prepetition Secured Parties;

- The Court shall have entered an order, or the Debtors shall have filed a motion or application seeking an order, or the Debtors fail to timely contest a motion or application filed by another party seeking an order, (i) converting one or more of the Chapter 11 Cases of a Debtor to a case under chapter 7 of the Bankruptcy Code, (ii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code, a trustee, or a responsible officer, in one or more of the Chapter 11 Cases of a Debtor, or (iii) dismissing the Chapter 11 Cases;

- The entry of an order appointing a trustee, receiver or examiner with expanded powers with respect to any of the Debtors;

- The Debtors shall attempt to invalidate, reduce, or otherwise impair the Prepetition Secured Obligations, the Prepetition Liens, or the Adequate Protection Liens;

- The Debtors lose the exclusive right to file and solicit acceptances of a chapter 11 plan;

- The creation of any liens on Collateral that are *pari passu* or senior to the liens in favor of the applicable Prepetition Secured Parties (except the Carve-Out and other than the DIP Liens);

- The effective date of any chapter 11 plan;

- The conversion of any of the Chapter 11 Cases to a case under chapter 7;

- The failure to (i) deliver any Borrowing Base Certificate (as defined herein) when required, (ii) provide daily balances of cash by legal entity (in form consistent with the reporting delivered to the Prepetition ABL Agent prior to the Petition Date), or (iii) the failure to make any other adequate protection payments required to be made under the Interim Order or Final Order to the Prepetition Secured Parties, in each case after three (3) Business Days' notice and an opportunity to cure;

- The lifting of the Automatic Stay with respect to or the exercise of any remedies against any portion of the Collateral with a fair value in excess of $1,000,000;

- The expenditure by any of the Debtors of Cash Collateral other than in accordance with the Approved Budget (subject to the Permitted Deviations ) (including by funding any expenditures prior to their budgeted time for payment) or the failure to provide any of the reports and other information required by the paragraph titled "Budget Reporting" of this Interim Order;

- A failure by the Debtors of any Variance Test (subject to the Permitted Deviations);

- A material breach by the Debtors of this Interim Order (*provided* that the terms and provisions with respect to adequate protection shall be deemed material) with respect to the Prepetition Secured Parties;

61

- The stay, reversal, vacatur, rescission or other modification of this Interim Order or the Final Order in a manner materially adverse to the Prepetition Secured Parties;

- Any of the Debtors file any motions, pleadings, briefs, or support any other parties in furtherance of any event that would constitute a Cash Collateral Termination Event;

- The Asset Purchase Agreement shall be terminated or modified in a manner adverse to the Prepetition Secured Parties, without the prior written consent of the Directing Cash Collateral Agent.

- The Debtors shall not have filed a plan and disclosure statement, in each case in form and substance acceptable to the Directing Cash Collateral Agent, on or prior to August 23, 2025;

- The Court shall not have entered the Final Order, in form and substance acceptable to the Directing Cash Collateral Agent, on or prior to September 10, 2025;

- The Sale Transaction shall not be approved by an order of the Bankruptcy Court, in form and substance acceptable to the Directing Cash Collateral Agent, on or prior to September 10, 2025, or the motion to sell the assets of the Debtors pursuant to the Sale Transaction shall be denied by the Court;

- The Closing, as defined in the Asset Purchase Agreement, shall not have occurred on or prior to September 26, 2025;

- The occurrence of an Event of Default under the DIP Term Sheet;

- The failure of the Debtors to acquire and receive at least $6 million of cost value of new inventory purchased with the proceeds of the DIP Loans by September 5, 2025;

- Solely to the extent any Prepetition ABL Obligations remain outstanding, and solely with respect to termination of Cash Collateral that constitutes ABL Priority Collateral, the earlier of (i) the sale of all ABL Priority Collateral, whether through a going-concern sale, liquidation, or otherwise, and (ii) October 3, 2025, which may be extended by the Directing Cash Collateral Agent in its sole discretion; and

