## Exhibit 1

### DIP Term Sheet

RLF1 33590598v.2

**CLAIRE'S HOLDINGS LLC**
**Secured Debtor in Possession Credit Facility Term Sheet**

This Senior Secured Debtor in Possession Credit Facility Term Sheet (including all schedules, annexes and exhibits hereto, as may be amended, restated, amended and restated, supplemented or otherwise modified from time to time, this "**DIP Term Sheet**") describes the principal terms and conditions of the secured credit line (the "**DIP Facility**") to be provided by the DIP Lender (as defined below) to Claire's Holdings LLC, a Delaware limited liability company (the "**Borrower**"), in connection with cases (collectively, the "**Chapter 11 Cases**") filed by the Borrower and the Guarantors (as defined below) (collectively, the "**Debtors**"), in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") pursuant to chapter 11 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") on August 6, 2025 (the "**Petition Date**").  This DIP Term Sheet, upon the execution hereof, shall constitute legal, valid and binding obligations of each party hereto, and shall be enforceable against each party hereto in accordance with their terms, except as such enforceability may be limited by Debtor Relief Laws (as defined in the Prepetition Priority Loan Credit Agreement (as defined below)) and by general principles of equity.

This Term Sheet is not an offer for the purchase, sale or subscription or invitation of any offer to buy, sell or to subscribe for any securities.

Capitalized terms used but not defined herein have the meanings assigned to them in the Asset Purchase Agreement, dated August 18, 2025 (including all amendments, restatements, modifications, exhibits, and supplements thereto, the "**Asset Purchase Agreement**") by and among the Purchaser and Sellers (each, as defined therein), the Sale Order or Financing Orders, as applicable.

| | |
|---|---|
| **BORROWER:** | Claire's Holdings LLC, a Delaware limited liability company, in its capacity as a debtor and debtor in possession under chapter 11 of the Bankruptcy Code. |
| **GUARANTORS:** | Each entity which guarantees the Prepetition Priority Term Loan Credit Agreement (the foregoing, each, a "**Guarantor**" and, collectively, the "**Guarantors**," the Guarantors and the Borrower shall be referred to herein collectively as the "**Debtors**"). |
| **DIP LENDER:** | AWS Claire's, LLC (the "**DIP Lender**"). |
| **DIP FACILITY:** | The DIP Lender agrees to make secured debtor in possession loans to the Borrower in a total aggregate principal amount not to exceed $22.5 million (the "**DIP Facility Amount**") on the terms and solely the conditions herein and as set forth on <u>Annex A</u> hereto and solely for the uses set forth in section 2.2 of the Asset Purchase Agreement. |
| **AVAILABILITY PERIOD:** | Subject to Section 2.2 of the Asset Purchase Agreement and the Financing Orders, the DIP Facility shall be available from the Closing Date (as defined below) to the Maturity Date (as defined below), unless terminated earlier pursuant to the terms hereof or the Financing Orders.  The Borrower may request draws under the DIP Facility of term loans (the "**DIP Loans**") in an aggregate principal amount not to exceed the DIP Facility Amount from time to time on or after the Closing Date by delivering a notice of borrowing to the DIP Lender (the "**Notice of Borrowing**"), duly executed by an |

