IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) ) | Case No. 25-11454 (BLS) |
| Debtors. | ) ) ) | (Jointly Administered) |
| | ) ) ) ) ) ) | Hearing Date: September 22, 2025, at 10:00 a.m. (ET) Obj. Deadline: September 15, 2025, at 4:00 p.m. (ET) |

**APPLICATION OF DEBTORS FOR ENTRY OF
AN ORDER (I) AUTHORIZING THE RETENTION
AND EMPLOYMENT OF HOULIHAN LOKEY CAPITAL, INC.
AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE
DEBTORS EFFECTIVE AS OF THE PETITION DATE, AND (II) WAIVING
CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-1**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") respectfully state as follows in support of this application:[2]

**Relief Requested**

1.     The Debtors seek entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Order</u>"): (a) authorizing the Debtors to employ and retain Houlihan Lokey

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]   A detailed description of the Debtors and their business, including the facts and circumstances giving rise to these chapter 11 cases is set forth in the *Declaration of Chris Cramer, Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of Its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "<u>First Day Declaration</u>"). Except where otherwise provided herein, capitalized terms used but not defined in this application shall have the meanings ascribed to them in the First Day Declaration.

Capital, Inc. ("Houlihan Lokey") as their financial advisor and investment banker in accordance with the terms and conditions set forth in that certain engagement letter between Houlihan Lokey and the Debtors dated May 13, 2025 (the "Engagement Letter"), a copy of which is attached as Exhibit 1 to **Exhibit A**; (b) approving the terms of Houlihan Lokey's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement, and related provisions set forth in the Engagement Letter; (c) waiving certain informational requirements; and (d) granting related relief.  In support of this application, the Debtors submit *Declaration of David Salemi in Support of Debtors' Application for Entry of an Order (I) Authorizing the Retention and Employment of Houlihan Lokey Capital, Inc. as Financial Advisor and Investment Banker to the Debtors Effective as of the Petition Date, and (II) Waiving Certain Reporting Requirements Pursuant to Local Rule 2016-1* (the "Salemi Declaration"), which is attached hereto as **Exhibit B** and incorporated herein.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 327, 328(a), 504, and 1107(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 2014(a), 2016, and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 2014-1, 2016-1, and 9013-1.

## Background

5. On August 6, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 7, 2025, the Court entered an order [Docket No. 79] authorizing the procedural consolidation and the joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On August 15, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 154], as subsequently amended on August 21, 2025 [Docket No. 216] (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Houlihan Lokey's Qualifications

6. The Debtors seek to retain Houlihan Lokey as their financial advisor and investment banker because, among other things, Houlihan Lokey has extensive experience and an excellent reputation in providing high quality investment banking services to debtors and creditors in financial restructurings and bankruptcy proceedings.

7. Houlihan Lokey, together with the other subsidiaries of its direct parent company, Houlihan Lokey, Inc., is an internationally recognized investment banking and financial advisory firm, with offices worldwide and more than 1,800 professionals. Houlihan Lokey is a leader in providing such services to debtors, unsecured and secured creditors, acquirers, and other

