## EXHIBIT A

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) |  |

**ORDER (I) AUTHORIZING**
**THE EMPLOYMENT AND RETENTION**
**OF BINDER DIJKER OTTE AS TAX ADVISORY SERVICES**
**PROVIDER TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**EFFECTIVE AS OF THE AUGUST 6, 2025, (II) APPROVING THE TERMS**
**OF THE SERVICES AGREEMENT, AND (III) GRANTING RELATED RELIEF**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"):  (a) authorizing the Debtors to employ and retain BDO USA, P.C. ("BDO USA") as their tax services provider effective as of August 6, 2025, in accordance with the terms and conditions set forth "Terms and Conditions of the Master Services Agreement" between BDO USA and the Debtors dated July 1, 2025 (the "2025 Terms and Conditions Letter"), a copy of which is attached to this Order as **Exhibit 1**, that certain letter attaching the "Terms and Conditions of the Master Services Agreement" between BDO USA and the Debtors, dated August 1, 2024 (the "2024 Terms and Conditions Letter"), a copy of which is attached to this Order as **Exhibit 2**, that certain letter

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]   Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Application.

attaching the "Terms and Conditions of the Master Services Agreement" between BDO USA and the Debtors dated May 1, 2023 (the "2023 Terms and Conditions Letter," and together with the 2025 Terms and Conditions Letter and the 2024 Terms and Conditions Letter, the "Terms and Conditions Letter"), a copy of which is attached to this Order as **Exhibit 3**, and any Statements of Work by and among the Debtors and BDO USA (the "SOWs," together with the Terms and Conditions Letter, collectively, the "Services Agreement"); (b) approving the terms of the Services Agreement; and (c) granting related relief, all as more fully set forth in the Application; and upon the *Declaration of Kevin Wilkes in Support of the Debtors' Application for Entry of an Order (I) Authorizing the Employment and Retention of BDO USA, P.C. as Tax Advisory Services Provider to the Debtors and Debtors in Possession, Effective as of August 6, 2025, (II) Approving the Terms of the Services Agreement and (III) Granting Related Relief* (the "Wilkes Declaration") filed in support of the same, and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and having heard the statements

in support of the relief requested therein, at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted on a final basis as set forth herein.

2.      The Debtors are authorized pursuant to sections 327(a), 328, and 1107 (b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2 to retain and employ BDO USA as their tax services provider in accordance with the terms and conditions set forth in the Services Agreement, as modified by this Order, effective as of August 6, 2025; *provided* that, notwithstanding anything in the Services Agreement to the contrary, BDO USA shall only seek reimbursement of reasonable expenses that BDO USA actually incurs.

3.      The terms and conditions of the Services Agreement, together with all annexes and exhibits thereto and all compensation provisions set forth therein, as modified by this Order, are reasonable terms and conditions of employment and are hereby approved.

4.      BDO USA shall be compensated in accordance with sections 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules and the Local Rules, this Order, the applicable U.S. Trustee guidelines, and any other applicable orders of this Court.

5.      BDO USA shall file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any applicable U.S. Trustee guidelines, and any applicable orders of the Court.  BDO USA shall include in its fee applications, among other things, contemporaneous time records setting forth a

description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors in half-hour (0.5) increments.

6.     Notwithstanding anything in the Services Agreement to the contrary, the indemnification provisions set forth in the Terms and Conditions Letters (the "Indemnification Provisions") are hereby approved, subject to the following modifications with respect to the services performed thereunder from August 6, 2025 to the effective date of any chapter 11 plan:

a.   No individual entity ("Indemnified Agent") in the BDO Group (as that term is defined in the Services Agreement) shall be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services, unless such services and the indemnification, contribution, or reimbursement are approved by the Court;

b.   The Debtors shall have no obligation to indemnify any Indemnified Agent, or provide contribution or reimbursement to any Indemnified Agent, for any claim or expense to the extent it is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from any Indemnified Agent's gross negligence, willful misconduct or bad faith; (ii) for a contractual dispute in which the Debtor alleges breach of BDO USA's contractual obligations, unless this Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to applicable law; (iii) arising from or relates to a pre-petition action or inaction by BDO USA, or (iv) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing pursuant to subparagraph (c) hereof to be a claim or expense for which the Indemnified Agent should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement, as modified by this Order;

c.   if, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, BDO USA believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation, the advancement of defense costs, BDO USA must file an application therefor in this Court, and the Debtors may not pay any such amounts to BDO USA before the entry of an order by this Court approving such payment.  This subparagraph (c) is intended only to specify the period of time under which this Court shall have

jurisdiction over any request for fees and expenses by any Indemnified Agent for indemnification, contribution, and/or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify, or make contributions or reimbursements to, the Indemnified Agents. All parties in interest shall retain the right to object to any demand by any Indemnified Agent for indemnification, contribution, and/or reimbursement.

d. The limitation of liability set forth in paragraph 3 of the Terms and Conditions Letter (the "Indemnification Provisions") shall not be applicable with respect to any claim the Debtors have against BDO USA with respect to Services performed and provided pursuant to this Order for the Debtor from August 6, 2025 through the effective date of the Debtor's chapter 11 plan.

7.     In the event that, during the pendency of these chapter 11 cases, BDO USA seeks reimbursement from the Debtors for attorneys' fees and expenses, the invoices and supporting time records for the attorneys' fees and expenses shall be included in BDO USA's own fee applications, both interim and final, and such invoices and time records shall be in compliance with the Local Rules, and shall be subject to approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code, without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code; *provided*, *however*, that BDO USA shall not seek reimbursement from the Debtors' estates for any fees incurred in defending any objections filed with respect to BDO USA's fee applications filed in these chapter 11 cases.

8.     Prior to any increases in BDO USA's rates, BDO USA shall provide notice of such increase to the Debtor and the U.S. Trustee. A supplemental affidavit shall explain the basis for the requested rate increases in accordance with section 330(a)(3)(F) of the Bankruptcy Code and state whether the Debtors have consented to the rate increase. The U.S. Trustee retains all rights to object to any rate increase on all grounds including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code, and all rates and rate increases are subject to review by the Court.

9.      Notwithstanding anything in the Application or the Services Agreement to the contrary, to the extent that BDO USA uses the services of independent contractors or subcontractors which are not affiliates or subsidiaries of BDO USA, including BDO member firms (collectively, the "Contractors") in these cases, BDO USA shall:  (a) pass through the cost of such Contractors to the Debtors at the same rate that BDO  pays the Contractors; and (b) seek reimbursement only for actual costs of the Contractors.  Contractors from whom BDO USA seeks to pass through hourly-based fees or costs to the Debtors shall be subject to the same conflict checks as required for BDO USA, and such Contractors shall file with the Court such disclosures as required by Bankruptcy Rule 2014.

10.     BDO USA shall cooperate with the Debtors to minimize unnecessary duplication of efforts regarding BDO USA's services and those other professionals will be providing to the Debtors in these chapter 11 cases.

11.     To the extent that there may be any inconsistency between the terms of the Application, the Wilkes Declaration, the Services Agreement, and this Order, the terms of this Order shall govern.

12.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

13.     The Debtors and BDO USA are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

14.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

<u>2025 Terms and Conditions Letter</u>



| | |
|---|---|
| Tel: 312-856-9100 | 330 N. Wabash, Suite 3200 |
| Fax: 312-856-1379 | Chicago, IL 60611 |
| www.bdo.com | |

July 1, 2025

Ms. Suzanne Stoddard, SVP Finance/CAO
Claire's Holdings LLC
2400 West Central Road
Hoffman Estates, IL 60192

**Re: Agreement for Professional Services**

Dear Ms. Stoddard:

Thank you for selecting BDO USA. We appreciate the opportunity to provide exceptional professional services to Claire's Holdings LLC ("Client" or "you"). Your services will be provided by BDO USA and any of our affiliates or wholly owned subsidiaries (collectively "BDO" or "we") who execute a Statement of Work ("SOW") agreeing to be bound to the Terms and Conditions (as defined below).

The attached Terms and Conditions of the Master Services Agreement ("Terms and Conditions") sets forth the standard terms and conditions that will govern our provision of professional services to you. For each new engagement or additional service that BDO performs for you, BDO and Client shall agree upon a description of such services and engagement-specific terms in an SOW. This letter, along with the Terms and Conditions shall constitute the agreement for professional services ("Agreement") between BDO and Client. This Agreement shall be effective for a period of three (3) years beginning on the date of this letter (the "Effective Date"). Work not set forth in a specific SOW form will (i) be governed by this Agreement, (ii) be billed at our standard rates, or rates otherwise agreed to, and (iii) include charges for related expenses.

Please acknowledge your acceptance of the foregoing by signing and returning a copy of this Agreement to us.

If you have any questions, please contact Matthew Panzica. We look forward to working with you.

Very truly yours,

**BDO USA**


By: _Matt Panzica_ _____
Name: Matthew Panzica
Title: Principal


The Data Privacy Policy for BDO USA and its subsidiaries is located at https://www.bdo.com/legal-privacy/client-data-privacy-policy. If you have questions about this Privacy Policy, please contact us at privacy@bdo.com.

BDO USA refers to BDO USA, P.C., a Virginia professional corporation, also doing business in certain jurisdictions with an alternative identifying abbreviation, such as Corp. or P.S.C.

BDO USA, P.C., is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

**BDO**
**Terms & Conditions of the Master Services Agreement**

**1.    General.** This Agreement will apply to all tax, advisory and third party attestation services BDO performs at Client's request and pursuant to the Client's directions (the "Services") even if such Services are not expressly covered by a SOW. To the extent there is any conflict or inconsistency between the Agreement and any SOW and, unless the parties specifically state in writing that they intend to modify a term of this Agreement, the terms of this Agreement shall prevail.

