**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | Re: Docket Nos. 188, 221 |
|  | ) | Objection Deadline: September 5, 2025[2] |

**OBJECTION OF CERTAIN LANDLORDS TO MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND (B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

5Rivers CRE LLC, Brixmor Property Group, Brookfield Properties Retail, Inc., Hines Global REIT, Jones Lang LaSalle, Kite Realty Group, Inc., Regency Centers, L.P., SITE Centers, and Turnberry Associates (collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP and Law Office of Susan E. Kaufman, LLC, submit this objection (the "Objection") to the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2] Extended by agreement of counsel to Debtors.

*Relief* (the "DIP Motion")[3] filed by the above-captioned debtors (the "Debtors") and respectfully state as follows:

## PRELIMINARY STATEMENT

1. Debtors filed these chapter 11 cases without any post-petition financing and expected to conduct store closing sales at each of its 1500 stores. This chapter 11 filing is the second bankruptcy proceeding filed by Debtors, with the first being filed in 2018.[4] Debtors initially expected this chapter 11 filing to result in a full-chain liquidation. On August 20, 2025, however, Debtors filed the DIP Motion and a motion seeking approval of a going concern sale of Debtors' assets (the "Sale") to AWS Claires, LLC (including as lender under the DIP facility, the "Purchaser").[5] Purchaser is expecting to purchase many of Debtors' leases and is offering the DIP Financing to fund the sale process in bankruptcy.

2. The proposed DIP Financing, however, improperly shifts the risk of administrative insolvency onto landlords and Debtors' unsecured creditors for the benefit of Purchaser. Administrative solvency in these cases is not guaranteed and Landlords should not have to bear the burden of administrative insolvency. Landlords are entitled to payment of all Lease obligations arising under or coming due post-petition and the order approving the DIP Motion on a final basis should be (i) subject to the terms of, and (ii) neither impair, prejudice, nor modify landlord rights under, the Leases between Debtors and their Landlords.

---

[3]  Docket No. 188. The Debtors also filed the *Motion of Debtors for Entry of Final Orders (I) Authorizing the Debtors to (A) Use Cash Collateral, and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*. Docket No. 26 (the "Cash Collateral Motion"). To the extent the Debtors are not withdrawing the Cash Collateral Motion and the relief sought in such motion duplicates the relief sought in the DIP Motion, the Landlords object to such relief as sought in the Cash Collateral Motion as well.

[4]  Case No. 18-10583, Docket No. 1.

[5]  Docket Nos. 188, 190.

3. Although Debtors began these chapter 11 cases with the expectation to reject or fully close all operating storefronts owned by Landlords, now the Purchaser will take many of Debtors' leases as part of a going concern. For the locations not acquired as part of the Sale, Debtors expect to continue with store closing sales that will require use of the Leased Premises to increase liquidity and the assets in the post-petition bankruptcy estate.

4. As such, it is essential to ensure Landlords are not left bearing the risks of the planned proceedings—the approved DIP budget should provide for immediate payment of all administrative expenses, including the rent and charges that accrued during the period from the Petition Date, August 6, 2025, through August 31, 2025 (the "Stub Rent"). Stub Rent includes both fixed rent and additional rent, such as insurance, real estate taxes, and common area maintenance.

5. Landlords object to the failure of Debtors to provide for immediate payment of all Stub Rent in the proposed budget, as well as Debtors' attempt to waive the estates' rights under sections 506(c) and 552(b) of the Bankruptcy Code without providing for payment of all rent and charges related to Debtors' post-petition use of the stores. If the Court is inclined to grant such waivers, then Landlords request that post-petition rent and charges be paid in the near term directly to Landlords or that funds sufficient to cover the amounts due to all landlords in these cases be placed in escrow as adequate protection pursuant to sections 363(e) and 361 of the Bankruptcy Code and budgeted to be paid to Landlords no later than September 30, 2025.

