# Exhibit B

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE

                                    .    Chapter 11
IN RE:                              .
                                    .    Case No. 16-10527 (MFW)
SPORTS AUTHORITY HOLDINGS,          .
INC., et al,                        .    Courtroom No. 4
                                    .    824 Market Street
                                    .    Wilmington, Delaware 19801
                    Debtors.        .
                                    .    Tuesday, April 26, 2016
. . . . . . . . . . . . . . . . . .

                       TRANSCRIPT OF HEARING
                BEFORE THE HONORABLE MARY F. WALRATH
                  UNITED STATES BANKRUPTCY JUDGE
APPEARANCES:

For the Debtors:              Michael R. Nestor, Esq.
                              Andrew L. Magaziner, Esq.
                              YOUNG, CONAWAY, STARTGATT
                               & TAYLOR, LLP
                              Rodney Square
                              1000 North King Street
                              Wilmington, Delaware 19801

For the Debtors:              Robert A. Klyman, Esq.
                              GIBSON, DUNN & CRUTCHER, LLP
                              333 South Grand Avenue
                              Los Angeles, California 90071




(Appearances Continued)

Audio Operator:               Electronically Recorded
                              by Brandon McCarthy, ECRO

Transcription Company:        Reliable
                              1007 N. Orange Street
                              Wilmington, Delaware 19801
                              (302)654-8080
                              Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

1    Thank you.

2         THE COURT:  All right.  Well, let me tell you what my
3    problems are with the proposed DIP.

4         While I agree with the debtor we can't use hindsight
5    to decide that the debtor should have only sought use of cash
6    collateral.  I accept that the debtor did not have much
7    leverage.  I -- without any other DIP loans available.  I do
8    think this DIP is -- I won't use the word "outrageous."  But it
9    really does not fall within the zone of reasonable DIPs.

10         And first and foremost, both from day one and
11   certainly it's been proven today, it's clear that while they
12   said that they were providing new money based on the formula,
13   there was no real ability for new money unless they were paid
14   down.  And it's clear that what has now occurred is that this
15   is a sale case.  And it's clear, I think, in all my prior
16   rulings, that if a case is being run for the benefit of the
17   lenders in order to foreclose upon their collateral, the
18   lenders are going to have to pay the cost of that.  And that
19   includes all administrative.  It includes the rent.  It
20   includes professional fees.  Whether or not the debtor is
21   correct, and I don't think the debtor is, there is no
22   commitment right now under the carveout language or otherwise
23   to pay accrued fees that accrue after May 28th.

24         There is no commitment to pay the stub rent.  There's
25   a commitment to escrow $8 million, a fraction of the stub rent

1   for the GOB leases.  But there's no commitment to allow that
2   payment to be made.  And I assume that the lenders are going to
3   retain a security interest in that cash escrow agreement.  Even
4   if they don't, that's clearly insufficient.

5          The debtor is correct under Montgomery Ward, you don't
6   have to pay the stub rent on the first day of the case.  But in
7   a case where the landlords and other administrative claims are
8   clearly not budgeted or being paid while the landlord -- excuse
9   me, while the secured lenders' collateral is being liquidated
10  and their secured claim is being paid, I have a serious problem
11  with that.

12         I think the fix is no 506(c) waiver for anybody.  And
13  to the extent that administrative claims are not paid at the
14  end of this case, there will be a claim against the lenders for
15  those costs under 506(c) to the extent they were necessary for
16  the preservation or realization of their collateral.

17         With respect to the DIP fees and interest, I accept
18  the debtors' testimony that the interest and other fees are
19  simply what were otherwise due to the lenders under the pre-
20  petition claims with the exception of the one six-million-
21  dollar fee.  I am not as outraged by that as the committee is,
22  and I don't think that that was unreasonable because I can't
23  look at it in hindsight.  I have to look at it from the
24  debtors' perspective at the day they entered into this DIP
25  loan, and given the terms and the amount, I'm not -- my