**<u>Exhibit A</u>**

**Revised Final Order**

RLF1 33517034V.1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re:  Docket Nos. 8, 81** |

**FINAL ORDER
(I) AUTHORIZING THE DEBTORS TO PAY
PREPETITION CLAIMS OF CERTAIN (A) CRITICAL
VENDORS, (B) FOREIGN VENDORS, (C) 503(b)(9) CLAIMANTS,
AND (D) LIEN CLAIMANTS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") for entry of a final order (this "<u>Final Order</u>"), (a) authorizing, but not directing, the Debtors to pay, in the ordinary course of business, prepetition amounts owing on account of (i) Critical Vendor Claims, (ii) Foreign Vendor Claims, (iii) 503(b)(9) Claims, and (iv) Lien Claims; and (b) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.    The Motion is granted on a final basis as set forth herein.

2.    Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.    The Debtors are authorized, but not directed, to pay all or part of, and discharge, on a case-by-case basis, the Specified Trade Claims on a final basis.

4.    As a condition to receiving payment hereunder, the Debtors at their discretion, and with notice to the Official Committee of Unsecured Creditors (the "Committee"), may require, by written agreement, including by e-mail or through the Trade Agreement, such parties to continue supplying goods or services to the Debtors in accordance with Customary Trade Terms.  The Debtors reserve the right to require more favorable trade terms with any party as a condition to payment of any prepetition claim.

5.      The Debtors shall maintain a schedule of payments (the "Vendor Payment Schedule") made pursuant to this Final Order and provide a copy of such Vendor Payment Schedule to the Committee each Thursday following entry of this Final Order detailing payments made during the preceding week; *provided that* the Debtors need not provide such Vendor Payment Schedule during any week in which no new payments would be reflected thereon.

6.      The form of Trade Agreement, substantially in the form attached hereto as **Exhibit 1**, is approved in its entirety, and the Debtors are authorized, but not directed, to negotiate, modify, or amend such Trade Agreement in their reasonable business judgment.

7.      Regardless of whether an agreement has been executed, if any party accepts payment hereunder for a prepetition obligation of the Debtors premised on compliance with the above, and thereafter fails to comply with the Customary Trade Terms, or other such terms as agreed to by the Debtors, then:  (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtors' sole discretion, and with notice to the Committee, an improper postpetition transfer and, therefore, immediately recoverable in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding, without the right of any setoffs, claims, provisions for payment of any claims, or otherwise; and (d) the Debtors may pursue any other remedy available to them under applicable law or any executed writing with such party.

3

8.      Any Specified Trade Claimant that accepts payment from the Debtors on account of all or a portion of such party's claim pursuant to this Final Order shall be deemed to (a) agree to the terms and provisions of this Final Order and (b) have waived, to the extent so paid, any and all prepetition claims, of any type, kind, or priority (including any reclamation claim), against the Debtors, their assets, and properties.  The Debtors shall provide a copy of this Final Order to any Specified Trade Claimant to whom a payment is made pursuant to this Final Order.

9.      Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Specified Trade Claimant.  The Debtors do not concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection, or to seek the avoidance of all such liens or the priority, of such claims.

10.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

11.     Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for, any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an

administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (h) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (i) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in the Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (j) a waiver of the obligation of any party in interest to file a proof of claim; or (k) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

12.     Notwithstanding anything to the contrary in this Final Order, any payment to be made, obligation incurred or authorization contained herein shall be subject to and in compliance with the "Approved Budget" as defined in the orders of the Court approving the consensual use of cash collateral in these chapter 11 cases (including with respect to timing of payments thereunder).

13.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored

as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein in accordance with this Final Order.

14.     Nothing in this Final Order authorizes the Debtors to accelerate any payments not otherwise due.

15.     The Debtors agree that, in the event that the aggregate payments made to Specified Trade Claimants pursuant to this Final Order are less than the amounts allocated therefor under the Approved Budget, the Debtors shall consult with the Committee on the reallocation of such funds.

16.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

17.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

18.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

19.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Exhibit 1**

**Trade Agreement**

**THIS AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN.  ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN.  THE INFORMATION IN THIS AGREEMENT IS SUBJECT TO CHANGE.  THIS AGREEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

[●][1] (the "Company"), on the one hand, and the supplier identified in the signature block below ("Supplier") (the Company and the Supplier each, a "Party" and collectively, the "Parties") on the other hand, hereby enter into this agreement (as amended, supplemented, restated, or otherwise modified from time to time pursuant to the terms hereof, this "Agreement") dated as of the date in the Supplier's signature block below.

## Recitals

WHEREAS on August 6, 2025 (the "Petition Date"), the Company and certain of its direct and indirect subsidiaries and related entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Court").