- Any bidding procedures motion, bidding procedures order, de minimis assets procedures motion, de minimis asset procedures order, stalking horse bid, asset purchase agreements, sale orders and all other related documents pursuant to which the Debtors may sell assets pursuant to Section 363 of the Bankruptcy Code outside of the ordinary course of business (the "Sale Documents") or agency agreement of any liquidation firm in connection with a liquidation of the Debtors (the "Agency Agreement") are not in form and substance acceptable to the Directing Cash Collateral Agent, or the Sale Documents or such Agency Agreement are modified in any material manner without the prior written consent of the Directing Cash Collateral Agent.

it being understood that each Cash Collateral Termination Event may be waived, extended, or

consented to, as applicable, by written consent (email being sufficient) by the Directing Cash

Collateral Agent in its sole discretion and no approval of, or notice to, this Court shall be required for any waivers or extensions provided by the Directing Cash Collateral Agent under this paragraph 12.

13.    Subject to the Cash Collateral Remedies Notice Period, upon the occurrence of a Cash Collateral Termination Event, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, and the Prepetition Secured Parties may, subject to the terms of the Prepetition Intercreditor Agreements, the Carve-Out, and the DIP Liens, as applicable, exercise the rights and remedies available under the Prepetition Credit Documents, this Interim Order, or applicable law, including without limitation, (i) terminating the Debtors' ability to use Cash Collateral (which, for the avoidance of doubt, shall not include any of the proceeds of the DIP Facility) (ii) foreclosing upon and selling all or a portion of the Collateral that constitutes ABL Priority Collateral in order to collect the Adequate Protection Obligations or the Prepetition Secured Obligations, (iii) take any other actions or exercise any other rights or remedies permitted under this Interim Order, the Prepetition Credit Documents, or applicable law, subject to the Prepetition Intercreditor Agreements and the relative priorities set forth herein and therein; *provided* that, notwithstanding anything herein to the contrary, a Cash Collateral Termination Event shall (1) not restrict the Debtors' ability to access the DIP Facility and use any amounts funded thereunder in accordance with the Approved Budget and (2) the Prepetition Secured Parties shall not seek to restrict or limit the Debtors' ability to use the proceeds of the DIP Facility. The Automatic Stay is hereby deemed modified and vacated to the extent necessary to permit (i) upon the occurrence and during the continuance of a Cash Collateral Termination Event, the Directing Cash Collateral Agent to (x) deliver a Cash Collateral Default Notice and (y) subject to the Debtors' permitted uses of Cash Collateral during the Cash Collateral Remedies Notice Period,

63

terminate any use of Cash Collateral and (ii) such other actions as described in the foregoing, provided that during the Cash Collateral Remedies Notice Period, unless the Court orders otherwise, the Automatic Stay (to the extent applicable) shall remain in effect. Notwithstanding anything to the contrary herein, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, and the Prepetition Secured Parties may only enter upon a leased premises of the Debtors following a Cash Collateral Termination Event and expiration of the Cash Collateral Remedies Notice Period in accordance with: (a) any agreement in writing between the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties and any applicable landlord; (b) pre-existing rights of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties under applicable law; (c) consent of the applicable landlord; or (d) further order of this Court following notice and a hearing; *provided*, *however*, that counterparties to unexpired leases reserve any and all rights pursuant to section 365(d)(3) of the Bankruptcy Code and similar laws.

(a)     No rights, protections or remedies of the DIP Lender or the Prepetition Secured Parties granted by this Interim Order, the DIP Loan Documents, or the Prepetition Credit Documents, shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

14.     *Limitation on Charging Expenses Against Collateral.* Subject to entry of the Final Order granting such relief, except to the extent of the Carve-Out, no costs or expenses of

administration of the Chapter 11 Cases or any successor cases to these Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Prepetition Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable, and no consent shall be implied from any other action, inaction or acquiescence by the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent or the Prepetition Secured Parties to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise;.

15.    *No Marshaling*.  Subject to entry of the Final Order granting such relief, in no event shall the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.  Further, subject to entry of the Final Order granting such relief, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to each of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority

65

Term Loan Agent or the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any DIP Collateral or Prepetition Collateral.