| | |
|---|---|
| | authorized officer of the Borrower and indicating the applicable use of proceeds pursuant to Section 2.2(b) of the Asset Purchase Agreement. The DIP Lender shall make the DIP Loans available in accordance with Section 2.2 of the Asset Purchase Agreement, including by promptly delivering any joint written instructions to the Escrow Agent contemplated thereby. Notwithstanding anything to the contrary in the Financing Orders, availability and borrowing under the DIP Facility shall be subject in all respects to compliance with section 2.2 of the Asset Purchase Agreement. |
| **CLOSING DATE:** | "**Closing Date**" means the date on which each of the "Conditions Precedent to the DIP Loans" as set forth below (including, without limitation, entry of the Interim Financing Order (solely with respect to provisions directly related to and/or governing the DIP Facility, in form and substance reasonably acceptable to the DIP Lender and the Borrower) approving on an interim basis, the DIP Facility and the DIP Term Sheet) shall have been satisfied or waived (in writing) by the DIP Lender (as defined below) in accordance with this DIP Term Sheet.<br><br>As used herein, "**Business Day**" shall mean, any day (other than a Saturday or a Sunday) on which banks are open for business in New York City. |
| **USE OF PROCEEDS:** | In accordance with the terms of the Asset Purchase Agreement and the Financing Orders, including to primarily fund the purchase of Inventory for the Business (including (a) any Inventory in transit but for which Seller has not yet obtained title or possession and (b) actual freight and duty invoices associated with such Inventory) upon notification of such intended purchases to Purchaser, subject to the terms and conditions of section 2.2 of the Asset Purchase Agreement, including written approval (email being sufficient) from the Purchaser in accordance therewith.<br><br>Notwithstanding anything to the contrary herein or in any Financing Order, the use of proceeds of the DIP Facility shall be limited as set forth more fully in section 2.2(b) of the Asset Purchase Agreement and no funds advanced by the DIP Lender shall be used for any other purpose including, but not limited to, funding of the Carve-Out or Carve-Out Reserves. |
| **SECURITY:** | Subject to the Financing Orders, the DIP Facility will be secured by a perfected security interest in, with the priority described below under "Priority," and lien on the DIP Collateral (as defined below). |
| **PRIORITY:** | All DIP Loans and other liabilities and obligations owed to the DIP Lender under or in connection with this DIP Term Sheet and/or the Financing Orders (collectively, the "**DIP Obligations**"), in all cases subject to the "Carve-Out" (as defined in the Financing Orders), shall be: |

| | |
|---|---|
| | (i) valid, binding, continuing, enforceable, fully-perfected junior priority security interest in, and lien upon (subject and subordinate in all respects to, in the following order, (1) the Carve-Out, (2) the Prepetition ABL Liens in the ABL Priority Collateral, and (3) the Adequate Protection Liens of the Prepetition ABL Secured Parties with respect to the ABL Priority Collateral), all tangible and intangible prepetition and postpetition property of the DIP Loan Parties of the same nature, scope, and type as the ABL Priority Collateral, regardless of where located, which security interest and lien, for the avoidance of doubt, shall be junior to (with respect to the ABL Priority Collateral) the Prepetition ABL Liens and the ABL Adequate Protection Liens (the "**DIP ABL Junior Liens**"); *provided* that, for the avoidance of doubt the DIP ABL Junior Liens shall be senior to the Prepetition Priority Term Loan Liens, the Prepetition Existing Term Loan Liens, the Priority Term Loan Adequate Protection Liens, and the Existing Term Loan Adequate Protection Liens with respect to all DIP Collateral (including the ABL Priority Collateral). Notwithstanding anything herein to the contrary, the DIP ABL Junior Liens shall be (A) junior in all respects to the Prepetition ABL Liens in the ABL Priority Collateral and Adequate Protection Liens of the Prepetition ABL Secured Parties on the ABL Priority Collateral, and (B) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code; and <br><br> (ii) valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all Term Loan Priority Collateral (the "**Senior DIP Liens**"). <br><br> As used herein, "**Prepetition Permitted Liens**" shall mean certain liens senior by operation of law (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Priority Loan Liens as of the Petition Date, or valid, non-avoidable, senior priority liens in existence as of the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code). |
| **PREPETITION DEBT FACILITIES AND INSTRUMENTS:** | The following financing arrangements are referred to herein as the "**Prepetition Facilities**": <br><br> Prepetition ABL Facility:   Senior secured asset-based revolving credit facility (the "**Prepetition ABL Facility**") pursuant to that certain ABL Credit Agreement, dated as of September 30, 2022, by and among Claire's Holdings LLC, Claire's Stores, Inc., certain other domestic borrowers party thereto, Claire's (Gibraltar) Holdings Limited, the U.K. borrowers party thereto, JPMorgan Chase Bank, N.A., as administrative agent, collateral agent  (in such capacities, the "**Prepetition ABL Agent**"), lender, letter of credit issuer and |

swingline lender, certain financial institutions party thereto from time to time as lenders (the "**Prepetition ABL Lenders**," and together with the Prepetition ABL Agent, the "**Prepetition ABL Secured Parties**")) (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the date hereof, the "**Prepetition ABL Credit Agreement**" and, together with all related Credit Documents (as defined therein), the "**Prepetition ABL Credit Documents**").