3

parties-in-interest involved with financially troubled companies both in and outside of bankruptcy. Houlihan Lokey has been, and is, involved in some of the largest restructurings in the United States, both out of court and in chapter 11 cases. Houlihan Lokey has been retained to provide investment banking and financial advisory services in, among other cases: *In re JOANN Inc.*, Case No. 24-10418 (Bankr. D. Del. Apr. 15, 2024); *In re Cano Health, Inc.*, Case No. 24-10164 (Bankr. D. Del. Mar. 22, 2024); *In re MVK FarmCo LLC*, Case No. 23-11721 (Bankr. D. Del. Dec. 6, 2023); *In re OSG Holdings, Inc.,* Case No. 23-90799 (Bankr. S.D. Tex. Nov. 17, 2023); *In re Carestream Health, Inc.*, Case No. 22-10778 (Bankr. D. Del. Oct. 7, 2022); *In re Revlon, Inc.,* Case No. 22-10760 (Bankr. S.D.N.Y. Aug. 23, 2022); *In re PWM Property Management LLC*, Case No. 21-11445 (Bankr. D. Del. Feb. 17, 2022); *In re Seadrill Limited,* Case No. 21-30427 (Bankr. S.D. Tex. May 21, 2021); *In re Guitar Ctr., Inc.*, Case No. 20-34656 (Bankr. E.D. Va. Dec. 16, 2020); *In re Skillsoft Corp.*, Case No. 20-11532 (Bankr. D. Del. July 21, 2020); *In re Exide Holdings, Inc.*, Case No. 20-11157 (Bankr. D. Del. July 16, 2020); and *In re Aceto Corp.*, Case No. 19-13448 (Bankr. D.N.J. Apr. 2, 2019).[3]

8. The resources, capabilities, and experience of Houlihan Lokey in advising the Debtors are crucial to enabling the Debtors to pursue their chapter 11 objectives. A financial advisor and investment banker with a deep bench of experience, such as Houlihan Lokey, fulfills a critical need that complements the services offered by the Debtors' other restructuring professionals.

9. Since its retention on May 13, 2025, and up to the Petition Date, Houlihan Lokey provided extensive prepetition services to the Debtors in preparation for the Debtors' restructuring

---

[3] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this application. Copies of these orders are available upon request to the Debtors' proposed counsel.

efforts, including assisting management in evaluating strategic alternatives, conducting extensive meetings and negotiations with various parties in interest, assisting the Debtors in developing a marketing strategy for the Debtors' assets, leading outreach to potential buyers, facilitating extensive diligence for various parties in interest, including potential buyers and existing creditors, assisting the Debtors in evaluating and negotiating offers from potential buyers and liquidators, assisting in raising incremental capital for the Debtors, and providing additional financial advice and investment banking services in preparation for the filing of these chapter 11 cases.

10. As a result of the prepetition work performed on behalf of the Debtors, Houlihan Lokey has acquired significant knowledge of the Debtors and their businesses and is intimately familiar with the Debtors' financial affairs, debt structure, operations, and related matters. In providing prepetition services to the Debtors, Houlihan Lokey has worked closely with the Debtors' senior management and their other advisors and has familiarity with the other major stakeholders that are involved in these chapter 11 cases. Accordingly, Houlihan Lokey has developed relevant experience and expertise regarding the Debtors that (a) makes Houlihan Lokey a natural selection as the Debtors' financial advisor and investment banker and (b) will assist Houlihan Lokey in providing effective and efficient services in these chapter 11 cases. Indeed, if the Debtors were required to retain an investment banker and financial advisor other than Houlihan Lokey in connection with these chapter 11 cases, the Debtors, their estates, and all parties in interest would be prejudiced by the time and expense necessary to familiarize another firm with the intricacies of the Debtors and their business operations.

## Services to Be Provided by Houlihan Lokey

11. The parties have entered into the Engagement Letter, which governs the relationship between the Debtors and Houlihan Lokey. The terms and conditions of the Engagement Letter were negotiated at arm's length and in good faith between the Debtors and

Houlihan Lokey and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter, in consideration for the compensation contemplated thereby, Houlihan Lokey has provided and has agreed to provide the following services:

(a) assisting the Debtors in the development and distribution of selected information, documents and other materials, including, if appropriate, advising the Debtors in the preparation of an offering memorandum (it being expressly understood that the Company will remain solely responsible for such materials and all of the information contained therein);

(b) assisting the Debtors in evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential lenders, equity investors, acquirers, and/or strategic partners;

(c) assisting the Debtors with the negotiation of any Transaction(s), including participating in negotiations with creditors and other parties involved in any Transaction(s);

(d) attending meetings of the Debtors Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtors and Houlihan Lokey mutually agree;

(e) providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary; and

(f) providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Debtors.