**2.    Termination.** Each party shall have the right to terminate this Agreement and/or any SOW, as applicable, at any time by giving written notice to the other party not less than 30 business days before the proposed effective date of termination. If this Agreement terminates or is terminated while one or more SOWs (or Services not covered by a SOW) remain outstanding, the terms of this Agreement shall continue to apply to the SOW and any other outstanding Services, and this Agreement shall be deemed finally terminated only upon termination of all outstanding SOWs, or completion of the Services thereunder. Termination of one or more SOWs will not automatically terminate this Agreement. In addition, BDO may terminate this Agreement and/or any SOW and outstanding Services immediately if BDO reasonably determines that it must do so to comply with applicable professional standards, applicable laws or regulations (e.g., a conflict of interest arises). Those provisions in this Agreement and any SOW hereunder that, by their very nature, are intended to survive termination shall survive after the termination of this Agreement or any SOW, including, but not limited to, the parties' obligations related to any of the following provisions: indemnification, limitations on liability, confidentiality, dispute resolution, payment and reimbursement obligations, limitations on use or reliance, and non-solicitation.

If this Agreement and/or any SOW is terminated (or any other Services not covered by a SOW are terminated), Client agrees to compensate BDO for the Services performed and expenses incurred through the effective date of termination. To the extent Client terminates any SOW that includes any licensing arrangements under which Client receives from BDO a license to use, or obtain access to, External Computing Options (as defined below), Client agrees that it will be responsible for all fees and expenses associated with such licenses for External Computing Options through and including the date that is thirty days after date the Client provides such termination notice to BDO.

**3.    Indemnification and Limitation of Liability.** As the Services are intended for Client and not third parties, Client agrees to release, indemnify and hold harmless BDO and its shareholders, partners, principals, employees, affiliates, contractors and agents (collectively "BDO Group") from and against all claims, liabilities, damages or expenses (including attorneys' fees) of any kind relating to the Services or this Agreement, whether arising in contract, statute, tort (including without limitation, negligence) or otherwise (collectively, the "Claims") that are brought by a third party. Client further agrees to release, indemnify and hold harmless BDO Group from all Claims relating to the Services or this Agreement attributable to any misrepresentations made by Client. Except to the extent finally determined to have resulted from BDO Group's fraud or intentional misconduct, BDO Group's aggregate liability to Client for all direct or third-party Claims shall not exceed the amount of fees paid by Client to BDO during the 12 months preceding the date of the Claim pursuant to the applicable SOW or such other work performed outside a SOW, under which the Claim arose. In no event shall BDO Group be liable for consequential, special, indirect, incidental, punitive, or exemplary losses or damages, loss of profits or losses resulting from loss of data, business or goodwill relating to the Agreement, regardless of whether BDO has been advised of the possibility of such damages. Client shall bring any Claims related to the Services or otherwise related to this Agreement no later than one year after (i) the completion of the Services set forth in SOW under which the Claims arose or (ii) if the applicable SOW or this Agreement was

terminated prior to completion of the Services, the date the applicable SOW or this Agreement was terminated. In no event shall the preceding sentence extend any otherwise legally applicable period of limitations on such Claims.

**4.      Third-Parties and Use.** All Services and deliverables hereunder shall be solely for Client's use and benefit pursuant to our client relationship. This engagement does not create privity between BDO and any person or party other than Client and is not intended for the express or implied benefit of any third party. No third party is entitled to rely, in any manner or for any purpose, on the Services or deliverables of BDO hereunder.

**5.      BDO Responsibilities.** BDO's Services will not constitute an audit, review, compilation, examination or other form of attest engagement. BDO shall have no responsibility to address any legal matters or questions of law. After completion of the Services, BDO will have no responsibility to update its advice, recommendations or work product for changes or modifications to the law and regulations or for subsequent events or transactions, unless Client separately engages BDO in writing to do so.

**6.      Client Responsibilities.** For BDO to remain independent, professional standards require BDO to maintain certain respective roles and relationships with Client regarding the Services. Client understands and agrees that BDO will not perform management functions or make management decisions on behalf of Client. However, BDO will provide advice and recommendations to assist management of Client in performing its functions and fulfilling its responsibilities. In connection with BDO's provision of Services, Client agrees that Client shall perform the following functions: (a) make all management decisions and perform all management functions with respect to the Services performed by BDO; (b) assign an individual who possesses suitable skill, knowledge and experience to oversee such Services and to evaluate the adequacy and results of such Services; and (c) accept responsibility for the results of such Services.

Because professional and certain regulatory standards require us to be independent, in both fact and appearance, with respect to the Client in the performance of our Services, any discussions that you have with personnel of BDO regarding employment could pose a threat to our independence. Therefore, BDO requests that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence.

**7.      Client Materials.** BDO shall be entitled to rely on and assume, without independent verification, that all representations, assumptions, information and data supplied by or on behalf of Client, its personnel, representatives, and agents (the "Client Materials") are complete and accurate. Client is responsible for ensuring that all Client Materials provided to BDO may be transferred to BDO and processed in accordance with the terms of this Agreement and applicable laws, and that to the extent required thereunder Client has obtained all consents required for BDO's receipt and use of the Client Materials. Client agrees that it will not transmit or make accessible to BDO in any manner personally identifiable information unless reasonably required for BDO's performance of the Services. BDO will not audit or otherwise verify the accuracy or completeness of the data you submit, although we may need to ask you for clarification of some of the information. Client shall be responsible for maintenance and retention of its records. Unless otherwise agreed to by the parties, BDO shall not assume any responsibility for any financial reporting with respect to the Services.

**8.      Ownership of Working Papers.** In connection with the performance of the Services, we will prepare records and deliverables as set forth in the SOW. We also will prepare documents that support our work and include items such as work programs and analyses that do not constitute part of Client's records ("Working Papers"). The Working Papers prepared pursuant to this Agreement are the property of BDO. The Working Papers constitute confidential, proprietary, and trade secret information, and will be retained

by BDO in accordance with our policies and procedures and all applicable laws.

**9.     Consent for Disclosure.** If BDO is engaged in the preparation of tax returns, Internal Revenue Code Sections 6713 and 7216 require BDO to obtain your consent before using or disclosing information that you furnish to us in connection with the preparation of your return(s).

You hereby consent to BDO's use of Client's information for the purpose of providing you with materials and information, including newsletters or other business-related items of interest, news about BDO, and invitations to BDO-sponsored events.

You also consent to BDO's disclosure of Client's information to entities owned in whole or in part by BDO ("Affiliates"), members of the BDO Alliance USA (a nationwide association of independently-owned local and regional accounting, consulting and service firms, ("Alliance Firms"), independent member firms of the international BDO network ("Member Firms"), and independent contractors, including but not limited to parties who render auxiliary services ("Contractors" and, together with Affiliates, Alliance Firms and Member Firms, collectively, "Third-Party Service Providers") for the purpose of assisting BDO in preparing Client's tax returns and/or rendering other services requested by Client. You consent to disclosure of Client's information to Third-Party Service Providers outside the United States and consent to the participation of Third-Party Service Providers in making substantive determinations affecting the tax liability reported by Client. This consent applies to all information required to be included in tax returns prepared pursuant to this Agreement and all tax return information relevant to the services provided pursuant to this Agreement unless you request a more limited disclosure in writing sent to taxdisclosure@bdo.com. Unless limited or revoked in writing, the duration of this consent is the same as the term of this Agreement. BDO will not condition its services on your consent except where BDO seeks to disclose Client's tax return information to a

Third-Party Service Provider for purposes of performing services related to preparation of Client's tax return.

**10.     Fees and Expenses.** The fees and expenses under this Agreement shall be set forth in the applicable SOW. If no SOW is in place, fees will be at our standard rates, or rates otherwise agreed to, and related expenses will be charged to Client. BDO may charge additional fees if Client requests that BDO perform services in addition to the Services described in any SOW. The amount of our fees is based upon the expectation that certain information and assistance will be received by BDO in a timely manner from Client as set forth in this Agreement. If BDO believes an additional fee is required as the result of the failure of Client to meet any of these requests for information or for any other reason, BDO will inform you in a timely manner.

Unless otherwise agreed to in a SOW, our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due upon receipt. Invoices that are unpaid 30 days past the invoice date are deemed delinquent and we reserve the right to charge interest on the past due amount at the lesser of 1.0% per month or the maximum amount permitted by law. If an account has fees that are not paid in a timely manner, we then reserve the right to suspend our Services, terminate the licensing arrangements under which you receive a license to use, or suspend your access to, External Computing Options provided through BDO, withhold delivery of any deliverables, or withdraw from this engagement entirely. If any collection action is required, you agree to reimburse us for all our costs of collection, including without limitation, attorneys' fees.

**11.     Assignment and Sole Recourse.** In performing the Services hereunder, BDO may assign its rights to perform a portion of the Services to, and may engage, the service of Third-Party Service Providers. If a Third-Party Service Provider is utilized or assignment is made, Client agrees that, unless Client contracts directly with the Third-Party Service Provider, substantially all of the applicable

terms and conditions set forth in the Agreement, shall apply to the Third-Party Service Provider. BDO agrees that it shall not permit the Third-Party Service Provider to perform any work relating to the Services until the Third-Party Service Provider agrees to be bound by the applicable terms and conditions of the Agreement. BDO further agrees that it will remain primarily responsible for the Services, unless Client and BDO agree otherwise, and BDO will ensure that the work of the Third-Party Service Provider is performed in accordance with this Agreement. Although applicable privacy laws may vary depending on the jurisdiction and may provide less or different protection than those of Client's home country, BDO requires Third-Party Service Providers to agree to maintain the confidentiality of Client's information and observe BDO's policies concerning any confidential client information that BDO provides to Third-Party Service Providers. To the extent you have any Claims against a Member Firm that is a Third Party Service Provider in any way arising from, in respect of or in connection with the Services or this Agreement, you agree that you shall bring such Claim(s) against BDO instead of such Member Firm, except to the extent finally judicially determined to have resulted from the fraud or intentional misconduct of such Member Firm. A Member Firm may enforce any limitations or exclusions of liability available to BDO under this Agreement.

Without our prior written consent, Client may not assign this Agreement except to a party that acquires substantially all of your assets and operations.