6. In addition to objecting to the DIP Motion, Landlords request adequate protection for Debtors' continued use of Landlords' property outside of the ordinary course of business by conducting store closing sales in violation of the provisions of their leases to liquidate Lenders' collateral.

7. Landlords also seek to preserve the status quo regarding certain protections that were included in the interim order to prevent the Lenders' liens from attaching directly to the leases and to limit the right of any third party to occupy the leased premises after an event of default by Debtors.

8. Landlords have been in discussions with Debtors to resolve these issues consensually, but file this Objection out of an abundance of caution in case a negotiated resolution cannot be reached.

## BACKGROUND

9. Landlords are the owners or managing agents for the owners of numerous shopping centers located throughout the United States. Debtors lease retail space from Landlords pursuant to written leases (the "Leases") for the stores listed on **Exhibit A** (collectively, the "Leased Premises"). The Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See*, *e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

10. On August 6, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code with this Court. Debtors remain in possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

11. On August 6, 2025, Debtors filed the Cash Collateral Motion seeking entry of interim and final orders authorizing Debtors to continue their use of cash collateral (the "Cash Collateral").[6]

---

[6] Docket. No. 26.

12. On August 7, 2025, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Use Cash Collateral, and (B) Grant Liens and Provide Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [7] approving the Cash Collateral Motion on an interim basis.

13. On August 20, 2025, the Debtors filed (i) the DIP Motion, (ii) a motion seeking approval of a private sale of certain of the Debtors' assets (the "Sale"), including certain leases for retail locations, to AWS Claire's, LLC (the "Purchaser"),[8] and (iii) a notice of contracts and leases that may be assumed and assigned in connection with the Sale.[9]

14. On August 22, 2025, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense claims, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Interim Order"). [10]

15. At most locations, the Debtors failed to pay August rent when due, including the rent due under the Leases for Debtors' use and occupancy of the Leased Premises from August 6 through August 31, 2025.

---

[7]   Docket No. 82.
[8]   Docket No. 190.
[9]   Docket No. 209.
[10]  Docket No. 221.

## OBJECTION

A.     **Landlords Are Entitled to Adequate Protection Under Sections 363(e) and 361 of the Bankruptcy Code, Including Prompt Payment of Stub Rent in Full**

16. Section 363(e) of the Bankruptcy Code guarantees adequate protection to any party with an interest in property used by a debtor during the debtor's bankruptcy proceedings who makes a request for adequate protection:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

17. Section 363(e) is straightforward and non-discretionary. If a creditor with an "interest" in property used by Debtors makes a request for adequate protection, then the court "shall" prohibit or condition the use of such property on the provision of adequate protection. 11 U.S.C. § 363(e); *see In re Worldcom, Inc.*, 304 B.R. 611, 618 (Bankr. S.D.N.Y. 2004); *see also In re Metromedia Fiber Network, Inc.*, 290 B.R. 487, 491 (Bankr. S.D.N.Y. 2003) ("[s]ection 363(e) is not permissive or discretionary…").

18. The U.S. Supreme Court has held that the term "interest" "is the most general term that can be employed to denote a right, claim, title, or legal share in something." *Russello v. U.S.*, 464 U.S. 16, 21 (1983).

19. Section 363(e) is not limited to secured creditors. A landlord undeniably holds an interest in the property that it owns and leases to a debtor, as well as an interest in the lease itself, the rents due under that lease, and the proceeds of the lease. *See In re P.J. Clarke's Rest. Corp.*, 265 B.R. 392, 404 (Bankr. S.D.N.Y. 2001) (citing several cases holding that a landlord has the right to adequate protection of its right to timely payment of post-petition rent); *see also In*

*re Ernst Home Center, Inc*., 209 B.R. 955, 966 (Bankr. W.D. Wash. 1997) (held that real property lessors may request adequate protection under section 363(e) and noted that the right to payment under section 365(d)(3) would be hollow without a remedy); *In re Mr. Gatti's, Inc*., 164 B.R. 929, 946 (Bankr. W.D. Tex. 1994) (the enactment of section 365(d)(3) abrogated any argument against the entitlement of a landlord to adequate protection); *In re MS Freight Distribution, Inc*., 172 B.R. 976, 980 (Bankr. W.D. Wash. 1994) (landlord's right to be kept current on post-petition obligations is entitled to adequate protection); *In re Ames Department Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) ("[s]ection 363(e) of the Bankruptcy Code reserves for bankruptcy courts the discretion to condition the time, place and manner of [store closing] sales, thereby providing adequate safeguards to protect shopping center landlords and their other tenants, while allowing the Trustee to fulfill its fiduciary obligations").