WHEREAS on [●], 2025, the Court entered the *Final Order (I) Authorizing Debtors to Pay Prepetition Claims of Certain (A) Critical Vendors, (B) Foreign Vendors, (C) 503(b)(9) Claimants, and (D) Lien Claimants, and (II) Granting Related Relief* (the "Final Order") [Docket No. [●]] authorizing the Debtors on a final basis, under certain conditions, to pay the prepetition claims of certain Trade Claimants, including Supplier, subject to the terms and conditions set forth therein.[2]

WHEREAS prior to the Petition Date, Supplier delivered goods to the Company and/or performed services for the Company, and the Company paid the Supplier for such goods and/or services, according to Customary Trade Terms (as defined herein).

WHEREAS the Final Order permits the Debtors to condition payment on account of certain prepetition claims the Supplier may hold against the Debtors on execution of this Agreement.

WHEREAS the Parties agree to the following terms as a condition of payment of the Agreed Supplier Payment (as defined below) in full and final satisfaction of the Prepetition Supplier Claim (as defined below).

---

[1]    To be vendor-facing Company entity (or entities).

[2]    Capitalized terms used but not defined herein shall have the meanings set forth in the Final Order.

**Agreement**

1.      Recitals.  The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.      Agreed Supplier Payment.   Supplier represents and agrees that, after due investigation, the sum of all amounts due and owing by the Company to Supplier as of the Petition Date is $[●] (the "Prepetition Supplier Claim").  Within 10 business days of execution of this Agreement, the Debtors shall pay the Supplier $[●] on account of, and in full and final satisfaction of, its Prepetition Supplier Claim (the "Agreed Supplier Payment") (without interest, penalties, or other charges).  For the avoidance of doubt, any amounts that become due and owing by the Debtors to the Supplier for goods or services provided after the Petition Date shall continue to be due and owing and shall be paid in the ordinary course pursuant to the Parties' agreed-upon payment terms.

3.      Agreement to Supply.

        a.      Supplier shall supply goods to and/or perform services for the Company, and the Company shall accept and pay for goods and/or services from Supplier, for the Duration of the Debtors' Chapter 11 Cases[3] based on the following terms (collectively, the "Customary Trade Terms"):  those trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, promotional credits, timing of payments and payment terms, allowances (as may be incorporated or contemplated by any agreements between the Parties or based on historic practice, as applicable), product mix, availability, and other programs) in place in the 12 months prior to the Petition Date, or are otherwise acceptable to the Debtors in light of customary industry practices.

        b.      The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Debtors except as agreed to in writing by the Parties (email being sufficient).

        c.      The Supplier shall continue to honor any existing allowances, credits, contractual obligations, or balances that were accrued as of the Petition Date and shall apply all such allowances, credits, or balances towards future orders in the ordinary course of business.

        d.      The Supplier shall continue all shipments of goods or performance of services in the ordinary course and shall fill orders for goods or services requested by the Debtors in the ordinary course of business pursuant to the Customary Trade Terms.

        e.      The Supplier shall not be permitted to cancel any contract, agreement, or arrangement pursuant to which Supplier provides services to the Debtors for the Duration of the Debtors' Chapter 11 Cases.

---

[3]    "Duration of the Debtors' Chapter 11 Cases" means until the earlier of:  (i) the effective date of a chapter 11 plan in the Debtors' chapter 11 cases; (ii) the closing of a sale of all or substantially all of the Debtors' assets pursuant to section 363 of the Bankruptcy Code, resulting in a cessation of the Debtors' business operations; (iii) the liquidation of the Debtors or conversion of the Debtor's chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; or (iv) a termination event occurs that results in the Debtors losing access to cash collateral.

4.      Other Matters.

As long as the Agreed Supplier Payment is made in accordance with this Agreement, the Company does not exercise its rights in Section 5(a), and this Agreement is not terminated by either Party:

a.      Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due.  Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect.

b.      Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Agreement or a plan confirmed in the Debtors' chapter 11 cases; *provided* that nothing in this Agreement shall prohibit Supplier from (a) filing a proof of claim with the Court or the Court-appointed claims agent or (b) filing with the Court, or otherwise seeking, a request for payment of an administrative expense claim.

c.      During the Duration of the Debtors' Chapter 11 Cases, Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising solely from prepetition agreements or transactions.  If Supplier has taken steps to file or assert such a lien prior to entering into this Agreement, upon Supplier's receipt of the Agreed Supplier Payment, Supplier will promptly take all necessary actions to remove such lien.