16.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Lender or Prepetition Secured Parties pursuant to the provisions of this Interim Order, the DIP Loan Documents, or any subsequent order of the Court shall, subject to the Challenge Period with respect to the Prepetition Secured Parties, be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of the Final Order granting such relief, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

17.     *Preservation of Rights Granted Under this Interim Order.*

(a)     Other than (i) the Carve-Out and (ii) other claims and liens expressly granted or permitted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Lender or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this Interim Order or the DIP Loan Documents (including the DIP Term Sheet), the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit

66

(including any regulatory body), commission, board, or court for any liability of the Debtors; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Debtors.

(b)    Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or converting these Chapter 11 Cases to cases under chapter 7:  (i) the DIP Liens, the 507(b) Claims, the Adequate Protection Liens, and the Prepetition Liens, and any claims related to the foregoing, shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and all Adequate Protection Obligations shall have been paid in full in cash (and all such liens and claims shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order, including with respect to the Carve-Out, shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens, and security interests referred to in this paragraph and otherwise in this Interim Order.

(c)    If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay; or (ii) the validity, priority or enforceability of the DIP Liens, the Adequate Protection Liens, the Prepetition Liens, or the Carve-Out.  Notwithstanding any such reversal, modification, vacatur, or stay, any liens or claims granted to the DIP Lender or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Lender, the Prepetition ABL Agent, the Prepetition

67

Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable, of the effective date of such reversal, modification, vacatur, or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender and the Prepetition Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges, and benefits arising under section sections 364(e) and 363(m) of the Bankruptcy Code and this Interim Order with respect to all uses of Cash Collateral and Adequate Protection Obligations.

(d)      Except as expressly provided in this Interim Order or in the DIP Loan Documents, the DIP Liens, the DIP Obligations, the Adequate Protection Liens, the Adequate Protection Obligations, and the Adequate Protection Claims and all other rights and remedies of the DIP Lender and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Loan Documents and the Carve-Out shall survive, and shall not be modified, impaired or discharged by:  the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, or terminating the joint administration of these Chapter 11 Cases or by any other act or omission;  the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code;  the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations and Adequate Protection Obligations, as applicable.  The terms and provisions of this Interim Order shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, DIP Obligations, Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Lender and the Prepetition Secured Parties, as applicable, shall continue in full force and effect until all DIP

68

Obligations, Adequate Protection Claims, and Prepetition Secured Obligations, as applicable, are indefeasibly paid in full in cash or, with respect to the DIP Obligations, otherwise satisfied in a manner agreed to by the DIP Lender, as set forth herein and the DIP Loan Documents, and the Carve-Out shall continue in full force and effect.

(e)    Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (i) the DIP Lender's and the Prepetition Secured Parties', as applicable, respective rights to seek any other or supplemental relief in respect of the Debtors (including, the right to seek additional or different adequate protection), or (ii) any rights of the DIP Lender or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law to (a) request modification of the Automatic Stay, (b) request dismissal of any of the Chapter 11 Cases or successor cases, (c) request conversion of any of the Chapter 11 Cases to cases under Chapter 7, (d) seek appointment of a chapter 11 trustee or examiner with expanded powers, (e) seek an injunction, (f) oppose any request for use of Cash Collateral, (g) object to any sale of assets, or (h) propose a chapter 11 plan. Other than as expressly set forth in this Interim Order, any other rights, claims, and privileges (whether legal, equitable, or otherwise) of the DIP Lender and the Prepetition Secured Parties are fully preserved.

(f)    Other than as set forth in this Interim Order and the DIP Loan Documents, subject to the Carve-Out, neither the DIP Liens (except with respect to the Prepetition ABL Liens and the ABL Adequate Protection Liens, which shall be senior to the DIP Liens) nor the Adequate Protection Liens (except with respect to DIP Liens, which shall be senior to the Priority Term Loan Adequate Protection Liens and the Existing Term Loan Adequate Protection Liens), shall be made subject to or *pari passu* with any lien or security interest granted in any of the Cases or arising

69

after the Petition Date, and neither the DIP Liens (except with respect to the Prepetition ABL Liens and the ABL Adequate Protection Liens) nor the Adequate Protection Liens (except with respect to DIP Liens, which shall be senior to the Priority Term Loan Adequate Protection Liens and the Existing Term Loan Adequate Protection Liens) shall be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code.

(g)     Unless and until all DIP Obligations are indefeasibly paid in full, in cash, except as otherwise provided for in the DIP Loan Documents and this Interim Order, the Prepetition Priority Term Loan Secured Parties and the Prepetition Existing Term Loan Secured Parties shall:  (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted pursuant to the Prepetition Credit Documents or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral; and (ii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral, except as set forth in paragraph 8 herein.

(h)     Unless and until all Prepetition ABL Obligations and Adequate Protection Claims in respect of the Prepetition ABL Obligations are indefeasibly paid in full, in cash, the DIP Lender shall have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted pursuant to the DIP Loan Documents or this Interim Order on the ABL Priority Collateral, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral.

18.     *Payment of Fees and Expenses*.  The Debtors are authorized to and shall pay the Adequate Protection Fees and Expenses.  Subject to the review procedures set forth in this

70

paragraph 18, payment of all Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court, however, any time that professionals for the Prepetition Secured Parties seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each professional shall provide summary copies of its invoices including aggregate amounts of fees and expenses and total amount of time on a per-professional basis (which shall not be required to contain time detail and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law) to the Debtors, lead restructuring counsel to the DIP Lender, lead restructuring counsel to the Prepetition ABL Agent, lead restructuring counsel to the Prepetition Existing Term Loan Agent, lead restructuring counsel to the Prepetition Priority Term Loan Agent, counsel for the Creditors' Committee, and the U.S. Trustee (together, the "Review Parties").  Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within seven (7) calendar days after the receipt by the Review Parties (the "Review Period").  If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the end date of the Review Period, the Debtors shall pay such invoices within five (5) Business Days of the end of the Review Period.  If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether such amounts arose or were incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the

71

parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on entry of this Interim Order any Adequate Protection Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or on behalf of, the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the Debtors). No attorney or advisor to any Prepetition Secured Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.

19.    *Letters of Credit*. The Debtors shall be authorized to maintain Prepetition Letters of Credit prior to the Petition Date on an uninterrupted basis in accordance with the same practices and procedures as were in effect prior to the Petition Date in each case subject to the terms of the Prepetition ABL Credit Agreement, and to take all actions reasonably appropriate with respect thereto; *provided* that the Debtors shall collateralize the Prepetition Letters of Credit in accordance with the procedures set forth in the Prepetition ABL Credit Agreement and on terms and conditions otherwise satisfactory to the Prepetition ABL Agent in its reasonable discretion after the repayment in full of the outstanding Prepetition ABL Obligations, which Prepetition Letters of Credit shall be cash collateralized at 105%; *provided*, *further*, the Debtors shall not issue any Prepetition Letters of Credit on a postpetition basis without the prior written consent of the Prepetition Secured Parties.

20.    *Effect of Stipulations on Third Parties*. The Debtors' stipulations, admissions, agreements and releases contained in this Interim Order shall be binding upon the Debtors in all circumstances and for all purposes. The Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in the

Chapter 11 Cases and any other person or entity acting or seeking to act on behalf of the Debtors'

estates, including any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors,

in all circumstances and for all purposes unless:  (a) such committee or any other party in interest

(including the Special Committee solely with respect to matters related to the Special Investigation

(as such terms are defined in the First Day Declaration)) with requisite standing (subject in all

respects to any agreement or applicable law that may limit or affect such entity's right or ability to

do so), has timely filed an adversary proceeding or contested matter (subject to the limitations

contained herein, including, *inter alia*, in this paragraph) by no later than (i) seventy-five (75)

calendar days after entry of this Interim Order; *provided* that*, if a chapter 11 trustee is appointed

or elected or if the Chapter 11 Cases are converted to chapter 7 and a chapter 7 trustee is appointed

or elected prior to the end of the Challenge Period, then the Challenge Period for any such chapter

7 trustee or chapter 11 trustee shall be extended (solely as to such chapter 7 trustee and chapter 11

trustee) to the date that is the later of (1) seventy-five (75) calendar days after entry of this Interim

Order and (2) thirty (30) days after the appointment of such chapter 7 trustee or chapter 11 trustee;

and (ii) any such later date as (w) has been agreed to by the Prepetition ABL Agent with respect

to the Prepetition ABL Obligations or the Prepetition ABL Liens, (x) has been agreed to by the

Prepetition Existing Term Loan Agent with respect to the Prepetition Existing Term Loan

Obligations or the Prepetition Existing Term Loan Liens, (y) has been agreed to by the Prepetition

Priority Term Loan Agent with respect to the Prepetition Priority Term Loan Obligations or the

Prepetition Priority Term Loan Liens, or (z) has been ordered by the Court for cause upon a motion

filed and served within any applicable period (the time period established by the foregoing clauses

(i)-(ii), the "Challenge Period"), (A) objecting to or challenging the amount, validity, perfection,

enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Liens, or

(B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Challenges") against the Prepetition Secured Parties or their respective subsidiaries, affiliates, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each, a "Representative" and, collectively, the "Representatives") in connection with matters related to the Prepetition Credit Documents, the Prepetition Secured Debt, the Prepetition Liens, and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (1) the Debtors' stipulations, admissions, agreements, and releases contained in this Interim Order shall be binding on all parties in interest; (2) the obligations of the Debtors under the Prepetition Credit Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except under the Prepetition Intercreditor Agreements), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in the Chapter 11 Cases, any subsequent chapter 7 case(s), or otherwise;

(3) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than pursuant to the Prepetition Intercreditor Agreements), or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity, including any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in the Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Debtors, the Prepetition Credit Documents, the Prepetition Secured Debt, the Prepetition Liens and the Prepetition Collateral shall be deemed forever waived, released, and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements, and releases contained in this Interim Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each other statutory or nonstatutory committee appointed

75

or formed in the Chapter 11 Cases and on any other person or entity.  Nothing in this Interim Order vests or confers on any Person (as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Documents, the Prepetition Secured Debt, or the Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay the Chapter 11 Cases or confirmation of any plan of reorganization.  For the avoidance of doubt, notwithstanding anything else to the contrary in this Interim Order, any chapter 7 or chapter 11 trustee appointed or elected in these cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations and stipulations of the Debtors in this Interim Order.

21.     *Limitation on Use of Collateral*.  Notwithstanding any other provision of this Interim Order or any other order entered by the Court, none of the Collateral (including Cash Collateral), or any portion of the Carve-Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against the Prepetition Secured Parties, or their respective predecessors-in-interest, agents, affiliates, Representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Secured Debt, the Adequate Protection

Obligations, and/or Adequate Protection Liens granted to the Prepetition Secured Parties, as applicable, or (ii) challenging the amount, validity, perfection, priority, or enforceability of or asserting any defense, counterclaim, or offset with respect to the Prepetition Secured Debt and/or the liens, claims, rights, or security interests securing or supporting the Prepetition Secured Debt or the Adequate Protection Claims granted under this Interim Order, the Final Order, or the Prepetition Credit Documents in respect of the Prepetition Secured Debt, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (provided that, notwithstanding anything to the contrary herein, the proceeds of the Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate but not to prosecute (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap for both (A) and (B) of no more than $50,000), (b) attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition ABL Agent's, the Prepetition Existing Term Loan Agent's, the Prepetition Priority Term Loan Agent's, or the Prepetition Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Debt or Prepetition Collateral, as applicable, and the liens, claims, and rights granted to such parties under the Interim Order or Final Order, as applicable, each in accordance with the Prepetition Credit Documents and this Interim Order; (c) attempts to seek to modify any of the rights and remedies granted to the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties, under this Interim Order or the Prepetition Credit Documents, as applicable, other than in accordance with this Interim Order; (d) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the

Collateral or any portion thereof that are senior to, or on parity with, the Adequate Protection Liens or the 507(b) Claims granted to the Prepetition Secured Parties; or (e) to pay or to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are approved or authorized by the Court, agreed to in writing by the DIP Lender and Directing Cash Collateral Agent, or expressly permitted under this Interim Order (including the Approved Budget, subject to permitted variances), in each case unless all Prepetition Secured Debt, Adequate Protection Obligations, and claims granted to the each Prepetition Secured Party under this Interim Order, have been paid in full in cash (including the cash collateralization of any letters of credit). For the avoidance of doubt, nothing in this paragraph 21 shall limit the Debtors' right to use Collateral to contest that an Event of Default under the DIP Facility or Cash Collateral Termination Event has occurred hereunder pursuant to and consistent with paragraphs 11 and 12 of this Interim Order.

22.    *Limitations on Use of DIP Facility Proceeds*.  The DIP Facility and funds provided thereunder shall only be used to fund payments approved by the DIP Lender in accordance with the DIP Funding Line Items of the Approved Budget, the DIP Term Sheet, and the Asset Purchase Agreement.

23.    *Indemnification*.  Without limitation to any other right to indemnification, the Prepetition Secured Parties shall be and hereby are indemnified (as applicable) as provided in the Prepetition Credit Documents; *provided* that the Debtors shall not indemnify the Prepetition Secured Parties with respect to a successful Challenge.  No exception or defense in contract, law, or equity exists as of the date of this Interim Order to any obligation set forth, as the case may be, in this paragraph 23, or in the Prepetition Credit Documents to indemnify and/or hold harmless the Prepetition Secured Parties, as the case may be, and any such defenses are hereby waived.

78

24.      *No Waiver for Failure to Seek Relief.*  The failure or delay of the DIP Lender or the Prepetition Secured Parties to seek relief or otherwise exercise their respective rights and remedies under this Interim Order, the DIP Documents, the Prepetition Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of their respective rights hereunder, thereunder, or otherwise.  No delay on the part of any party in the exercise of any right or remedy under this Interim Order shall preclude any other or further exercise of any such right or remedy or the exercise of any other right or remedy.

25.      *Binding Effect; Successors and Assigns.*  The DIP Loan Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, the other Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, the other Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that, except to the extent expressly set forth in this Interim Order the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent and the other Prepetition Secured Parties shall have no obligation to permit the use of

79

the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

26.    *Exculpation*.  Nothing in this Interim Order, the Prepetition Credit Documents, the DIP Loan Documents, or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender (solely in its capacity as DIP Lender) or any Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.   Neither the DIP Lender nor Prepetition Secured Parties shall, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, Adequate Protection Collateral, or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof; or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral, Adequate Protection Collateral, or Prepetition Collateral shall be borne by the Debtors.

27.    *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Loan Documents, to permit the use of the DIP Collateral or the Prepetition Collateral (including Cash Collateral), or merely by the fact that the DIP Lender or Prepetition Secured Parties exercise any rights or remedies as and when permitted pursuant to this Interim Order, the DIP Loan Documents, or the Prepetition Credit Documents, none of the Prepetition Secured Parties or the DIP Lender shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or

"Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent or other Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

28.     *Master Proofs of Claim*. The Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent and/or any other Prepetition Secured Parties shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of themselves or the Prepetition Secured Parties for payment of the Prepetition Secured Debt arising under the Prepetition Credit Documents, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts under the Prepetition Credit Documents. The statements of claim in respect of such indebtedness set forth in this Interim Order are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status. However, in order to facilitate the processing of claims, each of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent is authorized, but not directed or required, to file in the Debtors' lead Chapter 11 Case *In re Claire's Holdings LLC*, Case No. 25-11454, a master proof of claim on behalf of its respective Prepetition Secured Parties on account of any and all of their respective claims arising under the applicable Prepetition Credit Documents and hereunder (each, a "Master Proof of Claim")

81

against each of the Debtors.  Upon the filing of a Master Proof of Claim by either the Prepetition

ABL Agent, the Prepetition Existing Term Loan Agent, or the Prepetition Priority Term Loan

Agent, as applicable, it shall be deemed to have filed a proof of claim in the amount set forth

opposite its name therein in respect of its claims against each of the Debtors of any type or nature

whatsoever with respect to the applicable Prepetition Credit Documents, and the claim of each

applicable Prepetition Secured Party (and each of its respective successors and assigns), named in

a Master Proof of Claim shall be treated as if it had filed a separate proof of claim in each of these

Chapter 11 Cases.  The Master Proofs of Claim shall not be required to identify whether any

Prepetition Secured Party acquired its claim from another party and the identity of any such party

or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation

among the holders of the claims asserted therein resulting from the transfer of all or any portion of

such claims.  The provisions of this paragraph 28 and each Master Proof of Claim is intended

solely for the purpose of administrative convenience and shall not affect the right of each

Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in

these Chapter 11 Cases.  The Master Proofs of Claim shall not be required to attach any instruments,

agreements or other documents evidencing the obligations owing by each of the Debtors to the

applicable Prepetition Secured Parties, which instruments, agreements or other documents will be

provided upon written request to counsel to each of the Prepetition ABL Agent, the Prepetition

Existing Term Loan Agent, or the Prepetition Priority Term Loan Agent, as applicable.

29.    *No Requirement to File Claim for DIP Obligations*.  Notwithstanding anything to

the contrary contained in any prior or subsequent order of the Court, including, without limitation,

any order establishing a deadline for the filing of proofs of claim or requests for payment of

administrative expenses under section 503(b) of the Bankruptcy Code, the DIP Lender shall not

be required to file any proof of claim with respect to any of the DIP Obligations or Prepayment Penalty (if applicable), all of which shall be due and payable in accordance with the DIP Loan Documents without the necessity of filing any such proof of claim or request for payment of administrative expenses, and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the DIP Loan Documents or of any indebtedness, liabilities, or obligations arising at any time thereunder or prejudice or otherwise adversely affect the DIP Lender's rights, remedies, powers, or privileges under any of the DIP Loan Documents, this Interim Order, or applicable law.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

30.     *Credit Bidding*.   Subject to section 363(k) of the Bankruptcy Code, the lien priorities set forth herein and any successful Challenge (solely as to the Prepetition Secured Parties), the DIP Lender, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent shall have the right, consistent with the provisions of the DIP Loan Documents and the Prepetition Credit Documents (and subject to the provisions of the Prepetition Intercreditor Agreements), as applicable, to credit bid up to the full amount of the applicable DIP Loans or Prepetition Secured Obligations and the Adequate Protection Obligations in any sale of the Collateral, as applicable, in each case outside the ordinary course of business, without the need for further Court order authorizing the same and whether any such sale is effectuated through sections 363(k), 1123, or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, in each case unless the Court for cause orders otherwise; *provided* that the amount of any Adequate Protection Obligations shall

have been determined by an order of the Court prior to the submission of any credit bid including such obligations.

31. *Real Property Leases*.  Notwithstanding anything herein to the contrary, all of the liens granted pursuant to this Interim Order shall not include or attach to:  (a) any of the Debtors' real property leases (but shall include all proceeds of such leases) and no liens granted pursuant to this Interim Order shall attach to the Debtors' real property leaseholds; (b) any insurance or proceeds therefrom for damage to a landlord's property; and (c) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in any pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents.

32. *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable immediately upon execution hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

33. *Governing Order*.  Except as expressly stated herein, in the event of any inconsistency between the provisions of this Interim Order (including, but not limited to, with respect to the Adequate Protection Obligations), the DIP Loan Documents, or the Prepetition Credit Documents, the provisions of this Interim Order shall govern.  Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this Interim Order, including compliance with the Approved Budget, and all other terms and conditions hereof, and (ii) to the extent there is any

84

inconsistency between the terms of such other order and this Interim Order or the DIP Loan Document, this Interim Order shall control, in each case, except to the extent expressly provided otherwise in such other order.  For the avoidance of doubt, nothing herein abrogates or modifies the Prepetition Secured Parties' rights with respect to each other under the Prepetition Intercreditor Agreements.  For the avoidance of doubt, upon entry of this Interim Order, this Interim Order shall supersede and replace the interim cash collateral order entered at Docket No. 82, provided that any relief granted therein to the respective Prepetition Secured Parties for the period from the Petition Date until the entry of this Interim Order (including any adequate protection), except to the extent expressly provided otherwise in this Interim Order, shall survive and is hereby reaffirmed and ratified.

34.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

35.    *Bankruptcy Rules*. The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

36.    *No Third-Party Rights*.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

37.    *Necessary Action*.  The Debtors, the DIP Lender, and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this Interim Order.  In addition, the Automatic Stay is modified to permit affiliates of the Debtors who are not debtors in these Chapter 11 cases to take all actions as are necessary or appropriate to implement the terms of this Interim Order.

38.     *Retention of Jurisdiction*.    The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

39.     *Final Hearing*.    A final hearing to consider the relief requested in the Motion shall be held on September 9, 2025 at 10:00 a.m. (prevailing Eastern Time) and any objections or responses to the Motion shall be filed on or prior to September 2, 2025 at 4:00 p.m. (prevailing Eastern Time).

40.     *Objections*.    Any party in interest objecting to the relief sought at the Final Hearing shall file and serve (via mail and e-mail) written objections, which objections shall be served upon (a) the Debtors, Claire's Holdings LLC, 2400 West Central Road, Hoffman Estates, Illinois 60192, Attn.: Brendan McKeough, Executive Vice President, Chief Legal Officer, and Secretary (brendan.mckeough@claires.com) and 3 SW 129th Avenue, Pembroke Pines, Florida 33027, Attn: Michele Reilly, Assistant Secretary (michele.reilly@claires.com); (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com) and 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com) and Robert A. Jacobson (rob.jacobson@kirkland.com) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attn: Paul N. Heath (heath@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Benjamin A. Hackman (Benjamin.a.hackman@usdoj.gov); (d) counsel to the Majority Priority Term Loan Lenders and

the Majority Existing Term Loan Lenders, Pachulski Stang Ziehl & Jones, LLP, Attn: Jeffrey H. Davidson (jdavidson@pszjlaw.com), Laura Davis Jones (ljones@pszjlaw.com), and Gabriel I. Glazer (gglazer@pszjlaw.com); (e) counsel to the Prepetition Priority Term Loan Agent and Prepetition Existing Term Loan Agent, Ankura Trust Company, LLC, (i) Cahill Gordon & Reindell LLP, Attn.: Joel Moss (JMoss@cahill.com), Amit Trehan (ATrehan@cahill.com), and Sean Tierney (STierney@cahill.com) and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899, Attn: Derek C. Abbott (dabbott@morrisnichols.com); (f) counsel to the Prepetition ABL Agent, JPMorgan Chase Bank, N.A., (i) Simpson Thacher & Bartlett LLP, Attn.: Elisha D. Graff (egraff@stblaw.com), Zachary J. Weiner (zachary.weiner@stblaw.com), Sean Lee (sean.lee@stblaw.com) and (ii) Potter Anderson & Corroon LLP, Attn: L. Katherine Good (kgood@potteranderson.com) and Jeremy Ryan (jryan@potteranderson.com); (g) counsel to the DIP Lender, (i) Paul Hastings LLP, Attn: Alan Noskow (alannoskow@paulhastings.com) and Lindsey Henrikson (lindseyhenrikson@paulhastings.com) and (ii) Young Conaway Stargatt & Taylor, LLP, Attn: Joseph Barry (jbarry@ycst.com), Kara Hammond Coyle (kcoyle@ycst.com), and Ashley E. Jacobs (ajacobs@ycst.com); and (h) any statutory committee appointed in these Chapter 11 Cases.

41.    The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing and to any party that has filed a request for notices with this Court.

**BRENDAN L. SHANNON**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: August 22nd, 2025**
**Wilmington, Delaware**

87

RLF1 33590598v.2