Prepetition Priority Term Loan Facility: Senior secured priority term loan facility (the "**Prepetition Priority Term Loan Facility**") pursuant to that certain Priority Term Loan Credit Agreement, dated as of September 23, 2024, Claire's Holdings LLC, Claire's Boutiques, Inc., Ankura Trust Company LLC, as administrative agent and collateral agent  (in such capacities, the "Prepetition **Priority Term Loan Agent**"), certain financial institutions party thereto from time to time as lenders (the "**Prepetition Priority Term Loan Lenders**," and together with the Prepetition Priority Term Loan Agent, the "**Prepetition Priority Term Loan Secured Parties**")) (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the date hereof, the "**Prepetition Priority Term Loan Credit Agreement**" and, together with all related Credit Documents (as defined therein), the "**Prepetition Priority Term Loan Credit Documents**").

Prepetition Existing Term Loan Facility:  Senior secured term loan facility (the "**Prepetition Existing Term Loan Facility**") pursuant to that certain Term Loan Credit Agreement, dated as of December 18, 2019, by and among Claire's Holdings LLC, Claire's Stores, Inc., Ankura Trust Company LLC, as administrative agent and collateral agent  (in such capacities, the "Prepetition **Existing Term Loan Agent**"), certain financial institutions party thereto from time to time as lenders (the "**Prepetition Existing Term Loan Lenders**," and together with the Prepetition Existing Term Loan Agent, the "**Prepetition Existing Term Loan Secured Parties**")) (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time prior to the date hereof, the "**Prepetition Existing Term Loan Credit Agreement**" and, together with all related Credit Documents (as defined therein), the "**Prepetition Existing Term Loan Credit Documents**").

| | |
|---|---|
| **DIP COLLATERAL:** | "**DIP Collateral**" means, collectively, all assets of the Debtors (and their bankruptcy estates) of any nature whatsoever and wherever located, whether first arising prior to or following the Petition Date, now owned or hereafter acquired, including (i) all accounts; (ii) all chattel paper; (iii) all cash and deposit accounts; (iv) all documents; (v) all equipment; (vi) all general intangibles; (vii) all instruments; (viii) all inventory; (ix) all investment property and all other financial assets; (x) all letter of credit rights (whether or not the letter of credit is evidenced by writing); (xi) all commercial tort claims; |

| | |
|---|---|
| | (xii) all insurance and insurance claims and (xiii) all other personal property not otherwise described above; (xiv) to the extent not otherwise included and constituting personal property, all proceeds, supporting obligations and products of any and all of the foregoing and all collateral security and guarantees given by any person with respect to any of the foregoing; (xv) all personal property that ceases to be Excluded Collateral for whatever reason (including property for which (i) consent to grant of security interest is obtained, (ii) applicable law is no longer effective to prohibit a grant of security interest or (iii) any applicable contractual obligations are eliminated or waived); *provided* that the DIP Collateral shall not include any "Excluded Collateral" described in the definition thereof in the Prepetition Priority Loan Credit Documents. All of the DIP Liens described herein with respect to the DIP Collateral shall be effective and perfected by the Financing Orders and without the necessity of the execution of mortgages, security agreements, pledge agreements, financing statements, intercreditor agreements or other agreements, subject to the priority set forth herein and in the Financing Orders. |
| **CARVE-OUT** | As defined and set forth in the Financing Orders, substantially in the form attached hereto to **Annex B**. |
| **INTEREST RATE:** | Interest will be payable on the unpaid principal amount of all outstanding DIP Loans at a rate per annum equal to 5.00% per annum. <br><br> Interest with respect to any DIP Loan shall be payable in kind and not in cash, with such interest amount being automatically added to, and made part of, the outstanding principal amount of DIP Loans, in each case on the last Business Day of each month; *provided*, that accrued interest shall only become due and owing in cash in connection with the payment of any Prepayment Penalty (as defined below) or upon the Maturity Date of the DIP Facility (except in the event the Closing (as defined in the Asset Purchase Agreement) occurs on the Maturity Date). For the avoidance of doubt, no accrued interest shall be due and owing, in kind nor in cash, if the Closing (as defined in the Asset Purchase Agreement) occurs. <br><br> All interest and fees under this DIP Term Sheet shall be calculated on the basis of a 360-day year for the actual number of days elapsed. All accrued interest which for any reason has not therefore been paid shall be paid in full on the date on which the final principal amount of the DIP Loans is repaid unless otherwise provided in Financing Orders. |
| **PREPAYMENT PENALTY:** | The Debtors shall pay to the DIP Lender a prepayment penalty in an amount equal to $2,580,000 (the "**Prepayment Penalty**") if the Closing (as defined in the Asset Purchase Agreement) has not |

| | occurred due to Seller's termination of the Asset Purchase Agreement pursuant to section Sections 8.1(g) or (h) thereof. |
|---|---|
| **MATURITY DATE:** | The DIP Facility will mature and be due and payable on the earliest of (a) the Outside Date (as defined in the Asset Purchase Agreement) and (b) the date of acceleration of all the DIP Loans upon the occurrence and during the continuance of an Event of Default (as defined below).  Except as set forth below, on the Maturity Date, the DIP Loans, together with any interest that is accrued and unpaid as of such time (*i.e.* has not been added to the outstanding principal amount) shall be due and payable.

For the avoidance of doubt, upon Closing (as defined in the Asset Purchase Agreement), all outstanding DIP Loans shall be automatically credited in full against the Purchase Price and deemed repaid in full and all outstanding DIP Obligations shall be deemed terminated and canceled. |
| **PREPAYMENTS:** | In accordance with the Asset Purchase Agreement, the Debtors may in their sole option, prior to the Closing (as defined in the Asset Purchase Agreement) upon notice to the DIP Lender, prepay the DIP Loans in full in cash (the "**Prepayment**").

Upon the Closing (as defined in the Asset Purchase Agreement), notwithstanding anything to the contrary herein, in the Financing Orders, or in the Sale Order, the DIP Loans shall be automatically credited against the Purchase Price, and shall be deemed repaid in full and final satisfaction of all liens, claims, encumbrances, and other interests, and shall be deemed released and discharged by the DIP Lender in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the DIP Lender, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the DIP Lender on account of the DIP Loans. |
| **CONDITIONS PRECEDENT TO THE INTERIM DIP LOANS:** | The obligation of the DIP Lender to fund the DIP Proceeds Account with the full DIP Facility Amount will be subject solely to satisfaction or written waiver, by the DIP Lender, of each of the following conditions precedent:

(i)   the Debtors shall have delivered to the DIP Lender a Notice of Borrowing in connection with such draw request no later than 11:00 A.M. (Eastern Time) on the Closing Date (or such later time as the DIP Lender may agree to);

(ii)  the Interim Financing Order shall have been entered by the Bankruptcy Court (after a hearing on notice to all parties having or asserting a lien on all or any portion of the DIP Collateral) and shall not have been reversed, modified, |

<table>
<tr>
<td></td>
<td>amended, stayed or vacated, or in the case of any modification or amendment, modified or amended in any manner without the consent of the DIP Lender and the Borrower;<br><br>(iii)  no Default or Event of Default under this DIP Term Sheet or DIP Termination Event under the applicable Financing Order shall have occurred and be continuing on the Closing Date or shall exist immediately after giving effect to the DIP Loan to be made on the Closing Date; and<br><br>(iv)  subject to Bankruptcy Court approval, (a) each Debtor shall have the organizational power and authority to make, deliver and perform its obligations under this DIP Term Sheet and the applicable Interim Financing Order, and (b) no consent or authorization of, or filing with, any governmental authority shall be required in connection with the execution, delivery or performance by any Debtor, or for the validity or enforceability in accordance with its terms against any Debtor, of this DIP Term Sheet and the Financing except for consents, authorizations and filings which shall have been obtained or made and be in full force and effect and except for such consents, authorizations and filings, the failure to obtain or perform could not reasonably be expected to cause a Material Adverse Effect.</td>
</tr>
<tr>
<td><b>REPRESENTATIONS AND WARRANTIES:</b></td>
<td>The Borrower and Guarantors shall make the following representations and warranties:<br><br>(i)  the Chapter 11 Cases were commenced on the Petition Date in accordance in all material respects with applicable law and proper notice of the bankruptcy proceedings will be given; and<br><br>(ii)  the Financing Orders, are in full force and effect and have not been reversed, vacated, stayed, modified or amended in any manner adverse to the DIP Lender without the prior written consent of the DIP Lender.</td>
</tr>
<tr>
<td><b>COVENANTS:</b></td>
<td>The same covenants of the Sellers as set forth in the Asset Purchase Agreement, mutatis mutandis, subject to, and except as otherwise permitted pursuant to the Financing Orders and any other orders of the Bankruptcy Court, as applicable.</td>
</tr>
<tr>
<td><b>EVENTS OF DEFAULT:</b></td>
<td>Each of the following shall constitute an "<b>Event of Default</b>" (and any event, act, or condition set forth under this heading entitled "Events of Default" that with notice or lapse of time, or both, as set forth below under this heading entitled "Events of Default" would constitute an Event of Default shall constitute a "<b>Default</b>"):</td>
</tr>
</table>

<table>
<tr><td></td><td>(i)</td><td>the Court does not enter an Interim Financing Order or Final Financing Order approving this DIP Term Sheet on the terms set forth herein or on terms acceptable to the DIP Lender in their sole discretion; <em>provided</em> that with respect to provisions in the Interim Financing Order or Final Financing Order not directly applicable to the DIP Facility or the DIP Term Sheet, such provisions shall be reasonably acceptable to the DIP Lender;</td></tr>
<tr><td></td><td>(ii)</td><td>the Court does not enter the Interim Financing Order on or before August 22, 2025;</td></tr>
<tr><td></td><td>(iii)</td><td>the Court shall have entered an order, or the Debtors shall have filed a motion or application seeking an order, or the Debtors fail to timely contest a motion or application filed by another party seeking an order, (i) converting one or more of the Chapter 11 Cases of a Debtor to a case under chapter 7 of the Bankruptcy Code, (ii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code, a trustee, or a responsible officer, in one or more of the Chapter 11 Cases of a Debtor, or (iii) dismissing the Chapter 11 Cases;</td></tr>
<tr><td></td><td>(iv)</td><td>the entry of an order appointing a trustee, receiver, or examiner with expanded powers with respect to any of the Debtors;</td></tr>
<tr><td></td><td>(v)</td><td>the Debtors shall attempt to invalidate, reduce, or otherwise impair the DIP Loans, the DIP Liens or the DIP Obligations;</td></tr>
<tr><td></td><td>(vi)</td><td>the creation of any liens on DIP Collateral that are <em>pari passu</em> or senior to the liens in favor of the DIP Lender (except the Carve-Out and other than the Prepetition ABL Liens and the Adequate Protection Liens of the ABL Secured Parties with respect to the ABL Priority Collateral)</td></tr>
<tr><td></td><td>(vii)</td><td>the lifting of the Automatic Stay with respect to or the exercise of any remedies against any portion of the DIP Collateral with a fair value in excess of $1,000,000;</td></tr>
<tr><td></td><td>(viii)</td><td>termination of the Debtors' right to use Cash Collateral;</td></tr>
<tr><td></td><td>(ix)</td><td>the expenditure by any of the Debtors of any DIP Loans other than in accordance with this Interim Order or the DIP Loan Documents;</td></tr>
</table>

(x)      the Debtors shall have used any portion of the DIP Loans not in compliance with the Interim Financing Order;

(xi)     failure by the Debtors to be in compliance in all material respects with provisions of this DIP Term Sheet (subject to applicable grace periods as set forth herein, in the Asset Purchase Agreement or in the Financing Orders);

(xii)    a material breach by the Debtors of any Financing Order with respect to the DIP Lender;

(xiii)   any request made to the Court by the Debtors (or the Debtors' failure to contest any request made by a third party) for the reversal, modification, amendment, stay, reconsideration or vacatur of any Financing Order in a manner adverse to the DIP Lender;

(xiv)    the stay, reversal, vacatur, recission. or other modification of any Financing Order in a manner materially adverse to the DIP Lender;

(xv)     the Court shall not have entered the Final Financing Order (in form and substance acceptable to the DIP Lender with respect to the items governing the DIP Facility and reasonably acceptable as to all other provisions) on or prior to September 10, 2025;

(xvi)    the Sale Transaction shall not be approved by an order of the Court, in form and substance acceptable to the DIP Lender, on or prior to September 10, 2025, or the motion to sell the assets of the Debtors pursuant to the Sale Transaction shall be denied by the Court;

(xvii)   any of the Debtors file any motions, pleadings, briefs, or support any other parties in furtherance of any event that would constitute an Event of Default;

(xviii)  termination of any Financing Order with respect to the DIP Facility, other than as a result of the satisfaction in full of the DIP Obligations; and

(xix)    the Closing shall not have occurred on or before September 26, 2025; and

(xx)     failure to pay (A) principal in full when due, including without limitation, on the Maturity Date, or (B) interest or other DIP Obligations in full within three (3) Business Days after the same becomes due.

| REMEDIES UPON EVENT OF DEFAULT: | As set forth in the applicable Financing Order. |
|---|---|
| FINANCING ORDERS GOVERN: | Except as expressly stated herein, to the extent of any conflict or inconsistency between this DIP Term Sheet and any applicable Financing Order, such applicable Financing Order shall govern.<br><br>"**Final Financing Order**" means an order approving on a final basis, the Debtors' entry into the DIP Facility on the terms set forth in this DIP Term Sheet; *provided*, that the form and substance of which shall be acceptable to the Debtors and the DIP Lender with respect to the items governing the DIP Facility only and shall be reasonably acceptable to the DIP Lender with respect to provisions in the order not directly applicable to the DIP Facility or the DIP Term Sheet.<br><br>"**Financing Orders**" means the Interim Financing Order and the Final Financing Order.<br><br>"**Interim Financing Order**" means an order approving on an interim basis, the Debtors' entry into the DIP Facility on the terms set forth in this DIP Term Sheet; *provided*, that the form and substance of which shall be acceptable to the Debtors and the DIP Lender with respect to the items governing the DIP Facility only and shall be reasonably acceptable to the DIP Lender with respect to provisions in the order not directly applicable to the DIP Facility or the DIP Term Sheet.  A copy of this DIP Term Sheet is attached to the Interim Financing Order as **Exhibit A**.<br><br>"**Sale Order**" means an order (in form and substance acceptable to the Debtors and the DIP Lender) approving the Sale Transaction. |
| AMENDMENT AND WAIVER: | Except as otherwise expressly provided herein or therein, no provision of this DIP Term Sheet or any Financing Order may be amended other than by an instrument in writing signed by (i) the DIP Lender and (ii) the Debtors. |
| GOVERNING LAW AND JURISDICTION: | The laws of the State of New York (except as governed by the Bankruptcy Code) shall govern this DIP Term Sheet.  The Debtors submit to the exclusive jurisdiction of the Bankruptcy Court and waive (to the extent permitted by applicable law) any right to trial by jury. |

| NOTICES: | (a) All notices, requests and demands to or upon the respective parties hereto to be effective shall be in writing (including by electronic mail), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when delivered, or three (3) Business Days after being deposited in the mail, postage prepaid, or, in the case of electronic mail notice, upon confirmation of delivery, addressed as follows in the case of the Borrower and the DIP Lender, or to such other address as may be hereafter notified by the respective parties hereto: |
|---|---|
| | Borrower:  CLAIRE'S HOLDINGS LLC<br>2400 West Central Road<br>Hoffman Estates, IL 60192<br>Attention: Brendan McKeough<br>Email: Brendan.McKeough@Claires.com<br><br>with a copy to (which shall not constitute notice under this DIP Term Sheet):<br><br>Kirkland & Ellis LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Attention:  David M. Nemecek, P.C., Alexandra Schwarzman, P.C., Katrina Anna Levy and Allyson B. Smith<br>Email:  david.nemecek@kirkland.com, alexandra.schwarzman@kirkland.com, katrina.levy@kirkland.com and allyson.smith@kirkland.com<br><br>DIP Lender:<br><br>AWS Claire's, LLC<br>c/o Ames Watson, LLC<br>6100 Merriweather Drive, Suite 550 Columbia, MD 21044<br>Attention: Lawrence Berger<br>Email: lberger@ameswatson.com<br><br><br>with a copy to (which shall not constitute notice under this DIP Term Sheet):<br><br>Paul Hastings LLP 2050 M Street, NW Washington, DC 20036<br>Attention: Alan Noskow<br>Email: alannoskow@paulhastings.com |

| | |
|---|---|
| | (b) Notices and other communications to the DIP Lender hereunder may be delivered or furnished by electronic communications (including email).  The DIP Lender or the Borrower may, in their discretion, agree to accept notices and other communications to it hereunder by electronic communications; *provided*, that approval of such procedures may be limited to particular notices or communications.  Unless the DIP Lender otherwise prescribes, notices and other communications sent to an email address shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return email or other written acknowledgment); *provided*, that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next Business Day for the recipient.<br><br>(c) Any party hereto may change its address or email address for notices and other communications hereunder by notice to the other parties hereto. |
| **COUNSEL TO DIP LENDER:** | Paul Hastings LLP |

**Annex A**

**DIP Facility Amount**

| DIP Lender | DIP |
|---|---|
| AWS Claire's, LLC | $7,500,000.00[1] |
| AWS Claire's, LLC | $15,000,000.00[2] |
| **Total** | **$22,500,000.00** |

---

[1]   Such amount constituting the Initial Deposit (as defined in the Asset Purchase Agreement).

[2]   Such amount constituting the Second Deposit (as defined in the Asset Purchase Agreement).

**Annex B**

*Carve-Out.*[3]

(a)   As used in this [Interim/Final] Order, the term "Carve-Out" means the sum of: (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate, if any, pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in (iii) below); (ii) all reasonable and documented fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, final order or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees")[4] incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Creditors' Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first Business Day following delivery by the Directing Cash Collateral Agent of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first Business Day following delivery by the Directing Cash Collateral Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by

---

[3]   Capitalized terms used but not defined in this Annex 2 shall have the meanings ascribed to such terms in the Financing Orders, as applicable.

[4]   Upon entry of this Interim Order, the Debtors shall fund into the Funded Reserve Account from cash on hand $1,500,000 of fees for the benefit of Houlihan Lokey Capital, Inc. ("HL" and such fees, the "Initial HL Fees"), as investment banker to the Debtors.  As soon as practicable after (a) the Prepetition ABL Obligations are paid in full in cash and (b) the Letters of Credit are cash collateralized in accordance with paragraph 17 of this Interim Order, the Debtors shall fund into the Funded Reserve Account from Cash on hand an additional $1,500,000 of fees plus any amounts paid in monthly fees of HL incurred and allowed during the Chapter 11 cases for the benefit of HL (the "Additional HL Fees" and together with the Initial HL Fees, the "HL Fees").  For the avoidance of doubt, nothing herein shall prejudice the rights of HL to earn and be paid additional fees beyond the HL Fees after all Prepetition ABL Obligations are satisfied in full.  Upon the funding of the Initial HL Fees into the Funded Reserve Account, the Initial HL Fees (and no more, notwithstanding anything to the contrary herein) shall be deemed part of the Carve-Out. The Initial HL Fees funded into the Funded Reserve Account shall be disbursed as follows: *first*, to pay any monthly fees of HL incurred and allowed during the Chapter 11 Cases and such payments shall reduce the Carve-Out and *second*, any remaining amounts shall be used to pay any other allowed fees of HL under their engagement letter earned during these Chapter 11 Cases.

interim order, procedural order, final order or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Directing Cash Collateral Agent to the Debtors and their lead restructuring counsel (with courtesy copies to the U.S. Trustee and counsel to the Creditors' Committee), which notice may be delivered following the occurrence and during the continuation of a Cash Collateral Termination Event (as defined below) and upon termination of the Debtors' right to use Cash Collateral by the Prepetition Secured Parties, in each case, stating that the Post-Carve Out Trigger Notice Cap has been invoked.]

(b)  Fee Estimates.  Not later than 7:00 p.m. New York time on the third Business Day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the unpaid amount of fees and expenses (collectively, "Estimated Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided* that Estimated Fees and Expenses accrued in the period between entry of this **[Interim/Final]** Order and closing of the Sale Transaction shall be reserved and funded directly from proceeds of the Sale Transaction; *provided*, *further*, within one (1) Business Day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional Weekly Statement (the "Final Statement") setting forth a good-faith estimate of unpaid amount of fees and expenses incurred during the period commencing on the calendar day after the prior Calculation Date and concluding on the Termination Declaration Date (and the Debtors shall cause each such Weekly Statement or Final Statement to be delivered promptly to the DIP Lender and the Directing Cash Collateral Agent).  If any Professional Person fails to deliver a Weekly Statement or Final Statement within two (2) calendar days after such Weekly Statement or Final Statement is due, such Professional Person's entitlement to any funds in the Pre-Carve Out Trigger Notice Reserve (as defined

below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement or Final Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person, unless otherwise ordered by the Court.

(c) Carve-Out Reserves.

(i)    Commencing on August 13, 2025, and on or before the Thursday of each week thereafter until a Termination Declaration Date, the Debtors shall, subject to the Approved Budget, utilize all cash on hand as of such date to fund a reserve in an amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses of Debtor Professionals reflected in the Weekly Statements delivered on the immediately prior Wednesday (or next succeeding Business Day) to the Debtors, the Directing Cash Collateral Agent, and the DIP Lender and (2) the aggregate amount of unpaid Allowed Professional Fees of Debtors Professionals contemplated to be incurred in the Approved Budget during the applicable time period, *plus* (B) the lesser of (1) the aggregate unpaid amount of all Estimated Fees and Expenses of Committee Professionals reflected in the Weekly Statements delivered on the immediately prior Wednesday (or next succeeding Business Day) to the Debtors, the DIP Lender, and the Directing Cash Collateral Agent and (2) the aggregate amount of unpaid Allowed Professional Fees of Committee Professionals contemplated to be incurred in the Approved Budget during the applicable time period.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust at an authorized depository under the *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* for the U.S. Trustee (the "Funded Reserve Account") to pay such Allowed Professional Fees (the "Funded Reserves") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)    On the day on which a Carve Out Trigger Notice is given by the Directing Cash Collateral Agent to the Debtors (the "Termination Declaration Date"), the Debtors shall utilize the

Funded Reserve Account and all available cash on hand as of such date, to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees *plus* the amounts set forth in paragraph 10(a)(i)-(ii).  The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims (including, for the avoidance of doubt, any DIP Obligations, Adequate Protection Obligations, or Prepetition Secured Obligations).

(iii)    On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize cash in the Funded Reserve Account and all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve-Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Obligations and/or Prepetition Secured Obligations in accordance with the terms of the Prepetition Intercreditor Agreements, this [Interim/Final] Order, and the DIP Loan Documents, unless the DIP Obligations and Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve-Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Obligations and Prepetition Secured Obligations in accordance with the terms of the DIP Loan Documents (and relative priorities set forth therein) and Prepetition Intercreditor Agreements, unless the DIP Obligations and Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and

priorities as of the Petition Date. Notwithstanding anything to the contrary in the Prepetition Credit Documents, or this [Interim/Final] Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph [12], then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve-Out Reserves, up to the applicable amount set forth in this paragraph [12], prior to making any payments on account of the DIP Obligations or Prepetition Secured Obligations or to any of the Debtors' creditors, as applicable.  Notwithstanding anything to the contrary in the Prepetition Credit Documents, this [Interim/Final] Order, or the DIP Loan Documents, following delivery of a Carve Out Trigger Notice, the DIP Lender and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but the DIP Lender and the Prepetition Secured Parties shall have a security interest in any residual interest in the Carve-Out Reserves, and any excess shall be paid to satisfy the DIP Obligations and Prepetition Secured Obligations in accordance with the terms of the DIP Loan Documents, Prepetition Intercreditor Agreements, and the Prepetition Credit Documents.  Further, notwithstanding anything to the contrary in this [Interim/Final] Order, (i) disbursements by the Debtors from the Carve-Out Reserves shall not constitute loans under the DIP Loan Documents or increase or reduce the DIP Obligations or an advance or extension of credit under the Prepetition Credit Documents or increase or reduce the obligations under the Prepetition Credit Documents, (ii) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve-Out, Post-Carve Out Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees and/or the fees described in paragraph [12](a)(i)-(ii) due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this [Interim/Final] Order, the DIP Loan Documents, or any Prepetition Credit Documents, the Carve-Out shall be senior to all liens and claims securing the DIP Facility, the DIP Collateral, Prepetition Collateral, the Adequate Protection Liens, the

Adequate Protection Claims, the 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the obligations under the DIP Loan Documents and the Prepetition Credit Documents.

(d)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.    Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.    None of the Prepetition Secured Parties or the DIP Lender shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any successor cases under any chapter of the Bankruptcy Code.    Nothing in this [Interim/Final] Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(f)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>.    Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(g)    <u>Use of AWS Claire's, LLC DIP Loans</u>.    For the avoidance of doubt and notwithstanding anything to the contrary in this Order, no portion of the DIP Loans or DIP Facility Amount shall be used for any purpose other than as set forth in the Asset Purchase Agreement (including, but not limited to, section 2.2(b) thereof) including, but not limited to, to fund any portion of the Carve-Out or Carve-Out Reserves.