12. The Debtors believe that Houlihan Lokey's services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Houlihan Lokey will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

### Houlihan Lokey's Compensation

13. In consideration of the services to be provided by Houlihan Lokey, and as more fully described in the Engagement Letter, subject to the Court's approval, the Debtors have agreed to pay Houlihan Lokey the following proposed compensation, which is set forth in the Engagement Letter (the "Fee and Expense Structure"):[4]

    (a) *Initial Fee*. In addition to the other fees provided for herein, upon the execution of this Agreement, the Company shall pay Houlihan Lokey a nonrefundable cash fee of $175,000, which shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement ("Initial Fee").

    (b) *Monthly Fees*. In addition to the other fees provided for herein, upon the first monthly anniversary of the Effective Date, and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay Houlihan Lokey in advance, upon receipt of an invoice, a nonrefundable cash fee of $175,000 ("Monthly Fee"); provided, however, that no additional Monthly Fee shall accrue or be paid after the effective date of any plan of reorganization or liquidation under chapter 11 or chapter 7 of the Bankruptcy Code (as defined below). Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. Beginning with the payment of the sixth Monthly Fee, 50% of such Monthly Fee and any Monthly Fees paid thereafter (to the extent paid on a timely basis) shall be credited against the next Transaction Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event shall such Transaction Fee be reduced below zero.

---

[4] The summary of the Engagement Letter included in this application is provided for the purposes of convenience only and is qualified in its entirety by reference to the Engagement Letter. To the extent there is any discrepancy between the summary contained in this application and the terms set forth in the Engagement Letter, the terms of the Engagement Letter shall control. Capitalized terms used but not defined in this summary shall have the meanings ascribed to them in the Engagement Letter.

(c) *Transaction Fee(s)*.  In addition to the other fees provided for herein, the Company shall pay Houlihan Lokey the following transaction fee(s):

(i) *Restructuring Transaction Fee.*  Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction (as defined below), the closing of such Restructuring Transaction; and (II) in the case of an in-court Restructuring Transaction, the effective date of a confirmed plan of reorganization or liquidation under Chapter 11 or Chapter 7 of the Bankruptcy Code (as defined below) pursuant to an order of the applicable bankruptcy court, Houlihan Lokey shall earn, and the Company shall promptly pay to Houlihan Lokey, a cash fee ("Restructuring Transaction Fee") of $5,500,000.

(ii) *Sale Transaction Fee.*  Upon the closing of the Sale Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Sale Transaction, as a cost of such Sale Transaction, a cash fee ("Sale Transaction Fee") of $5,500,000.

(iii) *Financing Transaction Fee.*  Upon the closing of each Financing Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to the sum of: (I) 1.0% of the gross proceeds of any indebtedness raised or committed that is senior to other indebtedness of the Company, secured by a first priority lien and unsubordinated, with respect to both lien priority and payment, to any other obligations of the Company (including with respect to debtor-in-possession financing), (II) 2.0% of the gross proceeds of any indebtedness raised or committed that is secured by a lien (other than a first lien), is unsecured and/or is subordinated, and (III) 4.0% of the gross proceeds of all equity or equity-linked securities (including, without limitation, convertible securities and preferred stock) placed or committed.  Notwithstanding the immediately preceding sentence, if the gross proceeds of any indebtedness raised or committed or of all equity and equity-linked securities placed or committed is (i) provided solely by Elliott Investment Management L.P., Monarch Alternative Capital LP and/or Redwood Capital Management, LLC (together, the "Ad Hoc Group") prior to June 1, 2025, then the percentage in each clause (I), (II) and (III) shall be reduced by 100% or (ii) either (a) provided solely by the Ad Hoc Group after May 31, 2025 or (b) provided at any time by a consortium of holders (or advisors or managers of certain funds and accounts that are holders) under the Company's Term Loan B due 2026 (which may include certain members of the Ad Hoc Group but would

8

    also include other holders), then the percentage in each clause (I), (II), and (III) shall be reduced by 50%.  Any warrants issued in connection with the raising of debt or equity capital shall, upon the exercise thereof, be considered equity for the purpose of calculating the Financing Transaction Fee, and such portion of the Financing Transaction Fee shall be paid upon such exercise and from the gross proceeds thereof, regardless of any prior termination or expiration of this Agreement.  It is understood and agreed that if the proceeds of any such Financing Transaction are to be funded in more than one stage, Houlihan Lokey shall be entitled to its applicable compensation hereunder upon the closing date of each stage. The Financing Transaction Fee(s) shall be payable in respect of any sale of securities whether such sale has been arranged by Houlihan Lokey, by another agent or directly by the Company or any of its affiliates. Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for purposes of calculating the Financing Transaction Fee as equaling the number of Securities (as defined below) issued in exchange for such consideration multiplied by (in the case of debt securities) the face value of each such Security or (in the case of equity securities) the price per Security paid in the then current round of financing. The fees set forth herein shall be in addition to any other fees that the Company may be required to pay to any investor or other purchaser of Securities to secure its financing commitment.

(d)  *Disposition Transaction Fee*.  Upon the closing of the Disposition Transaction (as defined below), Houlihan Lokey shall earn, and the Company shall thereupon pay to Houlihan Lokey immediately and directly from the gross proceeds of such Disposition Transaction, as a cost of such Disposition Transaction, a cash fee ("Disposition Transaction Fee") of $3,000,000.

(e)  *Expenses*.  In addition to all of the other fees and expenses described herein, and regardless of whether any Transaction is consummated, the Company shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable and (other than expenses described in clause (ii) below) documented out-of-pocket expenses incurred from time to time. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) documented travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and reprographics expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly

assessment or percentage of the fees due to Houlihan Lokey. Houlihan Lokey shall, in addition, be reimbursed by the Company for the reasonable and documented fees and expenses of Houlihan Lokey's legal counsel incurred in connection with the negotiation and performance of this Agreement and the matters contemplated hereby.

If (i) a Financing Transaction is consummated, (ii) the Financing Transaction Fee exceeds $2,000,000, and (iii) contemporaneous with or subsequent to such Financing Transaction, a Restructuring Transaction, Sale Transaction, or Disposition Transaction is consummated, Houlihan Lokey will credit 50% of the portion (if any) of the Financing Transaction Fee that is above $2,000,000 against the Restructuring Transaction Fee, Sale Transaction Fee, or Disposition Transaction Fee, except that, in no event, shall such Restructuring Transaction Fee, Sale Transaction Fee, or Disposition Transaction Fee be reduced below zero.

Any Restructuring Transaction Fee, Sale Transaction Fee, Financing Transaction Fee, and Disposition Transaction Fee is each referred to herein as a "Transaction Fee" and are collectively referred to herein as "Transaction Fees." All payments received by Houlihan Lokey pursuant to this Agreement at any time shall become the property of Houlihan Lokey without restriction. No payments received by Houlihan Lokey pursuant to this Agreement will be put into a trust or other segregated account.

### The Fee and Expense Structure is Appropriate and Reasonable and Should be Approved under Section 328(a) of the Bankruptcy Code

14. The Debtors believe that the Fee and Expense Structure is comparable to those generally charged by financial advisors and investment bankers of similar stature to Houlihan Lokey for comparable engagements, both in and out of bankruptcy proceedings, and reflects a balance between a fixed fee and a contingency amount tied to the consummation and closing of the transactions and services contemplated by the Debtors and Houlihan Lokey in the Engagement Letter.

15. The Fee and Expense Structure is consistent with Houlihan Lokey's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out of bankruptcy proceedings, involving the services to be provided in connection with these chapter 11 cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Houlihan Lokey and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors.

16. Houlihan Lokey's restructuring expertise, as well as its capital markets knowledge, financing skills and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Houlihan Lokey's engagement, were important factors in determining the Fee and Expense Structure. The ultimate benefit to the Debtors derived from the services provided by Houlihan Lokey pursuant to the Engagement Letter cannot be measured by a reference to the number of hours expended by Houlihan Lokey's professionals.

17. The Debtors and Houlihan Lokey negotiated the Fee and Expense Structure to function as an interrelated, integrated unit corresponding to Houlihan Lokey's overall services. It would be contrary to the intention of Houlihan Lokey and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Houlihan Lokey's services. Instead, the Debtors and Houlihan Lokey intend that Houlihan Lokey's services be considered as a whole for which Houlihan Lokey is to be compensated by the Fee and Expense Structure in its entirety.

18. In light of the foregoing and given the numerous issues that Houlihan Lokey may be required to address in the performance of its services pursuant to the Engagement Letter, Houlihan Lokey's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan Lokey's services for both in court and out of court engagements of this nature, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

### Record Keeping and Applications for Compensation

19. It is not the general practice of financial advisory and investment banking firms, including Houlihan Lokey, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-1. Because Houlihan Lokey does not ordinarily

maintain contemporaneous time records in one-tenth hour (0.1) increments or provide or conform to a schedule of hourly rates for professional services, the Debtors request that Houlihan Lokey be excused from compliance with such requirements and instead should only be required to maintain time records in half-hour (0.5) increments setting forth, in a summary format, a reasonably detailed description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

20. Houlihan Lokey will also maintain reasonably detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.

21. Houlihan Lokey's applications for compensation and expense reimbursement will be paid by the Debtors pursuant to the terms of the Engagement Letter and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures established by the Court.

### Houlihan Lokey's Disinterestedness

22. To the best of the Debtors' knowledge and belief and except to the extent disclosed herein and in the Salemi Declaration, Houlihan Lokey: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code; and (b) does not hold or represent any interest materially adverse to the Debtors or their estates.

23. As set forth in further detail in the Salemi Declaration, Houlihan Lokey has certain connections with creditors and other parties in interest in these chapter 11 cases. The Debtors and Houlihan Lokey do not believe that any of these connections constitute an interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity holders in these chapter 11 cases.

24. To the extent Houlihan Lokey discovers any material facts bearing on the matters described herein during the period of Houlihan Lokey's retention, Houlihan Lokey has undertaken

to amend and supplement the information contained in this application and the Salemi Declaration to disclose such facts.

25. During the ninety (90) days immediately preceding the Petition Date, the Debtors paid Houlihan Lokey $780,621.07 in fees and $9,715.04 in expense reimbursements, which includes $2,500 paid on account of anticipated expenses. Other than as set forth herein, Houlihan Lokey did not receive any payments from the Debtors during the ninety (90) days immediately preceding the Petition Date.

26. As of the Petition Date, the Debtors did not owe Houlihan Lokey for any fees or expenses incurred prior to the Petition Date. It is possible that certain expenses that were incurred by Houlihan Lokey and are reimbursable under the terms of the Engagement Letter were not yet reflected on Houlihan Lokey's books and records as of the Petition Date. Upon entry of an order approving the application, Houlihan Lokey will waive any claim for such unreimbursed expenses in excess of amounts paid to Houlihan Lokey prepetition.

27. As set forth in the Salemi Declaration, Houlihan Lokey has not shared or agreed to share any of its compensation from the Debtors with any other person, other than as permitted by section 504 of the Bankruptcy Code. If any such agreement is entered into, Houlihan Lokey will undertake to amend and supplement the information contained in this application and the Salemi Declaration to disclose the terms of any such agreement.

28. No promises have been received by Houlihan Lokey, or by any professionals engaged hereunder, as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code.

### Indemnification Provisions

29. Among other things, the Engagement Letter provides that the Debtors shall indemnify Houlihan Lokey and the other HL Parties (as defined in the Engagement Letter) against

any and all losses, claims, damages, or liabilities to which the HL Parties may become subject in connection with the Engagement Letter, except to the extent such losses are finally judicially determined to have resulted primarily from such HL Party's bad faith, actual fraud, willful misconduct, or gross negligence.

30. The Debtors and Houlihan Lokey believe that the indemnification, contribution, reimbursement, and other related provisions contained in the Engagement Letter are customary and reasonable for financial advisory and investment banking engagements, both in and out of court, and, as modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

31. The terms and conditions of the Engagement Letter, including these provisions, were negotiated by the Debtors and Houlihan Lokey at arm's length and in good faith. The Debtors respectfully submit that such provisions, viewed in conjunction with the other terms of Houlihan Lokey's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and their creditors in light of the fact that the Debtors require Houlihan Lokey's services in these chapter 11 cases.

**Basis for Relief**

32. The Debtors seek authority to employ and retain Houlihan Lokey as their financial advisor and investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because

of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

33. In addition, the Debtors seek approval of the Engagement Letter (including the Fee and Expense Structure and the indemnification, contribution, reimbursement and other related provisions) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *In re Nat'l Gypsum Co.*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

*Id.* at 862 (citations omitted), *cited in Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)*, 383 B.R. 869, 874 (S.D.N.Y. 2008).

34. The Engagement Letter appropriately reflects (a) the nature and scope of services to be provided by Houlihan Lokey, (b) Houlihan Lokey's substantial experience with respect to

financial advisory and investment banking services, and (c) the Fee and Expense Structures typically utilized by Houlihan Lokey and other leading financial advisors and investment bankers.

35. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re JOANN Inc.*, Case No. 24-10418 (Bankr. D. Del. Apr. 15, 2024); *In re Cano Health, Inc.*, Case No. 24-10164 (Bankr. D. Del. Mar. 22, 2024); *In re MVK FarmCo LLC*, Case No. 23-11721 (Bankr. D. Del. Dec. 6, 2023); *In re OSG Holdings, Inc.*, Case No. 23-90799 (Bankr. S.D. Tex. Nov. 17, 2023); *In re Carestream Health, Inc.*, Case No. 22-10778 (Bankr. D. Del. Oct. 7, 2022); *In re Revlon, Inc.*, Case No. 22-10760 (Bankr. S.D.N.Y. Aug. 23, 2022); *In re PWM Prop. Mgmt. LLC*, Case No. 21-11445 (Bankr. D. Del. Feb. 17, 2022); *In re Seadrill Ltd.*, Case No. 21-30427 (Bankr. S.D. Tex. May 21, 2021); *In re Guitar Ctr., Inc.*, Case No. 20-34656 (Bankr. E.D. Va. Dec. 16, 2020); *In re Skillsoft Corp.*, Case No. 20-11532 (Bankr. D. Del. July 21, 2020); *In re Exide Holdings, Inc.*, Case No. 20-11157 (Bankr. D. Del. July 16, 2020); and *In re Aceto Corp.*, Case No. 19-13448 (Bankr. D.N.J. Apr. 2, 2019). Accordingly, the Debtors believe that Houlihan Lokey's retention on the terms and conditions proposed herein is appropriate.

## Notice

36. The Debtors will provide notice of this application to the following parties or their respective counsel, as applicable: (a) the U.S. Trustee; (b) the Committee; (c) the Priority Term Loan Agent; (d) the Existing Term Loan Agent; (e) the Agent under the ABL Facility; (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

37.  No prior request for the relief sought in this application has been made to this or any other court.

*[Remainder of the page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated:  August 29, 2025                    Respectfully submitted,

*/s/ Christopher T. Cramer*
Christopher T. Cramer
Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer
Claire's Holdings LLC