**12.    Dispute Resolution.** Any dispute or claim between you and BDO arising out of or relating to the Agreement or a breach of the Agreement, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud or claims based in whole or in part on any other common-law, statutory, regulatory, legal or equitable theory, and disputes regarding all fees, including attorneys' fees of any type, and/or costs charged under this Agreement ("Arbitration Claims") (except to the extent provided below) shall be submitted to binding arbitration administered by the American Arbitration Association ("AAA"), in accordance with its Commercial Arbitration Rules. Arbitration Claims shall be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. Arbitration Claims shall be heard by a panel of three (3) arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten (10) days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the AAA. The arbitration panel shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of this arbitration agreement. The arbitration panel may not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding. The arbitration panel shall have no authority to award non-monetary or equitable relief, but nothing herein shall be construed as a prohibition against a party from pursuing non-monetary or equitable relief in a federal or state court. The place of arbitration shall be the city in which the BDO office providing the majority of the Services involved is located, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration and the Agreement shall be governed by the provisions of the laws of the State of New York (except if there is no applicable state law providing for such arbitration, then the Federal Arbitration Act shall apply) and the procedural and substantive law of such state shall be applied without reference to conflict of law rules. The parties shall bear their own legal fees and costs for all Arbitration Claims. The award of the

arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to the Agreement.

The parties to the Agreement acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration.

13.    **Conflicts of Interest.** BDO is not aware of any conflicts of interest with respect to any of the names Client has provided. BDO is not responsible for continuously monitoring other potential conflicts that could arise during the course of the engagement, although we will inform Client promptly should any come to our attention. We reserve the right to resign from this engagement at any time if conflicts of interest arise or become known to us. Additionally, our engagement by Client will in no way preclude us from being engaged by any other party in the future. Notwithstanding anything contained in confidentiality provisions set forth herein, BDO shall be permitted to disclose that it is engaged to provide the Services to Client under this Agreement if BDO in its reasonable professional judgment determines that such disclosure is required in connection with BDO's provision of services on behalf of other clients of BDO, including, without limitation, professional services engagements under which BDO personnel act as professionals in legal proceedings that require disclosures, arbitrators in post-acquisition disputes or act as expert witnesses.

14.    **Power and Authority.** Each of the parties hereto has all requisite power and authority to execute and deliver this Agreement and to carry out and perform its respective obligations hereunder. This Agreement constitutes the legal, valid and binding obligations of each party, enforceable against such party in accordance with its terms.

15.    **Subpoenas.** If Client requests BDO to object to or respond to, or BDO receives and responds to, a validly issued third party subpoena, court order, government regulatory inquiry, or other similar request for, or legal process for the production of, documents and/or testimony relative to information we obtained and/or prepared during the course of this or any prior engagements with Client, you agree to compensate us for all time BDO expends in connection with such response, at our standard rates, and to reimburse BDO for all related out-of-pocket costs (including outside attorneys' fees) that we incur.

16.    **Email Communications.** BDO disclaims and waives, and the Client releases BDO from all liability for the interception or unintentional disclosure of e-mail transmissions or for the unauthorized use or failed delivery of e-mails transmitted or received by BDO in connection with the performance of the Services.

17.    **External Computing Options.** If, at the Client's request, any member of the BDO Group agrees to use certain external commercial services, including but not limited to services for cloud storage, remote access, third party software and/or file sharing options (collectively "External Computing Options"), that are outside of BDO's standard security protocol, the Client acknowledges that such External Computing Options may be associated with heightened security and privacy risks. Accordingly, BDO Group disclaims, and the Client agrees to release BDO Group from, and indemnify BDO Group for, all liability arising out of or related to the use of such External Computing Options.

**18. Electronic Transmissions.** This Agreement may be transmitted in electronic format and shall not be denied legal effect solely because it was formed or transmitted, in whole or in part, by electronic record; however, this Agreement must then remain capable of being retained and accurately reproduced, from time to time, by electronic record by the parties to this Agreement and all other persons or entities required by law. An electronically transmitted signature to this Agreement will be deemed an acceptable original for purposes of consummating this Agreement and binding the party providing such electronic signature.

**19. Severability.** If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable in whole or in part, for any reason whatsoever, such portion of this Agreement shall be amended to the minimum extent required to make the provision enforceable and the remaining portions of this Agreement shall remain in full force and effect.

**20. Independent Contractor.** BDO is providing the Services to Client as an independent contractor bound by the terms hereof to perform the Services pursuant to the Client's instructions. BDO's obligations to Client are exclusively contractual in nature. This Agreement does not create any agency, employment, partnership, joint venture, trust, or other fiduciary relationship between the parties. Neither BDO nor Client shall have the right to bind the other to any third party or otherwise to act in any way as a representative or agent of the other except as otherwise agreed in writing between the parties.

**21. Confidentiality.** Each of the parties hereto shall treat and keep all the "Confidential Information" as confidential, with at least the same degree of care as it accords to its own confidential information, but in no event less than a reasonable degree of care. Each party shall disclose the Confidential Information only to its employees, partners, contractors, agents or its legal or other advisors, provided that they have: (i) each been informed of the confidential, proprietary and secret nature of the Confidential Information, or are subject to a binding, preexisting obligation of confidentiality no less stringent than the requirements of this Agreement and (ii) a demonstrable need to review such Confidential Information. "Confidential Information" means all non-public information that is marked as "confidential" or "proprietary" or has commercial value in the party's business and is obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party"). All terms of this Agreement are considered Confidential Information. Notwithstanding the foregoing, Confidential Information shall not include any information that was or is: (a) known to the Receiving Party prior to disclosure by the Disclosing Party; (b) as of the time of its disclosure, or thereafter becomes, part of the public domain through a source other than the Receiving Party; (c) made known to the Receiving Party by a third person who is not subject to any confidentiality obligation known to Receiving Party and such third party does not impose any confidentiality obligation on the Receiving Party with respect to such information; (d) required to be disclosed pursuant to governmental authority, professional obligation, law, decree regulation, subpoena or court order; or (e) independently developed by the Receiving Party. If BDO is providing tax services for the Client, in no case shall the tax treatment or the tax structure of any transaction be treated as confidential as provided in Treas. Reg. sec. 1.6011-4(b)(3). If disclosure is required pursuant to subsection (d) above, the Receiving Party shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement), to the extent legally permissible, provide prior written notice thereof to allow the Disclosing Party to seek a protective order or other appropriate relief. Upon the request of the Disclosing Party, the Receiving Party shall return or destroy all of the Confidential Information except for: (y) copies retained in work paper files retained to comply with a party's professional or legal obligations; and (z) such Confidential Information retained in

MSA01 v.01/2025

accordance with the Receiving Party's normal data back-up procedures.

**22.    Restricted Federal Data.** The parties agree that the services are not intended to involve the processing, storage, disclosure, or transmissions of Restricted Federal Data, defined as data or information subject to laws, regulations, or government-wide policies that require safeguarding or dissemination controls, including but not limited to the Federal Acquisition Regulations ("FAR"), the Defense Federal Acquisition Regulation Supplement ("DFARS"), the International Traffic in Arms Regulation ("ITAR"), the Export Administration Regulations ("EAR"), and the Arms Export Control Act ("AECA"), and any other data or information that is restricted for dissemination or disclosure to foreign nationals. For clarity, and without limiting the foregoing, controlled unclassified information ("CUI") shall be included in the definition of Restricted Federal Data. Because BDO relies on this information in order to fulfil its own compliance obligations, the Client shall not provide or otherwise make available Restricted Federal Data to BDO or its employees unless expressly agreed to in advance in writing by BDO. If the Client becomes aware that any known or suspected Restricted Federal Data will be or has been disclosed to BDO by the Client or otherwise in connection with the Services, the Client will (a) immediately notify BDO in writing to regulatedgovtdata@bdo.com and will cease any further transfer of such data unless and until BDO expressly agrees in writing, (b) identify which documents at which pages contain such information, (c) identify which export control regulations apply where applicable, and (d) identify the relevant export control classifications that apply to the information in question. The Client will fully cooperate with BDO in the investigation of and response to any known or suspected Restricted Federal Data that the Client has disclosed to BDO notwithstanding the foregoing. The Client further agrees that it will be responsible for all fees, costs, and expenses associated with processing, storage, disclosure, or transmissions of such Restricted Federal Data, including without limitation

additional fees, costs, and expenses related to compliance with obligations with respect to such Restricted Federal Data.

**23.    Intellectual Property.** BDO shall retain the right to reuse the ideas, concepts, know-how, and techniques derived from the rendering of the Services so long as it does not require the disclosure of any of Client's Confidential Information (as defined above). BDO shall be entitled to all protections afforded under State and Federal statutory or common law with respect to any report, computer program (source code and object code) or programming and/or material documentation, manual, chart, specification, formula, database architecture, template, system model, copyright, diagram, description, screen display, schematic, blueprint drawing, tape, license, listing, invention, record, development frameworks, code libraries, best practices, general knowledge, skills and experience, or other materials preexisting the execution of this Agreement ("BDO Intellectual Property"). Unless otherwise specifically stated in this Agreement, the reproduction, distribution or transfer, by any means or methods, whether direct or indirect, of any of BDO's or its agents' Intellectual Property or proprietary information by the Client is strictly prohibited.

**24.    Licensing Representation.** To the extent necessary for BDO to perform its obligations described in an applicable SOW, Client represents and warrants that it will obtain, maintain and comply with all of the licenses, consents, permits, approvals and authorizations that are necessary to allow BDO and its employees, contractors and subcontractors to access and use the services or software provided for the benefit of Client under Client's third-party services contracts, licenses or other contracts granting Client the right to access, use or receive services or software (each a "Licensing Representation"). Upon BDO's request, Client will provide BDO any references available evidencing the Licensing Representation (e.g., order number, customer support identifier). Tools subject to this Licensing Representation are hereby deemed External Computing Options (as

defined in this Agreement). Client hereby releases BDO Group from all claims and liabilities resulting from (i) BDO's reliance on a Licensing Representation and (ii) the functionality of any third-party software or services used or accessed by BDO.

**25.    Non-CPA Notice Requirement.** BDO is owned by professionals who hold CPA licenses. Depending on the nature of the Services being provided, from time to time non-CPA personnel may be involved in providing certain Services hereunder.

**26.    Entire Agreement.** This Agreement sets forth the entire agreement between the parties with respect to the subject matter herein, superseding all prior agreements, negotiations, or understandings, whether oral or written, with respect to the subject matter herein. This Agreement may not be changed, modified, or waived in whole or part except by an instrument in writing signed by both parties.

*[Signature Page to Follow]*

MSA01 v.01/2025

By signing below, the authorized signatory represents that he/she has power and authority and has obtained all approvals, authorizations and consents necessary to enter into this Agreement on behalf of the Client set forth below for whom the authorized signatory is executing this Agreement. The authorized signatory represents that this Agreement constitutes the legal, valid and binding obligation of the Client set forth below for whom the authorized signatory is executing this Agreement and is enforceable against the Client in accordance with its terms and conditions.

Accepted and Agreed to by:

**CLAIRE'S HOLDINGS LLC**

By: _Suzanne Stoddard_____
Name: Suzanne Stoddard
Title: Authorized Signatory

(Please sign and return to us one copy; retain a copy for your files)

**Exhibit 2**

2024 Terms and Conditions Letter



Tel:  312-856-9100
Fax:  312-856-1379
www.bdo.com

330 N. Wabash, Suite 3200
Chicago, IL 60611

August 1, 2024

Ms. Suzanne Stoddard, SVP Finance/CAO
Claire's Holdings LLC & Subsidiaries
2400 West Central Road
Hoffman Estates, IL 60192

**Re: Agreement for Professional Services**

Dear Ms. Stoddard:

Thank you for selecting BDO USA. We appreciate the opportunity to provide exceptional professional services to Claire's Holdings LLC & Subsidiaries ("Client" or "you"). Your services will be provided by BDO USA and any of our affiliates or wholly owned subsidiaries (collectively "BDO" or "we") who execute a Statement of Work agreeing to be bound to the Terms and Conditions (as defined below).

The attached Terms and Conditions of the Master Services Agreement ("Terms and Conditions") sets forth the standard terms and conditions that will govern our provision of professional services to you. For each new engagement or additional service that BDO performs for you, BDO and Client shall agree upon a description of such services and engagement-specific terms in a Statement of Work (each a "SOW"). This letter, along with the Terms and Conditions shall constitute the agreement for professional services ("Agreement") between BDO and Client. This Agreement shall be effective for a period of three (3) years beginning on the date of this letter (the "Effective Date"). Work not set forth in a specific SOW form will (i) be governed by this Agreement, (ii) be billed at our standard rates, or rates otherwise agreed to, and (iii) include charges for related expenses.

Please acknowledge your acceptance of the foregoing by signing and returning a copy of this Agreement to Matthew Panzica.

If you have any questions, please contact Matthew Panzica. We look forward to working with you.

Very truly yours,

**BDO USA**

By: _Matt Panzica_ _____
Name:  Matthew Panzica
Title:   Principal

The Data Privacy Policy for BDO USA and its subsidiaries is located at https://www.bdo.com/legal-privacy/client-data-privacy-policy. If you have questions about this Privacy Policy, please contact us at privacy@bdo.com.

BDO USA refers to BDO USA, P.C., a Virginia professional corporation, also doing business in certain jurisdictions with an alternative identifying abbreviation, such as Corp. or P.S.C.

BDO USA, P.C., is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

**BDO**
**Terms & Conditions of the Master Services Agreement**

**1.    General.** This Agreement will apply to all tax, advisory and third party attestation services BDO performs at Client's request and pursuant to the Client's directions (the "Services") even if such Services are not expressly covered by a SOW. To the extent there is any conflict or inconsistency between the Agreement and any SOW and, unless the parties specifically state in writing that they intend to modify a term of this Agreement, the terms of this Agreement shall prevail.

**2.    Termination.** Each party shall have the right to terminate this Agreement and/or any SOW, as applicable, at any time by giving written notice to the other party not less than 30 business days before the proposed effective date of termination. If this Agreement terminates or is terminated while one or more SOWs (or Services not covered by a SOW) remain outstanding, the terms of this Agreement shall continue to apply to the SOW and any other outstanding Services, and this Agreement shall be deemed finally terminated only upon termination of all outstanding SOWs, or completion of the Services thereunder. Termination of one or more SOWs will not automatically terminate this Agreement. In addition, BDO may terminate this Agreement and/or any SOW and outstanding Services immediately if BDO reasonably determines that it must do so to comply with applicable professional standards, applicable laws or regulations (e.g., a conflict of interest arises). Those provisions in this Agreement and any SOW hereunder that, by their very nature, are intended to survive termination shall survive after the termination of this Agreement or any SOW, including, but not limited to, the parties' obligations related to any of the following provisions: indemnification, limitations on liability, confidentiality, dispute resolution, payment and reimbursement obligations, limitations on use or reliance, and non-solicitation.

If this Agreement and/or any SOW is terminated (or any other Services not covered by a SOW are terminated), Client agrees to compensate BDO for the Services performed and expenses incurred through the effective date of termination. To the extent Client terminates any SOW that includes any licensing arrangements under which Client receives from BDO a license to use, or obtain access to, External Computing Options (as defined below), Client agrees that it will be responsible for all fees and expenses associated with such licenses for External Computing Options through and including the date that is thirty days after date the Client provides such termination notice to BDO.

**3.    Indemnification and Limitation of Liability.** As the Services are intended for Client and not third parties, Client agrees to release, indemnify and hold harmless BDO and its shareholders, partners, principals, employees, affiliates, contractors and agents (collectively "BDO Group") from and against all claims, liabilities, damages or expenses (including attorneys' fees) of any kind relating to the Services or this Agreement, whether arising in contract, statute, tort (including without limitation, negligence) or otherwise (collectively, the "Claims") that are brought by a third party. Client further agrees to release, indemnify and hold harmless BDO Group from all Claims relating to the Services or this Agreement attributable to any misrepresentations made by Client. Except to the extent finally determined to have resulted from BDO Group's fraud or intentional misconduct, BDO Group's aggregate liability to Client for all direct or third-party Claims shall not exceed the amount of fees paid by Client to BDO during the 12 months preceding the date of the Claim pursuant to the applicable SOW or such other work performed outside a SOW, under which the Claim arose. In no event shall BDO Group be liable for consequential, special, indirect, incidental, punitive, or exemplary losses or damages, loss of profits or losses resulting from loss of data, business or goodwill relating to the Agreement, regardless of whether BDO has been advised of the possibility of such damages. Client shall bring any Claims related to the Services or otherwise related to this Agreement no later than one year after (i) the completion of the Services set forth in SOW under which the Claims arose or (ii) if the applicable SOW or this Agreement was

v.12/2023

terminated prior to completion of the Services, the date the applicable SOW or this Agreement was terminated. In no event shall the preceding sentence extend any otherwise legally applicable period of limitations on such Claims.

**4.  Third-Parties and Use.** All Services and deliverables hereunder shall be solely for Client's use and benefit pursuant to our client relationship. This engagement does not create privity between BDO and any person or party other than Client and is not intended for the express or implied benefit of any third party. No third party is entitled to rely, in any manner or for any purpose, on the Services or deliverables of BDO hereunder.

**5.  BDO Responsibilities.** BDO's Services will not constitute an audit, review, compilation, examination or other form of attest engagement. BDO shall have no responsibility to address any legal matters or questions of law. After completion of the Services, BDO will have no responsibility to update its advice, recommendations or work product for changes or modifications to the law and regulations or for subsequent events or transactions, unless Client separately engages BDO in writing to do so.

**6.  Client Responsibilities.** For BDO to remain independent, professional standards require BDO to maintain certain respective roles and relationships with Client regarding the Services. Client understands and agrees that BDO will not perform management functions or make management decisions on behalf of Client. However, BDO will provide advice and recommendations to assist management of Client in performing its functions and fulfilling its responsibilities. In connection with BDO's provision of Services, Client agrees that Client shall perform the following functions: (a) make all management decisions and perform all management functions with respect to the Services performed by BDO; (b) assign an individual who possesses suitable skill, knowledge and experience to oversee such Services and to evaluate the adequacy and results of such Services; and (c) accept responsibility for the results of such Services.

Because professional and certain regulatory standards require us to be independent, in both fact and appearance, with respect to the Client in the performance of our Services, any discussions that you have with personnel of BDO regarding employment could pose a threat to our independence. Therefore, BDO requests that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence.

**7.  Client Materials.** BDO shall be entitled to rely on and assume, without independent verification, that all representations, assumptions, information and data supplied by or on behalf of Client, its personnel, representatives, and agents (the "Client Materials") are complete and accurate. Client is responsible for ensuring that all Client Materials provided to BDO may be transferred to BDO and processed in accordance with the terms of this Agreement and applicable laws, and that to the extent required thereunder Client has obtained all consents required for BDO's receipt and use of the Client Materials. Client agrees that it will not transmit or make accessible to BDO in any manner personally identifiable information unless reasonably required for BDO's performance of the Services. BDO will not audit or otherwise verify the accuracy or completeness of the data you submit, although we may need to ask you for clarification of some of the information. Client shall be responsible for maintenance and retention of its records. Unless otherwise agreed to by the parties, BDO shall not assume any responsibility for any financial reporting with respect to the Services.

**8.  Ownership of Working Papers.** In connection with the performance of the Services, we will prepare records and deliverables as set forth in the SOW. We also will prepare documents that support our work and include items such as work programs and analyses that do not constitute part of Client's records ("Working Papers"). The Working Papers prepared pursuant to this Agreement are the property of BDO. The Working Papers constitute confidential, proprietary, and trade secret information, and will be retained

v. 12/2023

by BDO in accordance with our policies and procedures and all applicable laws.

**9.    Consent for Disclosure.** If BDO is engaged in the preparation of tax returns, Internal Revenue Code Sections 6713 and 7216 require BDO to obtain your consent before using or disclosing information that you furnish to us in connection with the preparation of your return(s).

You hereby consent to BDO's use of Client's information for the purpose of providing you with materials and information, including newsletters or other business-related items of interest, news about BDO, and invitations to BDO-sponsored events.

You also consent to BDO's disclosure of Client's information to entities owned in whole or in part by BDO ("Affiliates"), members of the BDO Alliance USA (a nationwide association of independently-owned local and regional accounting, consulting and service firms, ("Alliance Firms"), independent member firms of the international BDO network ("Member Firms"), and independent contractors, including but not limited to parties who render auxiliary services ("Contractors" and, together with Affiliates, Alliance Firms and Member Firms, collectively, "Third-Party Service Providers") for the purpose of assisting BDO in preparing Client's tax returns and/or rendering other services requested by Client. You consent to disclosure of Client's information to Third-Party Service Providers outside the United States and consent to the participation of Third-Party Service Providers in making substantive determinations affecting the tax liability reported by Client. This consent applies to all information required to be included in tax returns prepared pursuant to this Agreement and all tax return information relevant to the services provided pursuant to this Agreement unless you request a more limited disclosure in writing sent to taxdisclosure@bdo.com. Unless limited or revoked in writing, the duration of this consent is the same as the term of this Agreement. BDO will not condition its services on your consent except where BDO seeks to disclose Client's tax return information to a

Third-Party Service Provider for purposes of performing services related to preparation of Client's tax return.

**10.    Fees and Expenses.** The fees and expenses under this Agreement shall be set forth in the applicable SOW. If no SOW is in place, fees will be at our standard rates, or rates otherwise agreed to, and related expenses will be charged to Client. BDO may charge additional fees if Client requests that BDO perform services in addition to the Services described in any SOW. The amount of our fees is based upon the expectation that certain information and assistance will be received by BDO in a timely manner from Client as set forth in this Agreement. If BDO believes an additional fee is required as the result of the failure of Client to meet any of these requests for information or for any other reason, BDO will inform you in a timely manner.

Unless otherwise agreed to in a SOW, our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due upon receipt. Invoices that are unpaid 30 days past the invoice date are deemed delinquent and we reserve the right to charge interest on the past due amount at the lesser of 1.0% per month or the maximum amount permitted by law. If an account has fees that are not paid in a timely manner, we then reserve the right to suspend our Services, terminate the licensing arrangements under which you receive a license to use, or suspend your access to, External Computing Options provided through BDO, withhold delivery of any deliverables, or withdraw from this engagement entirely. If any collection action is required, you agree to reimburse us for all our costs of collection, including without limitation, attorneys' fees.

**11.    Assignment and Sole Recourse.** In performing the Services hereunder, BDO may assign its rights to perform a portion of the Services to, and may engage, the service of Third-Party Service Providers. If a Third-Party Service Provider is utilized or assignment is made, Client agrees that, unless Client contracts directly with the Third-Party Service Provider, substantially all of the applicable

v.12/2023

terms and conditions set forth in the Agreement, shall apply to the Third-Party Service Provider. BDO agrees that it shall not permit the Third-Party Service Provider to perform any work relating to the Services until the Third-Party Service Provider agrees to be bound by the applicable terms and conditions of the Agreement. BDO further agrees that it will remain primarily responsible for the Services, unless Client and BDO agree otherwise, and BDO will ensure that the work of the Third-Party Service Provider is performed in accordance with this Agreement. Although applicable privacy laws may vary depending on the jurisdiction and may provide less or different protection than those of Client's home country, BDO requires Third-Party Service Providers to agree to maintain the confidentiality of Client's information and observe BDO's policies concerning any confidential client information that BDO provides to Third-Party Service Providers. To the extent you have any Claims against a Member Firm that is a Third Party Service Provider in any way arising from, in respect of or in connection with the Services or this Agreement, you agree that you shall bring such Claim(s) against BDO instead of such Member Firm, except to the extent finally judicially determined to have resulted from the fraud or intentional misconduct of such Member Firm. A Member Firm may enforce any limitations or exclusions of liability available to BDO under this Agreement.

Without our prior written consent, Client may not assign this Agreement except to a party that acquires substantially all of your assets and operations.

**12.    Dispute Resolution.** Any dispute or claim between you and BDO arising out of or relating to the Agreement or a breach of the Agreement, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud or claims based in whole or in part on any other common-law, statutory, regulatory, legal or equitable theory, and disputes regarding all fees, including attorneys' fees of any type, and/or costs charged under this Agreement

("Arbitration Claims") (except to the extent provided below) shall be submitted to binding arbitration administered by the American Arbitration Association ("AAA"), in accordance with its Commercial Arbitration Rules. Arbitration Claims shall be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. Arbitration Claims shall be heard by a panel of three (3) arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten (10) days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the AAA. The arbitration panel shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of this arbitration agreement. The arbitration panel may not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding. The arbitration panel shall have no authority to award non-monetary or equitable relief, but nothing herein shall be construed as a prohibition against a party from pursuing non-monetary or equitable relief in a federal or state court. The place of arbitration shall be the city in which the BDO office providing the majority of the Services involved is located, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration and the Agreement shall be governed by the provisions of the laws of the State of New York (except if there is no applicable state law providing for such arbitration, then the Federal Arbitration Act shall apply) and the procedural and substantive law of such state shall be applied without reference to conflict of law rules. The parties shall bear their own legal fees and costs for all Arbitration Claims. The award of the

v.12/2023

arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to the Agreement.

The parties to the Agreement acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration.

13.    **Conflicts of Interest.** BDO is not aware of any conflicts of interest with respect to any of the names Client has provided. BDO is not responsible for continuously monitoring other potential conflicts that could arise during the course of the engagement, although we will inform Client promptly should any come to our attention. We reserve the right to resign from this engagement at any time if conflicts of interest arise or become known to us. Additionally, our engagement by Client will in no way preclude us from being engaged by any other party in the future. Notwithstanding anything contained in confidentiality provisions set forth herein, BDO shall be permitted to disclose that it is engaged to provide the Services to Client under this Agreement if BDO in its reasonable professional judgment determines that such disclosure is required in connection with BDO's provision of services on behalf of other clients of BDO, including, without limitation, professional services engagements under which BDO personnel act as professionals in legal proceedings that require disclosures, arbitrators in post-acquisition disputes or act as expert witnesses.

14.    **Power and Authority.** Each of the parties hereto has all requisite power and authority to execute and deliver this Agreement and to carry out and perform its respective obligations hereunder. This Agreement constitutes the legal, valid and binding obligations of each party, enforceable against such party in accordance with its terms.

15.    **Subpoenas.** If Client requests BDO to object to or respond to, or BDO receives and responds to, a validly issued third party subpoena, court order, government regulatory inquiry, or other similar request for, or legal process for the production of, documents and/or testimony relative to information we obtained and/or prepared during the course of this or any prior engagements with Client, you agree to compensate us for all time BDO expends in connection with such response, at our standard rates, and to reimburse BDO for all related out-of-pocket costs (including outside attorneys' fees) that we incur.

16.    **Email Communications.** BDO disclaims and waives, and the Client releases BDO from all liability for the interception or unintentional disclosure of e-mail transmissions or for the unauthorized use or failed delivery of e-mails transmitted or received by BDO in connection with the performance of the Services.

17.    **External Computing Options.** If, at the Client's request, any member of the BDO Group agrees to use certain external commercial services, including but not limited to services for cloud storage, remote access, third party software and/or file sharing options (collectively "External Computing Options"), that are outside of BDO's standard security protocol, the Client acknowledges that such External Computing Options may be associated with heightened security and privacy risks. Accordingly, BDO Group disclaims, and the Client agrees to release BDO Group from, and indemnify BDO Group for, all liability arising out of or related to the use of such External Computing Options.

v.12/2023

**18. Electronic Transmissions.** This Agreement may be transmitted in electronic format and shall not be denied legal effect solely because it was formed or transmitted, in whole or in part, by electronic record; however, this Agreement must then remain capable of being retained and accurately reproduced, from time to time, by electronic record by the parties to this Agreement and all other persons or entities required by law. An electronically transmitted signature to this Agreement will be deemed an acceptable original for purposes of consummating this Agreement and binding the party providing such electronic signature.

**19. Severability.** If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable in whole or in part, for any reason whatsoever, such portion of this Agreement shall be amended to the minimum extent required to make the provision enforceable and the remaining portions of this Agreement shall remain in full force and effect.

**20. Independent Contractor.** BDO is providing the Services to Client as an independent contractor bound by the terms hereof to perform the Services pursuant to the Client's instructions. BDO's obligations to Client are exclusively contractual in nature. This Agreement does not create any agency, employment, partnership, joint venture, trust, or other fiduciary relationship between the parties. Neither BDO nor Client shall have the right to bind the other to any third party or otherwise to act in any way as a representative or agent of the other except as otherwise agreed in writing between the parties.

**21. Confidentiality.** Each of the parties hereto shall treat and keep all the "Confidential Information" as confidential, with at least the same degree of care as it accords to its own confidential information, but in no event less than a reasonable degree of care. Each party shall disclose the Confidential Information only to its employees, partners, contractors, agents or its legal or other advisors, provided that they have: (i) each been informed of the confidential, proprietary and secret nature of the Confidential Information, or are subject to a binding, preexisting obligation of confidentiality no less stringent than the requirements of this Agreement and (ii) a demonstrable need to review such Confidential Information. "Confidential Information" means all non-public information that is marked as "confidential" or "proprietary" or has commercial value in the party's business and is obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party"). All terms of this Agreement are considered Confidential Information. Notwithstanding the foregoing, Confidential Information shall not include any information that was or is: (a) known to the Receiving Party prior to disclosure by the Disclosing Party; (b) as of the time of its disclosure, or thereafter becomes, part of the public domain through a source other than the Receiving Party; (c) made known to the Receiving Party by a third person who is not subject to any confidentiality obligation known to Receiving Party and such third party does not impose any confidentiality obligation on the Receiving Party with respect to such information; (d) required to be disclosed pursuant to governmental authority, professional obligation, law, decree regulation, subpoena or court order; or (e) independently developed by the Receiving Party. If BDO is providing tax services for the Client, in no case shall the tax treatment or the tax structure of any transaction be treated as confidential as provided in Treas. Reg. sec. 1.6011-4(b)(3). If disclosure is required pursuant to subsection (d) above, the Receiving Party shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement), to the extent legally permissible, provide prior written notice thereof to allow the Disclosing Party to seek a protective order or other appropriate relief. Upon the request of the Disclosing Party, the Receiving Party shall return or destroy all of the Confidential Information except for: (y) copies retained in work paper files retained to comply with a party's professional or legal obligations; and (z) such Confidential Information retained in

v.12/2023

accordance with the Receiving Party's normal data back-up procedures.

**22. Restricted Federal Data.** The parties agree that the services are not intended to involve the processing, storage, disclosure, or transmissions of Restricted Federal Data, defined as data or information subject to laws, regulations, or government-wide policies that require safeguarding or dissemination controls, including but not limited to the Federal Acquisition Regulations ("FAR"), the Defense Federal Acquisition Regulation Supplement ("DFARS"), the International Traffic in Arms Regulation ("ITAR"), the Export Administration Regulations ("EAR"), and the Arms Export Control Act ("AECA"), and any other data or information that is restricted for dissemination or disclosure to foreign nationals. For clarity, and without limiting the foregoing, controlled unclassified information ("CUI") shall be included in the definition of Restricted Federal Data. Because BDO relies on this information in order to fulfil its own compliance obligations, the Client shall not provide or otherwise make available Restricted Federal Data to BDO or its employees unless expressly agreed to in advance in writing by BDO. If the Client becomes aware that any known or suspected Restricted Federal Data will be or has been disclosed to BDO by the Client or otherwise in connection with the Services, the Client will (a) immediately notify BDO in writing to regulatedgovtdata@bdo.com and will cease any further transfer of such data unless and until BDO expressly agrees in writing, (b) identify which documents at which pages contain such information, (c) identify which export control regulations apply where applicable, and (d) identify the relevant export control classifications that apply to the information in question. The Client will fully cooperate with BDO in the investigation of and response to any known or suspected Restricted Federal Data that the Client has disclosed to BDO notwithstanding the foregoing. The Client further agrees that it will be responsible for all fees, costs, and expenses associated with processing, storage, disclosure, or transmissions of such Restricted Federal Data, including without limitation

additional fees, costs, and expenses related to compliance with obligations with respect to such Restricted Federal Data.

**23. Intellectual Property.** BDO shall retain the right to reuse the ideas, concepts, know-how, and techniques derived from the rendering of the Services so long as it does not require the disclosure of any of Client's Confidential Information (as defined above). BDO shall be entitled to all protections afforded under State and Federal statutory or common law with respect to any report, computer program (source code and object code) or programming and/or material documentation, manual, chart, specification, formula, database architecture, template, system model, copyright, diagram, description, screen display, schematic, blueprint drawing, tape, license, listing, invention, record, development frameworks, code libraries, best practices, general knowledge, skills and experience, or other materials preexisting the execution of this Agreement ("BDO Intellectual Property"). Unless otherwise specifically stated in this Agreement, the reproduction, distribution or transfer, by any means or methods, whether direct or indirect, of any of BDO's or its agents' Intellectual Property or proprietary information by the Client is strictly prohibited.

**24. Licensing Representation.** To the extent necessary for BDO to perform its obligations described in an applicable SOW, Client represents and warrants that it will obtain, maintain and comply with all of the licenses, consents, permits, approvals and authorizations that are necessary to allow BDO and its employees, contractors and subcontractors to access and use the services or software provided for the benefit of Client under Client's third-party services contracts, licenses or other contracts granting Client the right to access, use or receive services or software (each a "Licensing Representation"). Upon BDO's request, Client will provide BDO any references available evidencing the Licensing Representation (e.g., order number, customer support identifier). Tools subject to this Licensing Representation are hereby deemed External Computing Options (as

v.12/2023

defined in this Agreement). Client hereby releases BDO Group from all claims and liabilities resulting from (i) BDO's reliance on a Licensing Representation and (ii) the functionality of any third-party software or services used or accessed by BDO.

**25.    Non-CPA Notice Requirement.** BDO is owned by professionals who hold CPA licenses. Depending on the nature of the Services being provided, from time to time non-CPA personnel may be involved in providing certain Services hereunder.

**26.    Entire Agreement.** This Agreement sets forth the entire agreement between the parties with respect to the subject matter herein, superseding all prior agreements, negotiations, or understandings, whether oral or written, with respect to the subject matter herein. This Agreement may not be changed, modified, or waived in whole or part except by an instrument in writing signed by both parties.

*[Signature Page to Follow]*

*v.12/2023*

By signing below, the authorized signatory represents that he/she has power and authority and has obtained all approvals, authorizations and consents necessary to enter into this Agreement on behalf of the Client set forth below for whom the authorized signatory is executing this Agreement. The authorized signatory represents that this Agreement constitutes the legal, valid and binding obligation of the Client set forth below for whom the authorized signatory is executing this Agreement and is enforceable against the Client in accordance with its terms and conditions.

Accepted and Agreed to by:

**CLAIRE'S HOLDINGS LLC & SUBSIDIARIES**

By: _Suzanne Stoddard_

Name: Suzanne Stoddard

Title:   Authorized Signatory

(Please sign and return to us one copy; retain a copy for your files)

v.12/2023

**Exhibit 3**

2023 Terms and Conditions Letter



Tel:  312-856-9100
Fax:  312-856-1379
www.bdo.com

330 N. Wabash, Suite 3200
Chicago, IL 60611

May 3, 2023

Ms. Suzie Stoddard, CFO
Claire's Holdings LLC & Subsidiaries
2400 West Central Road
Hoffman Estates, IL

**Re: Agreement for Professional Services**

Dear Ms. Suzie Stoddard:

Thank you for selecting BDO USA, LLP.  We appreciate the opportunity to provide exceptional professional services to Claire's Holdings LLC & Subsidiaries ("Client" or "you").  Your services will be provided by BDO USA, LLP and any of our affiliates or wholly owned subsidiaries (collectively "BDO" or "we") who execute a Statement of Work agreeing to be bound to the Terms and Conditions (as defined below).

The attached Terms and Conditions of the Master Services Agreement ("Terms and Conditions") sets forth the standard terms and conditions that will govern our provision of professional services to you.  For each new engagement or additional service that BDO performs for you, BDO and Client shall agree upon a description of such services and engagement-specific terms in a Statement of Work (each a "SOW").  This letter, along with the Terms and Conditions shall constitute the agreement for professional services ("Agreement") between BDO and Client.  This Agreement shall be effective for a period of three (3) years beginning on the date of this letter (the "Effective Date").  Work not set forth in a specific SOW form will (i) be governed by this Agreement, (ii) be billed at our standard rates, or rates otherwise agreed to, and (iii) include charges for related expenses.

Please acknowledge your acceptance of the foregoing by signing and returning a copy of this Agreement to Matthew Panzica.

If you have any questions, please contact Matthew Panzica.  We look forward to working with you.

Very truly yours,

**BDO USA, LLP**

By:  _Mett Panzica_ _____
Name:  Matthew Panzica
Title:   Partner

The Data Privacy Policy for BDO USA, LLP and its subsidiaries is located at https://www.bdo.com/legal-privacy/client-data-privacy-policy.  If you have questions about this Privacy Policy, please contact us at privacy@bdo.com.

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.
BDO is the brand name for the BDO network and for each of the BDO Member Firms.

**BDO**
**Terms & Conditions of the Master Services Agreement**

**1.    General.** This Agreement will apply to all tax, advisory and third party attestation services BDO performs at Client's request and pursuant to the Client's directions (the "Services") even if such Services are not expressly covered by a SOW. To the extent there is any conflict or inconsistency between the Agreement and any SOW and, unless the parties specifically state in writing that they intend to modify a term of this Agreement, the terms of this Agreement shall prevail.

**2.    Termination.** Each party shall have the right to terminate this Agreement and/or any SOW, as applicable, at any time by giving written notice to the other party not less than 30 business days before the proposed effective date of termination. If this Agreement terminates or is terminated while one or more SOWs (or Services not covered by a SOW) remain outstanding, the terms of this Agreement shall continue to apply to the SOW and any other outstanding Services, and this Agreement shall be deemed finally terminated only upon termination of all outstanding SOWs, or completion of the Services thereunder. Termination of one or more SOWs will not automatically terminate this Agreement. In addition, BDO may terminate this Agreement and/or any SOW and outstanding Services immediately if BDO reasonably determines that it must do so to comply with applicable professional standards, applicable laws or regulations (e.g., a conflict of interest arises). Those provisions in this Agreement and any SOW hereunder that, by their very nature, are intended to survive termination shall survive after the termination of this Agreement or any SOW, including, but not limited to, the parties' obligations related to any of the following provisions: indemnification, limitations on liability, confidentiality, dispute resolution, payment and reimbursement obligations, limitations on use or reliance, and non-solicitation.

If this Agreement and/or any SOW is terminated (or any other Services not covered by a SOW are terminated), Client agrees to compensate BDO for the Services performed and expenses incurred through the effective date of termination. To the extent Client terminates any SOW that includes any licensing arrangements under which Client receives from BDO a license to use, or obtain access to, External Computing Options (as defined below), Client agrees that it will be responsible for all fees and expenses associated with such licenses for External Computing Options through and including the date that is thirty days after date the Client provides such termination notice to BDO.

**3.    Indemnification and Limitation of Liability.** As the Services are intended for Client and not third parties, Client agrees to release, indemnify and hold harmless BDO and its partners, principals, employees, affiliates, contractors and agents (collectively "BDO Group") from and against all claims, liabilities, damages or expenses (including attorneys' fees) of any kind relating to the Services or this Agreement, whether arising in contract, statute, tort (including without limitation, negligence) or otherwise (collectively, the "Claims") that are brought by a third party. Client further agrees to release, indemnify and hold harmless BDO Group from all Claims relating to the Services or this Agreement attributable to any misrepresentations made by Client. Except to the extent finally determined to have resulted from BDO Group's fraud or intentional misconduct, BDO Group's aggregate liability to Client for all direct or third-party Claims shall not exceed the amount of fees paid by Client to BDO during the 12 months preceding the date of the Claim pursuant to the applicable SOW or such other work performed outside a SOW, under which the Claim arose. In no event shall BDO Group be liable for consequential, special, indirect, incidental, punitive, or exemplary losses or damages, loss of profits or losses resulting from loss of data, business or goodwill relating to the Agreement, regardless of whether BDO has been advised of the possibility of such damages. Client shall bring any Claims related to the Services or otherwise related to this Agreement no later than one year after (i) the completion of the Services set forth in SOW under which the Claims arose or (ii) if the applicable SOW or this Agreement was

(11-22)

terminated prior to completion of the Services, the date the applicable SOW or this Agreement was terminated. In no event shall the preceding sentence extend any otherwise legally applicable period of limitations on such Claims.

**4. Third-Parties and Use.** All Services and deliverables hereunder shall be solely for Client's use and benefit pursuant to our client relationship. This engagement does not create privity between BDO and any person or party other than Client and is not intended for the express or implied benefit of any third party. No third party is entitled to rely, in any manner or for any purpose, on the Services or deliverables of BDO hereunder.

**5. BDO Responsibilities.** BDO's Services will not constitute an audit, review, compilation, examination or other form of attest engagement. BDO shall have no responsibility to address any legal matters or questions of law. After completion of the Services, BDO will have no responsibility to update its advice, recommendations or work product for changes or modifications to the law and regulations or for subsequent events or transactions, unless Client separately engages BDO in writing to do so.

**6. Client Responsibilities.** For BDO to remain independent, professional standards require BDO to maintain certain respective roles and relationships with Client regarding the Services. Client understands and agrees that BDO will not perform management functions or make management decisions on behalf of Client. However, BDO will provide advice and recommendations to assist management of Client in performing its functions and fulfilling its responsibilities. In connection with BDO's provision of Services, Client agrees that Client shall perform the following functions: (a) make all management decisions and perform all management functions with respect to the Services performed by BDO; (b) assign an individual who possesses suitable skill, knowledge and experience to oversee such Services and to evaluate the adequacy and results of such Services; and (c) accept responsibility for the results of such Services.

Because professional and certain regulatory standards require us to be independent, in both fact and appearance, with respect to the Client in the performance of our Services, any discussions that you have with personnel of BDO regarding employment could pose a threat to our independence. Therefore, BDO requests that you inform us prior to any such discussions so that we can implement appropriate safeguards to maintain our independence.

**7. Client Materials.** BDO shall be entitled to rely on and assume, without independent verification, that all representations, assumptions, information and data supplied by or on behalf of Client, its personnel, representatives, and agents (the "Client Materials") are complete and accurate. Client is responsible for ensuring that all Client Materials provided to BDO may be transferred to BDO and processed in accordance with the terms of this Agreement and applicable laws, and that to the extent required thereunder Client has obtained all consents required for BDO's receipt and use of the Client Materials. Client agrees that it will not transmit or make accessible to BDO in any manner personally identifiable information unless reasonably required for BDO's performance of the Services. BDO will not audit or otherwise verify the accuracy or completeness of the data you submit, although we may need to ask you for clarification of some of the information. Client shall be responsible for maintenance and retention of its records. Unless otherwise agreed to by the parties, BDO shall not assume any responsibility for any financial reporting with respect to the Services.

**8. Ownership of Working Papers.** In connection with the performance of the Services, we will prepare records and deliverables as set forth in the SOW. We also will prepare documents that support our work and include items such as work programs and analyses that do not constitute part of Client's records ("Working Papers"). The Working Papers prepared pursuant to this Agreement are the property of BDO. The Working Papers constitute confidential, proprietary, and trade secret information, and will be retained

(11-22)

by BDO in accordance with our policies and procedures and all applicable laws.

**9. Consent for Disclosure.** If BDO is engaged in the preparation of tax returns, Internal Revenue Code Sections 6713 and 7216 require BDO to obtain your consent before using or disclosing information that you furnish to us in connection with the preparation of your return(s).

You hereby consent to BDO's use of Client's information for the purpose of providing you with materials and information, including newsletters or other business-related items of interest, news about BDO, and invitations to BDO-sponsored events.

You also consent to BDO's disclosure of Client's information to entities owned in whole or in part by BDO ("Affiliates"), members of the BDO Alliance USA (a nationwide association of independently-owned local and regional accounting, consulting and service firms, ("Alliance Firms"), independent member firms of the international BDO network ("Member Firms"), and independent contractors, including but not limited to parties who render auxiliary services ("Contractors" and, together with Affiliates, Alliance Firms and Member Firms, collectively, "Third-Party Service Providers") for the purpose of assisting BDO in preparing Client's tax returns and/or rendering other services requested by Client. You consent to disclosure of Client's information to Third-Party Service Providers outside the United States and consent to the participation of Third-Party Service Providers in making substantive determinations affecting the tax liability reported by Client. This consent applies to all information required to be included in tax returns prepared pursuant to this Agreement and all tax return information relevant to the services provided pursuant to this Agreement unless you request a more limited disclosure in writing sent to taxdisclosure@bdo.com. Unless limited or revoked in writing, the duration of this consent is the same as the term of this Agreement. BDO will not condition its services on your consent except where BDO seeks to disclose Client's tax return

information to a Third-Party Service Provider for purposes of performing services related to preparation of Client's tax return.

**10. Fees and Expenses.** The fees and expenses under this Agreement shall be set forth in the applicable SOW. If no SOW is in place, fees will be at our standard rates, or rates otherwise agreed to, and related expenses will be charged to Client. BDO may charge additional fees if Client requests that BDO perform services in addition to the Services described in any SOW. The amount of our fees is based upon the expectation that certain information and assistance will be received by BDO in a timely manner from Client as set forth in this Agreement. If BDO believes an additional fee is required as the result of the failure of Client to meet any of these requests for information or for any other reason, BDO will inform you in a timely manner.

Unless otherwise agreed to in a SOW, our standard practice is to render our invoices on a monthly basis. Payment of our invoices is due upon receipt. Invoices that are unpaid 30 days past the invoice date are deemed delinquent and we reserve the right to charge interest on the past due amount at the lesser of 1.0% per month or the maximum amount permitted by law. If an account has fees that are not paid in a timely manner, we then reserve the right to suspend our Services, terminate the licensing arrangements under which you receive a license to use, or suspend your access to, External Computing Options provided through BDO, withhold delivery of any deliverables, or withdraw from this engagement entirely. If any collection action is required, you agree to reimburse us for all our costs of collection, including without limitation, attorneys' fees.

**11. Assignment and Sole Recourse.** In performing the Services hereunder, BDO may assign its rights to perform a portion of the Services to, and may engage, the service of Third-Party Service Providers. If a Third-Party Service Provider is utilized or assignment is made, Client agrees that, unless Client contracts directly with the Third-Party Service Provider, substantially all of the applicable

(11-22)

terms and conditions set forth in the Agreement, shall apply to the Third-Party Service Provider. BDO agrees that it shall not permit the Third-Party Service Provider to perform any work relating to the Services until the Third-Party Service Provider agrees to be bound by the applicable terms and conditions of the Agreement. BDO further agrees that it will remain primarily responsible for the Services, unless Client and BDO agree otherwise, and BDO will ensure that the work of the Third-Party Service Provider is performed in accordance with this Agreement. Although applicable privacy laws may vary depending on the jurisdiction and may provide less or different protection than those of Client's home country, BDO requires Third-Party Service Providers to agree to maintain the confidentiality of Client's information and observe BDO's policies concerning any confidential client information that BDO provides to Third-Party Service Providers. To the extent you have any Claims against a Member Firm that is a Third Party Service Provider in any way arising from, in respect of or in connection with the Services or this Agreement, you agree that you shall bring such Claim(s) against BDO instead of such Member Firm, except to the extent finally judicially determined to have resulted from the fraud or intentional misconduct of such Member Firm. A Member Firm may enforce any limitations or exclusions of liability available to BDO under this Agreement.

Without our prior written consent, Client may not assign this Agreement except to a party that acquires substantially all of your assets and operations.

**12.      Dispute Resolution.** Any dispute or claim between you and BDO arising out of or relating to the Agreement or a breach of the Agreement, including, without limitation, claims for breach of contract, professional negligence, breach of fiduciary duty, misrepresentation, fraud or claims based in whole or in part on any other common-law, statutory, regulatory, legal or equitable theory, and disputes regarding all fees, including attorneys' fees of any type, and/or costs charged under this Agreement

("Arbitration Claims") (except to the extent provided below) shall be submitted to binding arbitration administered by the American Arbitration Association ("AAA"), in accordance with its Commercial Arbitration Rules. Arbitration Claims shall be brought in a party's individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding. Arbitration Claims shall be heard by a panel of three (3) arbitrators, to be chosen as follows: within fifteen (15) days after the commencement of arbitration, each party shall select one person to act as arbitrator; thereafter, the two individually selected arbitrators shall select a third arbitrator within ten (10) days of their appointment. If the arbitrators selected by the parties are unable or fail to agree upon the third arbitrator, the third arbitrator shall be selected by the AAA. The arbitration panel shall have the power to rule upon its own jurisdiction and authority, including any objection to the initial or continuing existence, validity, effectiveness or scope of this arbitration agreement. The arbitration panel may not consolidate more than one person's claims and may not otherwise preside over any form of a representative or class proceeding. The arbitration panel shall have no authority to award non-monetary or equitable relief, but nothing herein shall be construed as a prohibition against a party from pursuing non-monetary or equitable relief in a federal or state court. The place of arbitration shall be the city in which the BDO office providing the majority of the Services involved is located, unless the parties agree in writing to a different location. Regardless of where the arbitration proceeding actually takes place, all aspects of the arbitration and the Agreement shall be governed by the provisions of the laws of the State of New York (except if there is no applicable state law providing for such arbitration, then the Federal Arbitration Act shall apply) and the procedural and substantive law of such state shall be applied without reference to conflict of law rules. The parties shall bear their own legal fees and costs for all Arbitration Claims. The award of the

(11-22)

arbitrators shall be accompanied by a reasoned opinion, and judgment on the award rendered by the arbitration panel may be entered in any court having jurisdiction thereof. Except as may be required by law or to enforce an award, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of the parties to the Agreement.

The parties to the Agreement acknowledge that by agreeing to this arbitration provision, they are giving up the right to litigate claims against each other, and important rights that would be available in litigation, including the right to trial by judge or jury, to extensive discovery and to appeal an adverse decision. The parties acknowledge that they have read and understand this arbitration provision, and that they voluntarily agree to binding arbitration.

**13.** **Conflicts of Interest.** BDO is not aware of any conflicts of interest with respect to any of the names Client has provided. BDO is not responsible for continuously monitoring other potential conflicts that could arise during the course of the engagement, although we will inform Client promptly should any come to our attention. We reserve the right to resign from this engagement at any time if conflicts of interest arise or become known to us. Additionally, our engagement by Client will in no way preclude us from being engaged by any other party in the future. Notwithstanding anything contained in confidentiality provisions set forth herein, BDO shall be permitted to disclose that it is engaged to provide the Services to Client under this Agreement if BDO in its reasonable professional judgment determines that such disclosure is required in connection with BDO's provision of services on behalf of other clients of BDO, including, without limitation, professional services engagements under which BDO personnel act as professionals in legal proceedings that require disclosures, arbitrators in post-acquisition disputes or act as expert witnesses.

**14.** **Power and Authority.** Each of the parties hereto has all requisite power and authority to execute and deliver this Agreement and to carry out and perform its respective obligations hereunder. This Agreement constitutes the legal, valid and binding obligations of each party, enforceable against such party in accordance with its terms.

**15.** **Subpoenas.** If Client requests BDO to object to or respond to, or BDO receives and responds to, a validly issued third party subpoena, court order, government regulatory inquiry, or other similar request for, or legal process for the production of, documents and/or testimony relative to information we obtained and/or prepared during the course of this or any prior engagements with Client, you agree to compensate us for all time BDO expends in connection with such response, at our standard rates, and to reimburse BDO for all related out-of-pocket costs (including outside attorneys' fees) that we incur.

**16.** **Email Communications.** BDO disclaims and waives, and the Client releases BDO from all liability for the interception or unintentional disclosure of e-mail transmissions or for the unauthorized use or failed delivery of e-mails transmitted or received by BDO in connection with the performance of the Services.

**17.** **External Computing Options.** If, at the Client's request, any member of the BDO Group agrees to use certain external commercial services, including but not limited to services for cloud storage, remote access, third party software and/or file sharing options (collectively "External Computing Options"), that are outside of BDO's standard security protocol, the Client acknowledges that such External Computing Options may be associated with heightened security and privacy risks. Accordingly, BDO Group disclaims, and the Client agrees to release BDO Group from, and indemnify BDO Group for, all liability arising out of or related to the use of such External Computing Options.

(11-22)

**18.** **Electronic Transmissions.** This Agreement may be transmitted in electronic format and shall not be denied legal effect solely because it was formed or transmitted, in whole or in part, by electronic record; however, this Agreement must then remain capable of being retained and accurately reproduced, from time to time, by electronic record by the parties to this Agreement and all other persons or entities required by law. An electronically transmitted signature to this Agreement will be deemed an acceptable original for purposes of consummating this Agreement and binding the party providing such electronic signature.

**19.** **Severability.** If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable in whole or in part, for any reason whatsoever, such portion of this Agreement shall be amended to the minimum extent required to make the provision enforceable and the remaining portions of this Agreement shall remain in full force and effect.

**20.** **Independent Contractor.** BDO is providing the Services to Client as an independent contractor bound by the terms hereof to perform the Services pursuant to the Client's instructions. BDO's obligations to Client are exclusively contractual in nature. This Agreement does not create any agency, employment, partnership, joint venture, trust, or other fiduciary relationship between the parties. Neither BDO nor Client shall have the right to bind the other to any third party or otherwise to act in any way as a representative or agent of the other except as otherwise agreed in writing between the parties.

**21.** **Confidentiality.** Each of the parties hereto shall treat and keep all the "Confidential Information" as confidential, with at least the same degree of care as it accords to its own confidential information, but in no event less than a reasonable degree of care. Each party shall disclose the Confidential Information only to its employees, partners, contractors, agents or its legal or other advisors, provided that they have: (i) each been informed of the

confidential, proprietary and secret nature of the Confidential Information, or are subject to a binding, preexisting obligation of confidentiality no less stringent than the requirements of this Agreement and (ii) a demonstrable need to review such Confidential Information. "Confidential Information" means all non-public information that is marked as "confidential" or "proprietary" or has commercial value in the party's business and is obtained by one party (the "Receiving Party") from the other party (the "Disclosing Party"). All terms of this Agreement are considered Confidential Information. Notwithstanding the foregoing, Confidential Information shall not include any information that was or is: (a) known to the Receiving Party prior to disclosure by the Disclosing Party; (b) as of the time of its disclosure, or thereafter becomes, part of the public domain through a source other than the Receiving Party; (c) made known to the Receiving Party by a third person who is not subject to any confidentiality obligation known to Receiving Party and such third party does not impose any confidentiality obligation on the Receiving Party with respect to such information; (d) required to be disclosed pursuant to governmental authority, professional obligation, law, decree regulation, subpoena or court order; or (e) independently developed by the Receiving Party. If BDO is providing tax services for the Client, in no case shall the tax treatment or the tax structure of any transaction be treated as confidential as provided in Treas. Reg. sec. 1.6011-4(b)(3). If disclosure is required pursuant to subsection (d) above, the Receiving Party shall (other than in connection with routine supervisory examinations by regulatory authorities with jurisdiction and without breaching any legal or regulatory requirement), to the extent legally permissible, provide prior written notice thereof to allow the Disclosing Party to seek a protective order or other appropriate relief. Upon the request of the Disclosing Party, the Receiving Party shall return or destroy all of the Confidential Information except for: (y) copies retained in work paper files retained to comply with a party's professional or legal obligations; and (z) such Confidential Information retained in

(11-22)

accordance with the Receiving Party's normal data back-up procedures.

**22.    Restricted Federal Data.** The parties agree that the Services are not intended to involve the processing, storage or transmissions of Restricted Federal Data, defined as data or information subject to laws, regulations or government-wide policies that require safeguarding or dissemination controls, including the Federal Acquisition Regulations ("FAR"), the Defense Federal Acquisition Regulation Supplement ("DFARS"), the International Traffic in Arms Regulation ("ITAR"), the Export Administration Regulations ("EAR"), and the Arms Export Control Act ("AECA"). For clarity, and without limiting the foregoing, controlled unclassified information ("CUI") shall be included in the definition of Restricted Federal Data. Client shall not provide or otherwise make available Restricted Federal Data to BDO unless expressly agreed to in advance in writing by BDO. If Client becomes aware that any known or suspected Restricted Federal Data will be or has been disclosed to BDO by Client or otherwise in connection with the Services, Client will immediately notify BDO in writing to regulatedgovtdata@bdo.com and will cease any further transfer of such data unless and until BDO expressly agrees in writing. Client will fully cooperate with BDO in the investigation of and response to any known or suspected Restricted Federal Data that Client has disclosed to BDO notwithstanding the foregoing. Client further agrees that it will be responsible for all fees, costs and expenses associated with processing of Restricted Federal Data, including without limitation additional fees, costs and expenses related to compliance with obligations with respect to such Restricted Federal Data.

**23.    Intellectual Property.** BDO shall retain the right to reuse the ideas, concepts, know-how, and techniques derived from the rendering of the Services so long as it does not require the disclosure of any of Client's Confidential Information (as defined above). BDO shall be entitled to all protections afforded under State and Federal statutory or common law with respect to any report,

computer program (source code and object code) or programming and/or material documentation, manual, chart, specification, formula, database architecture, template, system model, copyright, diagram, description, screen display, schematic, blueprint drawing, tape, license, listing, invention, record, development frameworks, code libraries, best practices, general knowledge, skills and experience, or other materials preexisting the execution of this Agreement ("BDO Intellectual Property"). Unless otherwise specifically stated in this Agreement, the reproduction, distribution or transfer, by any means or methods, whether direct or indirect, of any of BDO's or its agents' Intellectual Property or proprietary information by the Client is strictly prohibited.

**24.    Licensing Representation.** To the extent necessary for BDO to perform its obligations described in an applicable SOW, Client represents and warrants that it will obtain, maintain and comply with all of the licenses, consents, permits, approvals and authorizations that are necessary to allow BDO and its employees, contractors and subcontractors to access and use the services or software provided for the benefit of Client under Client's third-party services contracts, licenses or other contracts granting Client the right to access, use or receive services or software (each a "Licensing Representation"). Upon BDO's request, Client will provide BDO any references available evidencing the Licensing Representation (e.g., order number, customer support identifier). Tools subject to this Licensing Representation are hereby deemed External Computing Options (as defined in this Agreement). Client hereby releases BDO Group from all claims and liabilities resulting from (i) BDO's reliance on a Licensing Representation and (ii) the functionality of any third-party software or services used or accessed by BDO.

**25.    Non-CPA Notice Requirement.** BDO is owned by professionals who hold CPA licenses. Depending on the nature of the Services being provided, from time to time non-CPA personnel may be involved in providing certain Services hereunder.

(11-22)

**26.    Entire Agreement.** This Agreement sets forth the entire agreement between the parties with respect to the subject matter herein, superseding all prior agreements, negotiations, or understandings, whether oral or written, with respect to the subject matter herein. This Agreement may not be changed, modified, or waived in whole or part except by an instrument in writing signed by both parties.

[Signature Page to Follow]

(11-22)

By signing below, the authorized signatory represents that he/she has power and authority and has obtained all approvals, authorizations and consents necessary to enter into this Agreement on behalf of the Client set forth below for whom the authorized signatory is executing this Agreement. The authorized signatory represents that this Agreement constitutes the legal, valid and binding obligation of the Client set forth below for whom the authorized signatory is executing this Agreement and is enforceable against the Client in accordance with its terms and conditions.

Accepted and Agreed to by:

CLAIRE'S HOLDINGS LLC & SUBSIDIARIES

By: _Suzanne Stoddard_____

Name: Ms. Suzie Stoddard

Title: Authorized Signatory

(Please sign and return to us one copy; retain a copy for your files)