20. A landlord's interests in its lease and the premises it leases to a debtor are further evidenced by the allowance of landlords' stub rent claims in other cases pursuant to section 503(b) of the Bankruptcy Code. *See, e.g.*, *In re Goody's Family Clothing Inc.*, 401 B.R. 656, 665 (D. Del. 2009) (affirming the allowance of stub rent claims under section 503(b)(1) of the Bankruptcy Code). Thus, given their interest in property that is being used by Debtors, and the request made herein, Landlords are entitled to receive adequate protection.

21. The plain language of section 361 of the Bankruptcy Code states that adequate protection may take one of three forms: a debtor may (i) tender an upfront cash payment or periodic cash payments, (ii) grant replacement liens, or (iii) grant other related relief (other than an administrative claim under section 503(b)(1) of the Bankruptcy Code) amounting to the indubitable equivalent of the protected party's interest in the property. 11 U.S.C. § 361. Section 361(3) is also clear that adequate protection *may not* take the form of a deferred

administrative claim. Under section 361 of the Bankruptcy Code, only a contemporaneous transfer of value satisfies the requirements of adequate protection.

22. Landlords recognize that Debtors or Purchaser may not be willing to make an immediate payment of Stub Rent. Although Landlords are willing to work with Debtors and/or Purchaser to agree to an acceptable timeline that provides for payment of the Stub Rent in the short term, Debtors should be required to hold funds in escrow as adequate protection for the payment of Stub Rent, so Landlords are not forced to bear the risk that they may never be paid if a plan is not confirmed or these cases are or become administratively insolvent. This is particularly important in these cases in which Debtors are operating in many of the Leased Premises for the benefit of Purchaser, and operating outside of the ordinary course of business at Debtors' other locations to liquidate the collateral of Debtors' prepetition secured creditors.

**B.    Debtors Should Not Be Permitted to Waive the Rights of the Estates Under Sections 506(c) and 552(b) of the Bankruptcy Code**

23. Landlords object to the DIP Motion and entry of any final order on the DIP Motion or approval of any budget that (i) includes waivers of sections 506(c) and 552(b) of the Bankruptcy Code and (ii) fails to direct Debtors to immediately pay Stub Rent to the affected Landlords or escrow the total amount due, including fixed rent and additional rent (*e.g.*, real estate taxes, insurance, and common area maintenance). Absent such modifications, any waivers should be denied.

24. Waiver of the estates' rights under sections 506(c) and 552(b) of the Bankruptcy Code would be inappropriate in these cases. Section 506(c) of the Bankruptcy Code allows a debtor to surcharge a lender's collateral for the cost of preserving or disposing of that collateral. 11 U.S.C. § 506(c). The provision ensures that the cost of liquidating a secured lender's collateral is not paid from unsecured creditor recoveries. *See Borrego Springs Bank N.A. v. Skuna*

*River Lumber, L.L.C.* (*In re Skuna River Lumber, LLC*), 564 F.3d 353, 355 (5th Cir. 2009) (the Bankruptcy Code protects unsecured creditors from bearing the costs of liquidating secured creditor's collateral by "allow[ing] administrative expenses to be surcharged against a creditor's collateral"); *see also Precision Steel Shearing v. Fremont Fin. Corp.* (*In re Visual Indus., Inc.*), 57 F.3d 321, 325 (3d Cir. 1995) ("section 506(c) is designed to prevent a windfall to the secured creditor"); *Kivitz v. CIT Group/Sales Fin., Inc.*, 272 B.R. 332, 334 (D. Md. 2000) ("the reason for [section 506(c)] is that unsecured creditors should not be required to bear the cost of protecting property that is not theirs"); *In re Codesco Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("[t]he underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs").

25. In a tenant-debtor context, courts may surcharge lenders for post-petition rents and storage charges for storing lender's collateral, as necessary and directly beneficial to the lender. *See In re Scopetta-Senra Partnership III*, 129 B.R. 700, 701 (Bankr. S.D. Fla. 1991) (determining that landlord who provided post-petition lease space provided benefit to the secured creditor by storing its collateral, and ensuring the debtor's continued operations); *see also In re World Wines, Ltd.*, 77 B.R. 653, 658 (Bankr. N.D. Ill. 1987) (finding that landlord was entitled to payment from the bank for the use and occupancy of its premises for storage of wine pursuant to section 506(c)).

26. Similarly, the "equities of the case" exception in section 552(b) of the Bankruptcy Code allows a debtor, committee, or other party-in-interest to exclude post-petition proceeds from pre-petition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's foreclosure. 11 U.S.C. § 552(b).

27. Debtors have been using the Leased Premises for the direct benefit of their lenders since the Petition Date. The post-petition rent owed to Landlords is a reasonable and necessary cost for the preservation of the lenders' collateral. Without the ability to use the Leased Premises, Debtors and the lenders, including the Purchaser, would receive no payments from the operations of the Debtors' stores at many of the Leased Premises or the store closing sales at others, and Debtors would have to find other locations to store and liquidate any inventory and personal property.

28. The preemptive waivers of sections 506(c) and 552(b) could also affect the recoveries of unsecured creditors, particularly in these cases when there may ultimately be insufficient liquidity to fund administrative claims. It is unreasonable to ask Landlords to bear any potential shortfall in the payment of administrative claims as a result of Debtors' waiver of rights under section 506(c). At least one court has refused to enforce such a waiver. *See, e.g.*, *Hartford Fire Ins. Co. v. Norwest Bank Minn.* (*In re Lockwood Corp.*), 223 B.R. 170, 176 (B.A.P. 8th Cir. 1998) (holding that a provision in the financing order purporting to immunize the post-petition lender from section 506(c) surcharge was unenforceable).

29. Absent sufficient funding in a consensual budget that reserves funds for the payment of all Stub Rent and ensures (i) immediate payment to Landlords or escrow of the Stub Rent; (ii) administrative solvency; and (iii) a controlled exit from these chapter 11 cases, Debtors should not be allowed to waive their statutory ability to surcharge the lenders' collateral and/or recover costs, including Stub Rent, as adequate protection or under the equities of the case. *See, e.g.*, *In re Mortgage Lenders Network USA, Inc.*, Case No. 07-10146 (PJW) (Bankr. D. Del. Mar. 20, 2007) [Docket No. 346], Hr'g Tr. at 20-21, (recognizing that 506(c) waivers require creditor consent); *see also In re Townsends, Inc.*, Case No. 10-14092 (CSS) (Bankr. D. Del. Jan. 21, 2011)

[Docket No. 338], Hr'g Tr. at 23-25 (refusing to approve financing for a sale process that would leave the estate administratively insolvent); *In re NEC Holdings Corp.*, Case No. 10-11890 (PJW) (Bankr. D. Del. July 13, 2010) [Docket No. 224], Hr'g Tr. at 100 (requiring that secured creditors pay the "freight" of the bankruptcy by ensuring an administratively solvent estate).

30. As the Bankruptcy Court for the District of Delaware did in *In re Sports Authority Holding*, the advance waivers of sections 506(c) and 552(b) sought by Debtors and the lenders should be denied. Case No. 16-10527 (MFW) (Bankr. D. Del. Apr. 26, 2016) [Docket No. 1415] (the "Hearing Transcript"). In that case, the debtors requested approval of a DIP facility that rolled up the entire prepetition secured debt, proposed to pay off the prepetition lenders immediately upon an expedited sale, granted the DIP lenders a surcharge waiver, and failed to adequately fund administrative and priority claims, including rent and section 503(b)(9) claims. In denying the surcharge waiver, Judge Walrath ruled:

> But in a case where the landlords and other administrative claims are clearly not budgeted or being paid while the . . . secured lenders' collateral is being liquidated and their secured claim is being paid, I have a serious problem with that. And I think the fix is no 506(c) waiver for anybody. And to the extent that administrative claims are not paid at the end of this case, there will be a claim against the lenders for those costs under 506(c) to the extent they were necessary for the preservation or realization of their collateral.

*See* Hr'g Tr. at 195:6-16 (relevant pages attached hereto as **Exhibit B**).

31. The Budget neither provides funds for the Stub Rent nor allows the immediate payment of the Stub Rent. There are no assurances in the DIP Motion, the Budget, or the Final Order that Debtors' estates will have enough money to pay all administrative claims, including Stub Rent.

32. Purchaser, as the secured party under the DIP financing, will substantially benefit from Debtors' continued use and occupancy of the Leased Premises, including the

maintenance of the collateral supporting the obligations they plan to use in their purchase of Debtors' assets. Therefore, Purchaser should be required to fund the expenses of those benefits rather than escape any responsibility for post-petition occupancy costs through waivers of the estate's rights under sections 506(c) and 552 of the Bankruptcy Code. *See Southwest Sec., FSB v. Segner (In re Domistyle, Inc.)*, 811 F.3d 691, 696 (5th Cir. 2015) ("a secured creditor should not reap the benefit of actions taken to preserve the secured creditor's collateral without shouldering the cost") (citation omitted); *see also In re Isaac Cohen Clothing Corp.*, 39 B.R. 199, 201 (Bankr. S.D.N.Y. 1984) (granting surcharge because lender "clearly benefited from the property being stored on the [landlord's] premises").

**C.      Debtors Should Not be Permitted to Place Liens Directly on the Leases**

33.     Landlords object to any attempt by Debtors to render unenforceable any provisions in the Leases that restrict placing a lien directly on the Leases. Anti-lien provisions in leases are enforceable under state law, bargained for at arm's-length, and critical to a landlord's ability to prevent a tenant from encumbering its lease when the applicable landlord's mortgage or loan documents prohibit such liens.

34.     Section 365 of the Bankruptcy Code mandates that Debtors must "timely perform all of the obligations" under the Leases until such time as Debtors assume or reject the Leases. 11 U.S.C. § 365(d)(3). In addition, the imposition of direct liens on the Leases would run counter to any provisions in the Leases that subordinate the Leases and any related liens to any existing or potential liens granted by Landlords against the Leased Premises.

35.     The DIP Motion cites no authority that would authorize the Court to render any Lease provision unenforceable, including lease subordination or anti-lien language. It is settled law that a trustee "takes the contracts of the debtor subject to their terms and conditions." *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 141 (1946). Accordingly, to the extent that

the Leases contain subordination clauses, any new liens granted by the Court must be subordinated to any existing or potential liens against the affected Leased Premises.

36. Landlords object to any attempt to grant the Purchaser liens or security interests that are prohibited by the Leases. Landlords do not object to granting the Purchaser a lien on the proceeds of the sale of the Leases. A lien on the potential proceeds of the disposition of Debtors' leases more than adequately protects the Purchaser's interests. The "bonus value" of the leases has been recognized as property of the bankruptcy estate, *see, e.g., In re Ernst Home Center, Inc.*, 209 B.R. at 985–986, and a security interest in that bonus value, in the form of a lien on the proceeds of the disposition of leases, strikes a balance between (i) the Purchaser's economic interests, (ii) Debtors' need for financing, and (iii) Landlords' rights under the Leases and the Bankruptcy Code.

37. Landlords respectfully request that the proposed liens attach only to the proceeds of the sale, assignment, or other disposition of the Leases. This provides the Purchaser with a lien on what they desire – the economic value of the Leases – and does not otherwise prejudice Debtors or Landlords.

38. Accordingly, to preserve the status quo, the language in the Interim Order should be carried forward into any Final DIP Order (with appropriate adjustments to reflect entry of the final order), specifically:

> *Real Property Leases*. Notwithstanding anything herein to the contrary, all of the liens granted pursuant to this Interim Order shall not include or attach to: (a) any of the Debtors' real property leases (but shall include all proceeds of such leases) and no liens granted pursuant to this Interim Order shall attach to the Debtors' real property leaseholds; (b) any insurance or proceeds therefrom for damage to a landlord's property; and (c) any security deposits (in possession of the landlord) or the Debtors' interests, if any, in pre-paid rent, unless liens on such security deposits or pre-paid rent are expressly permitted pursuant to the underlying lease documents.

Interim Order at ¶ 31.

**D.     Lenders' Rights to Use and Occupy the Stores After an Event of Default Must Be Limited**

39.     Any final order on the DIP Motion should clarify that Lenders do not have unrestricted rights of access to use and occupy the stores following a default by Debtors. There is no basis for a bankruptcy court to grant a non-debtor party rights to use and occupy real property leased by a debtor outside the parameters of Section 365. *See, e.g., In re Antwerp Diamond, Inc.*, 138 B.R. 865, 866-869 (Bankr. N.D. Ohio 1992).

40.     Accordingly, the language in the Interim Order should be carried forward into any Final DIP Order (with appropriate adjustments to reflect entry of the final order), specifically:

> Notwithstanding anything to the contrary herein, the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, and the Prepetition Secured Parties may only enter upon a leased premises of the Debtors following a Cash Collateral Termination Event and expiration of the Cash Collateral Remedies Notice Period in accordance with: (a) any agreement in writing between the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties and any applicable landlord; (b) pre-existing rights of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties under applicable law; (c) consent of the applicable landlord; or (d) further order of this Court following notice and a hearing; *provided*, *however*, that counterparties to unexpired leases reserve any and all rights pursuant to section 365(d)(3) of the Bankruptcy Code and similar laws.

Interim Order at ¶ 13.

41.     At a minimum, if the Court authorizes the Lenders to use and occupy the stores to liquidate their collateral, the Final DIP Order should provide that, if the Lenders use and occupy the stores, then they must timely perform all of the obligations arising under the Leases going forward as required by section 365(d)(3) of the Bankruptcy Code, and cure all existing

defaults as required by sections 365(b)(1) and (b)(3) of the Bankruptcy Code when a lease is assumed and assigned.

## JOINDER

42. Landlords join the objections of other landlords to the DIP Motion to the extent that such objections are not inconsistent with the relief sought herein.

## RESERVATION OF RIGHTS

43. Landlords reserve their rights to amend and/or supplement this Objection and to raise any additional objections to the DIP Motion at the hearing.

## CONCLUSION

**WHEREFORE**, Landlords respectfully request that the Court enter an order (i) denying the DIP Motion unless the Final DIP Order and the Budget are modified as requested herein; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: September 5, 2025         LAW OFFICE OF SUSAN E. KAUFMAN, LLC

*/s/ Susan E. Kaufman*
Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE 19801
(302) 472-7420
(302) 792-7420 Fax
skaufman@skaufmanlaw.com

-and-
Robert L. LeHane
Jennifer D. Raviele
Katie Cavins
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel:  212-808-7800
Fax:  212-808-7897
E-mail:   rlehane@kelleydrye.com
             jraviele@kelleydrye.com
             kcavins@kelleydrye.com

*Counsel for 5Rivers CRE LLC, Brixmor Property Group, Brookfield Properties Retail, Inc., Hines Global REIT, Jones Lang LaSalle, Kite Realty Group, Inc., Regency Centers, L.P., SITE Centers, and Turnberry Associates.*