5.      Breach.

a.      In the event that the Company pays Supplier its Agreed Supplier Payment and Supplier is determined by the Court to have breached this Agreement (a "Supplier Breach"), upon written notice to Supplier describing the nature of the Supplier's defaults hereunder (which the Supplier shall have the right to dispute in accordance with Section 7(d)) and the Supplier's failure to cure such default within five business days of such notice, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Agreed Supplier Payment or any portion of the Agreed Supplier Payment which cannot be recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

b.      In the event that the Company recovers the Agreed Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Prepetition Supplier Claim shall be reinstated as if the Agreed Supplier Payment had not been made, and Supplier shall be authorized to file a proof of claim on account of the Agreed Supplier Claim by the later of (i) any bar date set in these chapter 11 cases or (ii) 30 calendar days following the return of the Agreed Supplier Payment.

3

c.    Supplier acknowledges and agrees that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company.  Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to seek an injunction or injunctions to prevent breaches of the provisions of this Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief.  The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Agreement.  Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

d.    In the event the Company fails to pay for goods or services produced, shipped, or delivered postpetition in accordance with this Agreement, and the Company fails to cure such default within five business days (or such longer period if the purported breach cannot be cured within five days but the Company is diligently pursuing cure) after receiving written notice of such default (which the Company shall have the right to dispute in accordance with Section 7(d)), the Supplier (a) may terminate this Agreement and shall have no obligation to continue to supply goods or provide services to the Company and (b) is authorized to file a proof of claim in the amount of the Prepetition Supplier Claim less any amount of the Agreed Supplier Payment paid by the Company to the Supplier by the later of (i) any bar date set in these chapter 11 cases or (ii) 30 calendar days following expiration of the cure period contemplated in this paragraph. The Parties reserve all rights to dispute the relative priority of such claim.

6.    <u>Notice</u>.

If to Supplier, then to the person and address identified in the signature block hereto.

If to Company:

Claire's Holdings LLC
2400 West Central Road
Hoffman Estates, Illinois 60192
United States

Attention:  Brendan McKeough, Executive Vice President, Chief Legal Officer, and Secretary

with a copy (which shall not constitute notice) to:

Kirkland & Ellis LLP
601 Lexington Avenue, New York, New York 10022
Attn:   Allyson B. Smith
Email: allyson.smith@kirkland.com
Facsimile:  (212) 446-4900

and

4

Kirkland & Ellis LLP
333 West Wolf Point Plaza, Chicago, Illinois 60654
Attn:   Alexandra F. Schwarzman, P.C. and Robert A. Jacobson
Email: alexandra.schwarzman@kirkland.com
Email: rob.jacobson@kirkland.com
Facsimile:  (312) 862-2200

and

Richards, Layton & Finger, P.A.
One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801
Attn:   Paul N. Heath and Zachary I. Shapiro
Email: heath@rlf.com
Email: shapiro@rlf.com
Facsimile:  (302) 651-7701

7.    <u>Representations and Acknowledgements</u>.  The Parties agree, acknowledge, and represent that:

a.    the Parties have reviewed the terms and provisions of the Final Order and this Agreement and consent to be bound by such terms and that this Agreement is expressly subject to the procedures approved pursuant to the Final Order;

b.    any payments made on account of the Prepetition Supplier Claim, including the Agreed Supplier Payment, shall be subject to the terms and conditions of the Final Order;

c.    if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under this Agreement, the Final Order, the Bankruptcy Code, or applicable law; and

d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, or the Company's payment to the Supplier for such goods and services, until a ruling of the Court is obtained.

8.    <u>Confidentiality</u>.  In addition to any other obligations of confidentiality between Supplier and Company, Supplier agrees to hold in confidence and not disclose to any party: (a) this Agreement; (b) any and all payments made by the Company pursuant to this Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided* that if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with written notice so that the Company may seek an injunction, protective order or

5

any other available remedy to prevent such disclosure; *provided*, *further*, that if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

        9.      <u>Miscellaneous</u>.

        a.      The Parties hereby represent and warrant that:  (a) they have full authority to execute this Agreement on behalf of the respective Parties; (b) the respective Parties have full knowledge of, and have consented to, this Agreement; and (c) they are fully authorized to bind that Party to all of the terms and conditions of this Agreement.

        b.      This Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them.  This Agreement may not be changed, modified, amended, or supplemented, except in a writing signed by both Parties.

        c.      Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

        d.      This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

        e.      The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Agreement.  The terms of this Agreement shall be governed by the Bankruptcy Code and the laws of the State of Delaware, each as may be applicable.

        f.      This Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

[*Signature Page Follows*]

AGREED AND ACCEPTED AS OF THE DATE SET FORTH BELOW:

**COMPANY**                                          **[SUPPLIER]**

_____          _____
By:                                                        By:
Title:                                                     Title:
                                                           Address for Notice:

                                                           Date: